**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
SIN-TING MARY LIU (282884)
R. JASON RICHARDS (admitted *Pro Hac Vice*)
17 E. Main St., Suite 200
Pensacola, Florida 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-Mail: mliu@awkolaw.com
E-Mail: jrichards@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
rfisher@bradleygrombacher.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| BETH BOWEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., | Case No.:  2:21-cv-04356-MWF-AGR <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1.  VIOLATIONS OF THE UNFAIR COMPETITION LAW; <br> 2.  VIOLATIONS OF THE FALSE ADVERTISING LAW <br> 3.  VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES |

SUN PHARMACEUTICALS, LLC;

    Defendants.

    ACT;
4. UNJUST ENRICHMENT/QUASI CONTRACT;
5. NELIGENT MISREPRESENTATION/OMISSION;
6. BREACH OF EXPRESSWARRANTY;
7. BREACH OF IMPLIED WARRANTY;
8. STRICT PRODUCT LIABILITY - FAILURE TO WARN; and
9. STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT

**DEMAND FOR JURY TRIAL**

**SECOND AMENDED CLASS ACTION COMPLAINT**

    Plaintiff, Beth Bowen ("Plaintiff"), individually and on behalf of all others similarly situated throughout the State of California, files this Class Action Complaint ("CAC") against Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants"), and in support states the following:

**NATURE OF THE ACTION**

    1    This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased Banana Boat sunscreen products manufactured, marketed, sold and/or distributed by Defendants. Defendants distribute, market and sell several over-the-

counter sunscreen products under their brand name "Banana Boat." Several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and is a class action in which there are more than 100 class members and many members of the class are citizens of a state different than Defendants.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of

the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

4.      A substantial portion of the transactions and wrongdoings which gave rise to the claims in this action occurred in the County of Los Angeles, and as such, this action is properly assigned to the Western division of this Court.

## THE PARTIES

5.      Plaintiff Beth Bowen resides in Palos Verdes, California, and at all times relevant hereto has been a resident of the County of Los Angeles. Between 2017 and 2020, Plaintiff purchased numerous Banana Boat brand sunscreen products, including Banana Boat Ultra Sport Sunscreen SPF 100, Banana Boat Ultra Sport Sunscreen SPF 50, and Banana Boat Ultra Sport Sunscreen SPF 30, that she acquired from Rite Aid, located at 23 Peninsula Center, Palos Verdes Peninsula, CA 90274 and CVS, located at 901 Silver Spur Rd., Rolling Hills Estates, CA 90274. Insofar as sunscreen is intended as a disposable consumer good, Plaintiff used the Banana Boat sunscreen products as directed and discarded the empty containers after use.

6.      When purchasing the sunscreen products, Plaintiff reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that the sunscreen products were properly manufactured, free from defects, safe for their intended use, and not adulterated or misbranded. Plaintiff relied on these representations and warranties in deciding to

purchase the sunscreen products manufactured by Defendants, and these representations and warranties were part of the basis of the bargain. Had Plaintiff known that any amount of benzene was or risked being contained in the sunscreen products she purchased, she would not have purchased and used the products at all or would have paid significantly less for them. Plaintiff would have never paid a premium for sunscreen products that contained or were at risk of containing the carcinogen benzene. Standing is satisfied by alleging economic injury. Here, Plaintiff suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein. Members of the putative class have likewise suffered economic injuries in that they have spent money to purchase sunscreen products they would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein.

7.   Plaintiff and putative class members also have suffered a concrete and particularized injury, because they have been denied the opportunity to make informed financial and healthcare decisions due to the Defendants' misconduct. The decision to purchase or not purchase sunscreen products that contain or may contain the carcinogen benzene at any level is a financial and healthcare decision that affects Plaintiff and members of the putative class in a very personal and individual way. By failing to disclose the presence of benzene or the risk of benzene contamination in its sunscreen products' labeling, Plaintiff and individual members of the putative class were denied the opportunity to make those informed decisions, and instead unwittingly purchased

and used sunscreen products they would have not have otherwise purchased, or paid

less for, absent Defendants' misconduct. Plaintiff's and the putative class members'

injuries are therefore traceable to Defendants' acts or omissions. Plaintiff and the

putative class members also seek monetary damages to address the monetary harm

caused by Defendants' actions, so there is a substantial likelihood that the relief sought

will redress the injuries. As a result, Plaintiff and members of the putative class have

Article III standing.

8.      Plaintiff has retained one of the Banana Boat Ultra Sport Sunscreen

SPF 50 sunscreen products she purchased and used in approximately 2020[1] and

submitted that product for testing. The test showed that Plaintiff's container of Banana

Boat Ultra Sport Sunscreen SPF **50** contains 0.29 parts per million ("ppm") benzene.

Some of the other Banana Boat sunscreen products Plaintiff purchased and used

between 2017 and 2020 which were discarded after use, including Banana Boat Ultra

Sport Sunscreen SPF 100, have been subjected to testing by independent pharmacy

Valisure.[2]  Valisure's testing revealed that Banana Boat Ultra Sport Sunscreen SPF

100—the same product purchased by Plaintiff—also contained >0.1 ppm benzene.

Valisure has petitioned the FDA to recall all batches of Banana Boat sunscreen products

---

[1] Specifically, Banana Boat Ultra Sport Sunscreen SPF 50, Lot # 200970782; Drug Expiration 03/2023.

[2] Because several of the Banana Boat sunscreen products purchased by Plaintiff over the years were appropriately discarded after use, it is not possible for Plaintiff to identify the lot number or UPC number of those discarded products.

that tested at 0.1 ppm or more benzene on the basis that exposure to benzene at such levels poses risks to human health.

9.      Defendant Energizer Holdings, Inc. ("Energizer") is a Missouri corporation, having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141. Energizer manufactures, distributes, markets and/or sells sun care products under the Banana Boat brand to consumers nationwide, including California. Energizer may be served via its registered agent at: CT Corporation System, at 120 S. Central Ave., Clayton, MO 63015.

10.      Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Chesterfield, Missouri. Edgewell Personal Care Company is licensed to and does business throughout the United States, including California. Edgewell Personal Care Company manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Company may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

11.      Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care Brands, LLC manufactures, distributes, markets and/or sells personal care products, including Banana

Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Brands, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

12.    Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

13.    At all relevant times, each and every "Edgewell" Defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants with respect to the manufacturing, marketing, selling and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein were made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."

14.     Playtex Products, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Playtex Products, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Playtex Products, LLC manufactures, distributes, markets and/or sells Banana Boat sunscreen products as one of its brands to consumers nationwide, including California. Playtex Products, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

15.     Sun Pharmaceuticals, LLC ("Sun Pharmaceuticals") is a limited liability company organized under the laws of Delaware with its principal place of business in Shelton, Connecticut. Sun Pharmaceuticals is a wholly-owned subsidiary of Edgewell Personal Care Company. Sun Pharmaceuticals manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Sun Pharmaceuticals may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

## **INTRODUCTION**

16.     Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including:

| 1 | Banana Boat | Spray | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |

| 2 | Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3 | Banana Boat | Spray | Banana Boat Hair & Scalp Spray SPF 30 |
| 4 | Banana Boat | Spray | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5 | Banana Boat | Spray | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6 | Banana Boat | Spray | Simply Protect Kids Sunscreen Spray SPF 50+ |
| 7 | Banana Boat | Spray | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
| 8 | Banana Boat | Spray | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |
| 9 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 |
| 10 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 11 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 50[3] (hereafter collectively referred to as "Sunscreen Products") |

17.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years.

---

[3] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiff reserves their right to include any such products in this action.

18.     According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[4]

19.     Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[5] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[6]

20.     The World Health Organization ("WHO") and the International Agency for research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[7]

---

[4] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).
[5] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[6] *Id.* at 34.
[7] *Benzene*, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018),

21.     The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers exposed or expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes or paths.[8]

22.     Direct benzene exposure through the skin is particularly concerning. For example, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[9]

23.     Research also has revealed that sunscreen ingredients can be absorbed through the skin into the bloodstream.[10]

24.     Moreover, a study by Health Canada's Bureau of Chemical Hazards concluded that "the application of sunscreen specifically increases the absorption rate of benzene through the skin," thereby increasing the risk of harm.[11]

25.     Even low levels of benzene are particularly dangerous in a sunscreen product because "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules, so even a relatively low

https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf.
[8] *NIOSH Pocket Guide to Chemical Hazards - Benzene*, THE NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH (NIOSH), https://www.cdc.gov/niosh/npg/npgd0049.html (last visited September 6, 2022).
[9] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION, https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited September 6, 2022).
[10] Dr. Manavjeet Sidhu, *Sunscreen can be absorbed in the bloodstream, new study says*, ABCNews (Jan. 20, 2020, 8:30 AM), https://abcnews.go.com/Health/sunscreen-absorbed-bloodstream-testing-needed/story?id=68442221 (last visited September 6, 2022).
[11] *Valisure Detects Benzene in Sunscreen*, VALISURE BLOG (May 25, 2021), https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/.

concentration limit can result in very high total [benzene] exposure."[12] "There is not a safe level of benzene that can exist in sunscreen products," stated Dr. Christopher Bunick, MD, PhD, Associate Professor of Dermatology at Yale University. "Even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene."[13] Dr. Bunick, further stated:

> Considering that human skin has a large total surface area (~1.85 m2), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products. The total mass of sunscreen required to cover and protect the human body, in single daily application or repeated applications daily, means that even benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene.[14]

26.    The FDA likewise recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[15] and classifies benzene as a "Class 1" solvent that should be "avoided."[16]  FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[17]

---

[12] Letter from Valisure, LLC to the Food and Drug Administration, re: Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care Products (May 24, 2021) (https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf/) at 16.
[13] *Id.* at 17.
[14] *Id.*
[15] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[16] https://www.fda.gov/media/71737/download.
[17] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.

27.     In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products, including sprays and lotions. Valisure also engaged the Chemical and Biophysical Instrumentation Center at Yale University ("Yale University") to separately analyze multiple selected sunscreen products for the presence of benzene. Defendants' Sunscreen Products were among those tested by Yale University. Valisure (and Yale University where applicable) discovered that several of Defendants' Sunscreen Products contain benzene, with benzene detected between 0.1 ppm to 2 ppm. Although Defendants' entire product line was not tested, benzene contamination was revealed through testing of the following products: Kids Max Protect & Play Sunscreen Spray, Kids Sport Sunscreen Spray, Protective Dry Oil Clear Sunscreen Spray, Simply Protect Kids (a/k/a/ Kids Mineral Enriched) Sunscreen Spray, Ultra Defense Ultra Mist Clear Sunscreen Spray, Ultra Sport Sunscreen Spray, and UltraMist Deep Tanning Dry Oil Continuous Clear Spray. Included among the Sunscreen Products identified by Valisure as containing 0.1 ppm or more benzene was Banana Boat Ultra Sport Sunscreen SPF 100—the same product purchased and used by Plaintiff.

28.     For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as

an exposure route.[18] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

29.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Banana Boat Sunscreen Products containing 0.1 ppm or more benzene (as identified on Tables 2 and 3 of its citizen petition), including Banana Boat Ultra Sport Sunscreen SPF 100.[19]

30.   Pursuant to § 1782 of the Consumers Legal Remedies Act ("CLRA"), Plaintiff has provided pre-suit notice to Defendants of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed herein.

31.     On December 22, 2021, Edgewell Personal Care Australia Pty Ltd. issued a recall of "all batches" of the following Banana Boat sunscreen sprays due to the presence of benzene in in a sampling of four batches of the products: Banana Boat Ultra Very High Protection Clear Sunscreen Spray SPF 50+; Banana Boat Simply Protect Kids Very High Protection Sunscreen Lotion Spray SPF 50+; and Banana Boat Dry Balance Very High Protection Clear Sunscreen Spray SPF 50+. [20] Specifically, the

---

[18] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).
[19] https://assets-global.website-files.com/6215052733f8bb8fea016220/62728f83d7f91acc8572e9ee_FDA-2021-P-0497-0001_attachment_1.pdf ("The 40 batches in Table 2 and Table 3 have significantly detected benzene and should be recalled.").
[20] https://www.tga.gov.au/news/safety-alerts/banana-boat-sunscreen-sprays-spf-50-aerosol-sunscreen.

Therapeutic Good Administration (TGA), which is the Australian equivalent to the FDA, "detected benzene at concentrations between 2.3 ppm and 5.2 ppm in four batches of the above products supplied in Australia."[21] Although not every batch of the affected products were tested by the TGA., the company issued the recall "to reduce the risk to consumers" of using a benzene-contaminated product.[22]

32.     On July 29, 2022, Defendant Edgewell Personal Care Company announced it was also voluntarily recalling three batches of Banana Boat Hair and Scalp Sunscreen Spray SPF 30 in the United States because benzene was detected in "samples" of the recalled products.[23] The stated reason for the contamination was that "unexpected levels of benzene came from the propellant that sprays the product out of the can."[24]

33.     As with the recall in Australia, not every batch of Hair and Scalp Sunscreen Spray SPF 30 available on the market was tested. Nevertheless, entire batches of the product were recalled on the basis of "unexpected levels of benzene" found in samples of the product.[25] As in Australia, the company issued a statement saying that "we are conducting this recall out of an abundance of caution" to reduce the risk to consumers of using a benzene-contaminated product.[26]

---

[21] *Id.*
[22] *Id*.
[23] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due.
[24] *Id.*
[25] *Id.*
[26] https://www.bananaboat.com/pages/sun-faq.

34.     Notably, however, the U.S. recall does not disclose how many of the Hair and Scalp Sunscreen Spray products were tested or what level of benzene was detected those products—or, for that matter, in any other Sunscreen Products identified by Plaintiff, Valisure, and Yale University as being contaminated with benzene. All that consumers can glean from the U.S. recall notice is that several batches of the affected product were recalled because "some samples" contained "unexpected," "trace levels of benzene."[27]  The risk of "trace level" exposure to benzene in "some samples," accordingly to Defendant Edgewell Personal Care Company, is nevertheless sufficient to warrant a nationwide recall.

35.     "Even in trace amounts, benzene is known to pose a health risk from exposure routes that include inhalation, ingestion, dermal absorption, and skin or eye contact."[28] FDA guidance similarly provides that there is no safe level of benzene: "Solvents in Class 1 [i.e. benzene] should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

36.     Due to its "unacceptable toxicity," benzene is restricted by the FDA to 2 ppm where its use in manufacturing "is unavoidable in order to produce a drug

---

[27] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due.
[28] Hudspeth, A., et al., Independent Sun Care Product Screening for Benzene Contamination, Environmental Health Perspectives, 130:3, Online Publication 29 March 2022.

product with a significant therapeutic advance."[29] Defendants Sunscreen Products do not meet this safe harbor exception. This is because the use of benzene in the manufacture of the Sunscreen Products is not "unavoidable," nor does the use of benzene in Sunscreen Products provide a "significant therapeutic advance."

37.     That the use of benzene is entirely avoidable is illustrated by Valisure's testing, which showed variation of benzene contamination in the batches tested. Some of the sunscreen products tested by Valisure contained detectible and/or or elevated levels of benzene and some did not. It is also illustrated in Defendant Edgewell Personal Care Company's U.S. recall notice, wherein the company represented that benzene was detected in "samples" of the recalled products, not every product.[30] Given this variability, no reasonable consumer, including Plaintiff, is going to purchase a Sunscreen Product, or, alternatively, pay a premium for it, if they cannot know whether the product they pull off the shelf is one that is contaminated with a cancer causing drug. A reasonable consumer such as Plaintiff is not going to play Russian Roulette with Sunscreen Products. In any event, because the use of benzene is not unavoidable, the FDA's prohibition on the use of benzene in manufacturing drug products like sunscreen remains the guiding standard.

38.     Meanwhile, other Banana Boat Sunscreen Products shown by Plaintiff's own testing, Valisure's testing, and Yale University's testing to contain

---

[29] https://www.fda.gov/media/71737/download.
[30] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due.

elevated levels of benzene have not been recalled, nor have the concentrations of benzene in those products been disclosed by Defendants. Thus, based on the available independent test results, to this day, every Banana Boat Sunscreen Product purchased by consumers either contains or has a risk of containing a product defect (i.e. benzene contamination), leaving Plaintiff and putative class members vulnerable to continued economic damages and harm unless the injunctive relief requested herein is granted.

39.     The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[31] The FDA regulates sunscreens, including the Sunscreen Products, as over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays. Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[32]

40.     Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[33] there are certain acceptable active ingredients in products that are labeled as sunscreen.[34]  Benzene, a

---

[31] *See generally* 21 CFR §§352.1– 352.77.
[32] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[33] 21 CFR §352.10.
[34] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products, regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the labels of any of the Defendants' Sunscreen Products. Because "there is not a safe level of benzene that can exist in sunscreen products,"[35] the assurances made by Defendants in its marketing of the Sunscreen Products to consumers—e.g., that "[t]his product is safe for its intended use based on the formulation, testing results, and the long history of safe consumer use"— are false and misleading.[36]

41.     The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[37] Defendants failed to meet this standard as further described below.

42.     The manufacture of any misbranded or adulterated drug is prohibited under federal law[38] and California state law.[39]

---

[35] *See supra* note 12.
[36] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[37] 21 CFR §352.1
[38] 21 U.S.C. §331(g).
[39] *See* Cal. Health & Safety Code § 111250 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is adulterated."); Cal. Health & Safety Code § 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular.").

43.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[40]

44.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[41]

45.     Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[42]

46.     A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[43]

> (b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[44]

---

[40] 21 U.S.C. §331(a); Cal. Health & Safety Code § 111305 ("It is unlawful for any person to receive in commerce any drug or device that is adulterated or to deliver or proffer for delivery any drug or device.").

[41] 21 U.S.C. §331(c); Cal. Health & Safety Code § 111305.

[42] 21 U.S.C. §351(a)(2)(B). *See* Cal. Health & Safety Code § 111250 ("Any drug or device is adulterated if it consists, in whole or in part, of any filthy, putrid, or decomposed substance."); *see* Cal. Health & Safety Code § 111255 ("Any drug or device is adulterated if it has been produced, prepared, packed, or held under conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health.").

[43] 21 U.S.C. §352(a)(1). California law similarly states: "Any drug or device is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 111330. *See also* Cal. Health & Safety Code § 111285 ("Any drug or device is adulterated if its . . . purity of quality is below, that which it is represented to possess.").

[44] 21 U.S.C. §352(e)(1)(A)(ii); *see* Cal. Health & Safety Code § 111355(a): "Any drug is misbranded unless its label bears . . . all of the following information:... (3) For nonprescription drugs, the quantity or proportion of each active ingredient and the established name of each inactive ingredient in accordance with Sections 502(e)(1)(A)(ii) and (iii) of the federal act (21 U.S.C. 352(e)(1)(A)(ii) and (iii))."

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[45]

45.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[46]

46.    Because Defendants did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Product purchased by Plaintiff and the putative class members, the Sunscreen Product are adulterated and misbranded. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in sunscreen.[47]

47.    Defendants wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products contain or may contain benzene. The following image shows an example:

---

[45] 21 U.S.C. §352(j); *see* Cal. Health & Safety Code § 111400 ("Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling.").

[46] "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See* Cal. Health & Safety Code § 111355(b) ("Any drug is misbranded unless its label bears . . . all of the following information: The requirement for stating the quantity of the active ingredients of any drug . . . .").

[47] https://www.who.int/ipcs/features/benzene.pdf.

1
2
3
4
5
6
7
8
9
10



**Active Ingredients**
Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%, Octocrylene 10.0%, Oxybenzone 6.0%

**Inactive ingredients:** Alcohol Denat., Isobutane, VA/Butyl Maleate/Isobornyl Acrylate Copolymer, Caprylyl Glycol, Cyclopentasiloxane, Cyclohexasiloxane, Fragrance, Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer, Lauryl PEG-8 Dimethicone, Phenylisopropyl Dimethicone, Ascorbyl Palmitate, Methyl Dihydroabietate, Tocopheryl Acetate, Mineral Oil, Panthenol, Water, Aloe Barbadensis Leaf Extract.

11
12        48.      Plaintiff has standing to represent members of the putative class
13   because there is sufficient similarity between the specific product purchased by the
14   Plaintiff and the other Sunscreen Products not purchased by Plaintiff. Specifically, each
15   and every one of the Sunscreen Product (i) are marketed in substantially the same way –
16   as "Sunscreen"— and (ii) fail to include labeling indicating to consumers that the
17   Sunscreen Products contain benzene or may contain benzene. Accordingly, the
18   misleading effect of all of the Sunscreen Products' labels are substantially the same.
19
20                              **CLASS ALLEGATIONS**
21
22
23        49.      Plaintiff brings this action on behalf of herself and all others
24   similarly situated class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal
25   Rules of Civil Procedure and seeks certification of the following class against
26   Defendants for violations of California state laws (the "Class"):
27
28

All consumers who purchased any lotion or spray Banana Boat Sunscreen Product in the State of California from May 25, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Sunscreen Product(s). Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

50.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Sunscreen Product who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

51.     Plaintiff's claims are typical to those of all Class members because members of the class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive sunscreen claims that accompanied each and every Sunscreen Product product in the Defendants' collection. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

52.     Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members

involve the same alleged defect. These common legal and factual questions include the following:

    (a)   whether Defendants' Sunscreen Product contained benzene;

    (b)   whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

    (c)   whether the alleged conduct constitutes violations of the laws asserted;

    (d)   whether Defendants' alleged conduct violates public policy;

    (e)   whether Defendants engaged in false or misleading advertising;

    (f)   whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

    (g)   whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated Sunscreen Products that contain benzene, a known human carcinogen.

53.       Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has not adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

54.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

55.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

56.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, and requiring Defendants to provide full restitution in the form of a refund of the full purchase price of the Sunscreen Product to Plaintiff and Class members.

57.      Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

(Violations of the Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *Et Seq.* Against Defendants on Behalf of the Class)

58.      Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

59.      The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…." Cal. Bus. & Prof. Code § 17200.

*Fraudulent Acts and Practices*

60.      Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the UCL.

61.      Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Sunscreen Products contain only the ingredients listed in the label,

which is untrue, and failing to make any mention that the Sunscreen Products are adulterated with benzene, a known human carcinogen.

62.    Similarly, Defendants have engaged, and continue to engage, in deceptive, untrue, and misleading advertising by representing that their Sunscreen Products (1) "provide today's busy family with sun protection without worry when used and reapplied as directed,"[48] (2) offer "safe and effective sun protection,"[49] and (3) are "safe for [their] intended use based on the formulation, testing results, and the long history of safe consumer use."[50] Representatives of one or more Edgewell Defendants have further represented to consumers that "all Banana Boat products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant health regulations, including SPF tests."[51] In fact, to this day, Defendants' website continues to represent— and even guarantee—to consumers that its Sunscreen Products offer "protection you can trust:"

PROTECTION YOU CAN TRUST

We've been protecting fun under the sun for 40 years and counting. Our dedication to safety and high-quality sunscreen means guaranteed fun-in-the sun protection that you can trust every day. Whether spray, lotion or stick, our easy-to-apply products are designed with one idea in mind: to help you and your family enjoy every moment outdoors.[52]

---

[48] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[49] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[50] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[51] https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin.
[52] https://www.bananaboat.com/collections/browse-by-category/category_04-general-protection?sort_by=manual. (last visited July 23, 2021).

Such representations cannot be true, however, given that independent testing by Plaintiff, Valisure, Yale University, and the Defendants themselves has confirmed that Defendants' Sunscreen Products contain a known but undisclosed human carcinogen (i.e. benzene). Defendants further market their Sunscreen Products specifically to parents, by offering a Kids and Baby portfolio of Sunscreen Products. These marketing efforts claim to "know families are interested in sunscreen without any extra ingredients like dyes or perfumes – but with the same trusted protection Banana Boat has always provided"[53]—all while failing to disclose to parents that products such as Banana Boat Spray Kids Max Protect & Play Sunscreen C-Spray SPF 100 (as tested by Valisure) contains the "extra ingredient" benzene.

63.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

*Unlawful Acts and Practices*

64.     The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.[54]

---

[53] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[54] Defendants' conduct also violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

65.      Defendants' conduct also violates Cal. Health & Safety Code §
111730, which prohibits the sale of any misbranded product. The Sunscreen Products,
that bear labeling that they did not contain benzene, are "false and misleading in any
particular" in violation of Health & Safety Code § 111730.

66.      By violating the FTC Act and/or Cal. Health and Safety Code §
111730, Defendants have engaged in unlawful business acts and practices which
constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

*Unfair Acts and Practices*

67.      Any business practice that offends an established public policy or is
immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers
constitutes an "unfair" practice under the UCL.

68.      Defendants have engaged, and continue to engage, in unfair business
practices. This conduct includes representing that the Sunscreen Products do not contain
benzene when in fact some do contain benzene.

69.      Defendants have engaged, and continue to engage, in conduct that
violates the legislatively declared policies of the FTC Act against committing unfair
methods of competition and unfair or deceptive acts or practices in or affecting
commerce. Defendants gained an unfair advantage over its competitors, whose
advertising for products must comply with the FTC Act.

70.      Defendants' conduct, including misrepresenting the safety and
efficacy of the Sunscreen Products, is substantially injurious to consumers. Consumers

are purchasing and, as instructed in the label, "apply[ing] liberally" sunscreen without knowledge that there is a risk the Sunscreen Products are adulterated with a human carcinogen. Moreover, such conduct has, and continues to cause, substantial injury to consumers because consumers would not have paid for sunscreens potentially adulterated with benzene but for Defendants' false labeling, advertising, and promotion. Thus, Plaintiff and the putative Class have "lost money or property" as required for UCL standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

71.     Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representation of the ingredients contained in the Sunscreen Products' labels and injury resulted from ordinary use of the Sunscreen Products, consumers could not have reasonably avoided such injury.

72.     By committing the acts described above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

73.     As a result of the conduct described above, Defendants have been unjustly enriched at the expense of the Plaintiff and the putative Class.

74.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code 17203.

75.     Wherefore, Plaintiff prays for judgment against Defendants, as set forth hereafter. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of the Sunscreen Products is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

76.     In accordance with California Business & Professions Code section 17203,[55] Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

77.     On behalf of Plaintiff and the putative Class, Plaintiff also seeks an order for the restitution of all monies spent on the Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[56] In addition, because the Sunscreen Products either contain benzene or risk containing benzene, a known human carcinogen, the measure of restitution should be rescission and full refund insofar as the Sunscreen Product products and their associated labels are

---

[55] "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

[56] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

"The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

worthless. But for Defendants' misrepresentations and omissions, Plaintiff would have paid nothing, or paid significantly less, for Sunscreen Products that contain benzene or may contain benzene. Indeed, there is no discernible "market" for an over-the-counter sunscreen product that is or may be adulterated with a known poison. As recognized by the World Health Organization, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[57] As a result, the Sunscreen Products are rendered valueless.

## SECOND CAUSE OF ACTION

(Violations of California's False Advertising Law, California Business & Professions Code §§17500, Et. Seq., Against Defendants on Behalf of the Class)

78.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

79.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

80.     As set forth herein, Defendants' claims that their Sunscreen Products' ingredients do not contain benzene are false and likely to deceive the public because some of Defendants' Sunscreen Products do in fact contain benzene.

81.     Similarly, Defendants' advertising claims that their Sunscreen Products' ingredients are safe and effective are untrue or misleading because these

---

[57] https://www.who.int/ipcs/features/benzene.pdf.

claims fail to disclose that the Sunscreen Products may in fact be adulterated by containing a known human carcinogen -- specifically, benzene.

82.    Defendants knew, or reasonably should have known, that the claims were untrue or misleading.

83.    Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff and putative Class members intend to purchase Defendants' Sunscreen Products in the future if they can be assured that the Sunscreen Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendants may continue to advertise, promote and sell adulterated Sunscreen Products that deceive the public as to their ingredients and safety. As a result, Plaintiff and the putative class are likely to again be wronged in a similar way. For instance, if Plaintiff and the putative class encounter Defendants' Sunscreen Products in the future and there is risk those products still contain benzene or may contain benzene, Plaintiff and the putative class may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

84.    Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Sunscreen Products.

## THIRD CAUSE OF ACTION

(Violations of the Consumers Legal Remedies Act (the "CLRA"), Cal. Bus. & Prof. Code § 1750, *Et Seq.* Against Defendants on Behalf of the Class)

85.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

86.     Defendants have employed or committed methods, acts, or practices declared unlawful by Cal. Civ. Code §1770 in connection with the products by representing that the Sunscreen Product's ingredients do not contain benzene.

87.     In particular, Defendants' failure to list benzene as an ingredient in the Sunscreen Products and representations regarding the safety and nature of the ingredients in the Sunscreen Products violates California Civil Code § 1770(a), under the following subdivisions:

(5)     by representing that the Sunscreen Products have characteristics, uses and/or benefits which they do not;

(7)     by representing that the Sunscreen Products were of a particular standard, quality, or grade which they are not;

(9)     by advertising the Sunscreen Products with intent not to sell them as advertised; and

(16)    by representing that the Sunscreen Products have been supplied in accordance with previous representations when they have not.

88.     Pursuant to § 1780(a) of the CLRA, Plaintiffs seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.  Plaintiff, the members of the

California Class, and the public at large shall be irreparably harmed if such an order is not granted.

89.     On June 10, 2021, Plaintiffs provided notice to Defendant pursuant to California Civil Code §1782 for violations of the CLRA on behalf of themselves and similarly situated individuals.

90.     More than thirty (30) days have passed since Defendants received Plaintiff's notice of the alleged CLRA violation. As of this filing, Defendants have not offered any appropriate correction, repair, replacement, or other remedy, or agreed that one would be given within a reasonable time in response to the notice of CLRA violation. Indeed, Defendants continue to sell the adulterated Sunscreen Products to the public. Accordingly, pursuant to §1782 of the CLRA, Plaintiff seeks actual damages. Specifically, as described herein, Plaintiff and members of the putative class have suffered actual damages insofar as they lost money by purchasing Sunscreen Products they would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein.

91.     As a direct and proximate result of Defendants' violation of the CLRA, Plaintiff and the putative class seek actual damages in the amount that each individual paid for Defendants' Sunscreen Products, but in no case shall the total award of damages be less than the minimum one thousand dollars ($1,000) as provided under Cal. Civ. Code § 1780(a)(1).

## <u>FOURTH CAUSE OF ACTION</u>

(Unjust Enrichment/Quasi Contract - Against Defendants on Behalf of the

Class)

92.      Plaintiff incorporates by reference and re-alleges each and every

allegation contained above, as though fully set forth herein.

93.      Plaintiff and members of the class conferred upon Defendants non-

gratuitous payments for Sunscreen Products that they would not have due to

Defendants' deceptive labeling, advertising, and marketing.  Defendants accepted or

retained the non-gratuitous benefits conferred by them with knowledge and awareness

that, as a result of Defendants' deception, the Plaintiff and members of the class were

not receiving a product of the quality, nature, fitness, or value that had been represented

by Defendants and reasonable consumers would have expected.

94.      Defendants have been unjustly enriched in retaining the revenues

derived from purchases of the Sunscreen Products by the Plaintiff and members of the

Class, which retention under these circumstances is unjust and inequitable because the

Sunscreen Products contain benzene.

95.      Retaining the non-gratuitous benefits conferred upon Defendants by

the Plaintiffs and members of the Class under these circumstances made Defendants'

retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants must

pay restitution to the Plaintiffs and Class for their unjust enrichment, as ordered by the

Court.

## FIFTH CAUSE OF ACTION

(Negligent Misrepresentation/Omission - Against Defendants on Behalf of the Class)

96.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

97.     Through their labeling and advertising, Defendants made representations to the Plaintiff and the Class members concerning the active and inactive ingredients in their Sunscreen Products.

98.     Defendants have a duty to provide accurate information to consumers with respect to the ingredients identified in their Sunscreen Products as detailed above.

99.     Defendants failed to fulfill their duty to accurately disclose in its labeling and advertising that the Sunscreen Products contained benzene.

100.    Additionally, Defendants have a duty to not make false representations with respect to their Sunscreen Products.

101.    Defendants failed to fulfill their duty when they made false representations regarding the quality and safety of the Sunscreen Products as detailed above.

102.    Such failures to disclose on the part of Defendants amounts to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

103.     Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

104.     By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Breach of Express Warranty - Against Defendants on
Behalf of the Class)

105.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

106.     As detailed above, Defendants, through their written literature, packaging and labeling, and written and media advertisement, expressly warranted that the Sunscreen Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

107.     Moreover, by its very terms, the Sunscreen Products' labeling (specifically in the "Sun *Protection* Measures")[58] represents that the regular use of broad spectrum sunscreen is "protective" and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health

---

[58] Specifically, the "Directions" section of Banana Boat's Ultra Sport SPF 50 Sunscreen Product states: "**Sun Protection Measures**: Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher . . . ." (emphasis in original).

risk. Defendants breached this express warranty because their Sunscreen Products are not safe. To the contrary, the Sunscreen Products pose a dangerous health risk because they contain benzene—a chemical that actually *increases* the risk of cancer, with exposure ocurring either through inhalation or skin absorption, among other ways.

108.     Plaintiff and the Class read and relied on these express warranties provided by Defendants in the packaging, labeling and written advertisements.

109.     Defendants breached their express warranties because the Sunscreen Products are defective and not reasonably safe for their intended use.

110.     Defendants knew or should have known that the Sunscreen Products did not conform to their express warranties and representations and that, in fact, the Sunscreen Products are not safe and pose serious health risks because they contain benzene.

111.     Plaintiff and the Class have suffered harm on account of Defendants' breach of their express warranty regarding the fitness for use and safety of the Sunscreen Products and are entitled to damages to be determined at trial.

## SEVENTH CAUSE OF ACTION

(Breach of Implied Warranty - Against Defendants on Behalf of the Class)

112.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

113.     Because the Sunscreen Products contained benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Sunscreen Products are used.

114.     Plaintiff and members of the Class purchased the Sunscreen Products in reliance upon Defendants' skill and judgment, the implied warranties of fitness for the purpose, and the written labels and advertisements of the Defendants with respect to their Sunscreen Products.[59]

115.     The Sunscreen Products were not altered by Plaintiff or members of the Class.

116.     Plaintiff and members of the Class were foreseeable users of the Sunscreen Products.

117.     Plaintiff and members of the Class used the Sunscreen Products in the manner intended.

118.     As alleged, the Sunscreen Products were not adequately labeled and did not disclose that they contain benzene.

119.     The Sunscreen Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendants.

---

[59] *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696 (1954).

120.     Defendants impliedly warranted that the Sunscreen Products were merchantable, fit and safe for ordinary use.

121.     Defendants further impliedly warranted that the Sunscreen Products were fit for the particular purposes for which they were intended and sold.

122.     Contrary to these implied warranties, the Sunscreen Products were defective, unmerchantable, unfit for their ordinary use when sold, unfit for the particular purpose for which they were sold, and did not conform to the promises or affirmations of fact made on the container or label.

123.     By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

## **EIGHTH CAUSE OF ACTION**

(Strict Product Liability – Failure to Warn - Against Defendants

on Behalf of the Class)

124.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

125.     Defendants knew or should have known that their Sunscreen Products contained benzene, which is a known carcinogen.

126.     Defendants had a duty to warn Plaintiff and the Class about the presence of benzene in their Sunscreen Products.

127.      In addition, Defendants had a duty to warn Plaintiff and the Class about the dangers of the presence of benzene in their Sunscreen Products.

128.     Defendants knew that the risk of exposure to benzene from use of its products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for benzene content.

129.     Defendants did not warn Plaintiff and the Class that the Sunscreen Products contained benzene or about the dangers of the presence of benzene in their Sunscreen Products.

130.     Plaintiff and the Class have suffered damages by purchasing Sunscreen Products in a manner promoted by Defendants, and in a manner that was reasonably foreseeable by Defendants, because benzene is a known carcinogen that is absorbed, among other ways, through inhalation and through the skin. Plaintiff and the members of the Class would not have purchased Defendants' Sunscreen Products had they known they contained benzene.

131.     Plaintiff and the Class were justified in their reliance on Defendant's labeling and advertising of the product for use as sunscreen.

132.     By reason thereof, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### (Strict Product Liability – Manufacturing Defect - Against

### Defendants on Behalf of the Class)

133.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

134.     The Sunscreen Products contained a manufacturing defect when they left the possession of Defendants. Specifically, the Sunscreen Products differ from Defendants' intended result or from other lots of the same product line because they contain benzene.

135.     Plaintiff used the Sunscreen Products in a way that was reasonably foreseeable to Defendants.

136.     As a result of the defects in the manufacture of the Sunscreen Products, Plaintiffs and the Class suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from selling all Sunscreen Products that are not already subject to recall;

C.   An order enjoining Defendants from suggesting or implying that their Sunscreen Products are safe and effective for human application;

D.   An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling any existing Sunscreen Products that have not already been recalled;

E.   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.   An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the Unfair Competition Law or other California law, plus pre- and post-judgment interest thereon;

G.   An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.   An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.   An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J.   An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 9, 2022

By: /S/Sin-Ting Mary Liu

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**

SIN-TING MARY LIU (282884)
R. JASON RICHARDS (FL Bar #18207)
(admitted *Pro Hac Vice*)
17 E. Main St., Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com
E-mail: jrichards@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
rfisher@bradleygrombacher.com