STINSON LLP
John Moticka, MOSB 31760 (*admitted pro hac vice*)
john.moticka@stinson.com
7700 Forsyth Blvd, Suite 1100,
St. Louis, Missouri 63105
Telephone:  314.259.4562 Facsimile: 314. 259.4467

Megan McCurdy, MOSB 60071 (*admitted pro hac vice*)
megan.mccurdy@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:  816.691.2649 Facsimile: 816.412.9733

Ashley Crisafulli, MOSB, 71852 (*admitted pro hac vice*)
ashley.crisafulli@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:  816.691.2676 Facsimile: 816.412.9733

SELMAN BREITMAN LLP
John P. Katerndahl (127646)
jkaterndahl@selmanlaw.com
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025
Telephone: 310.689.7025 Facsimile: 310.473.2525

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BETH BOWEN, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., SUN PHARMACEUTICALS, LLC<br><br>Defendants. | Case No.:  2:21-cv-04356-MWF-AGR<br>*Honorable Michael W. Fitzgerald*<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing Date: December 5, 2022**<br><br>**Hearing Time: 10:00 a.m.** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

**I.   PLAINTIFF LACKS ARTICLE III STANDING.** ........................................ 2

    A.   Plaintiff fails to allege an injury-in-fact to establish Article III standing. ..................................................................................................... 2

    B.   Plaintiff lacks CLRA, FAL, and UCL statutory standing. ............................ 8

**II. PLAINTIFF'S CLAIMS ARE PREEMPTED** ............................................... 8

    A.   Requiring labeling different from the FDA is expressly preempted. .............. 9

    B.   The FDA allows up to 2 ppm of benzene in OTC sunscreen products. ........ 13

    C.   Plaintiff's claims are impliedly preempted. .................................................. 19

    D.   Attempts to enforce the FDCA through a private action are impliedly preempted. .................................................................................................... 20

**III. PLAINTIFF'S CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY JURISDICTION.** ......................................................................................... 21

    A.   The FDA is currently responding to the Valisure Citizen Petition. ............. 22

    B.   Any decision on Plaintiff's claims could conflict with the FDA's forthcoming update on OTC sunscreen regulation. ...................................... 23

    C.   The FDA possesses the expertise and sole discretion to determine the amount of benzene permitted in sunscreen products. ................................... 23

    D.   Plaintiff's claims raise technical and policy considerations within the FDA's field of expertise. .............................................................................. 24

**IV. PLAINTIFF FAILS RULE 9(B)'S HEIGHTENED PLEADING STANDARD.** 25

**V. PLAINTIFF FAILS TO STATE A CLAIM.** ............................................... 26

    A.   Reasonable consumers do not expect product labels to be molecularly pure. ............................................................................................................. 26

    B.   Plaintiff's express warranty claim fails because Defendants did not promise what Plaintiff alleges. ..................................................................... 33

    C.   Plaintiff's tort claims are barred by the economic loss doctrine. ................. 34

    D.   Plaintiff fails to allege the sunscreen she purchased is unreasonably dangerous. .................................................................................................... 34

    E.   Plaintiff's equitable claims fail because she does not lack an adequate remedy. ........................................................................................................ 35

CONCLUSION ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade-Heymsfield v. Danone US, Inc.*,
  No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14,
  2019), *appeal dismissed*, No. 19-56082, 2020 WL 5513552 (9th Cir.
  2020) .................................................................................................. 27

*Anglin v. Edgewell Personal Care Co.*,
  No. 4:18-CV-00639-NCC, 2018 WL 6434424 (E.D. Mo. Dec. 7, 2018) ................... 17

*Annunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................ 33

*Arizona v. United States*,
  567 U.S. 387 (2012) .................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 26

*Atay v. Cty of Maui*,
  842 F.3d 688 (9th Cir 2016) ....................................................................... 9

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's
  Nat. Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ..................................... 27

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ..................... 32

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 26

*Benson v. Honda Motor Co.*,
  26 Cal. App. 4th 1337 (Cal. Ct. App. 1994) .................................................. 35

*Berger v. L.L. Bean, Inc.*,
  351 F. Supp. 3d 256 (E.D.N.Y. 2018) ............................................................ 6

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ...................................................................... 5

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Bodle v. Johnson & Johnson Consumer Inc.*,
  21-cv-07742-EMC, Dkt. #28 (N.D. Cal., Feb. 24, 2022).............................4

*Boysen v. Walgreen Co.*,
  No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012)...............5

*Bronson v. Johnson & Johnson, Inc.*,
  No. C 12–04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ..........8

*Bush v. WellPet, LLC*,
  534 F. Supp.3d 179 (D. Mass. 2021) ..........................................................27

*Capital Cities Cable, Inc. v. Crisp*,
  467 U.S. 691 (1984)......................................................................................20

*Carter v. Novartis Consumer Health, Inc.*,
  582 F. Supp. 2d 1271 (C.D. Cal. 2008) .......................................................12

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) ..........................................................................9

*David v. Shah*,
  821 F.3d 231 (2d Cir. 2016) .........................................................................15

*Doe v. Bausch & Lomb, Inc.*,
  443 F. Supp. 3d 259 (D. Conn. 2020)....................................................10, 12

*Doss v. Gen. Mills, Inc.*,
  816 F. App'x. 312 (11th Cir. 2020) ................................................................6

*Early v. Henry Thayer Co., Inc.*,
  No. 4:20-CV-1678-RLW, 2021 WL 3089025 (E.D. Mo. July 22, 2021) ....12

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ........................................................................26

*Eckler v. Neutrogena Corp.*,
  238 Cal. App. 4th 433 (2015) .......................................................................10

*In re Epogen & Aranesp Off-Label Mktg & Sales Practices Litig.*,
  590 F. Supp. 2d 1282 (C.D. Cal. 2008) .......................................................20

*Far East Conference v. U.S.*,
  342 U.S. 570 (1952).......................................................................................22

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Fisher v. Monster Beverage Corp.*,
  656 F. App'x. 819 (9th Cir. 2016) ................................................................. 8

*Forouzesh v. CVS Pharmacy, Inc.*,
  No. 2:18-CV-04090-ODW, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019) .................. 16

*Forouzesh v. Starbucks Corp.*,
  714 F. App'x. 776 (9th Cir. 2018) .............................................................. 27

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995) .............................................................................. 19

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
  831 F. Supp. 2d 507 (D. Mass. 2011) ........................................................... 6

*In re Gen. Mills Glyphosate Litig.*,
  No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ........................... 27

*Graham v. VCA Animal Hosps., In*c.,
  729 F. App'x. 537 (9th Cir. 2018) .............................................................. 8

*Green v. PepsiCo, Inc.*,
  No. 18-62011-civ, 2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ........................ 6

*Haskins v. Symantec Corp.*,
  No. 13-CV-01834-JST, 2014 WL 2450996 (N.D. Cal. June 2, 2014),
  *aff'd*, 654 F. App'x. 338 (9th Cir. 2016) ....................................................... 25

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
  No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ............. 27, 28

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ....................... 5

*Hsieh v. FCA US LLC*,
  440 F. Supp. 3d 1157 (S.D. Cal. 2020) ......................................................... 34

*Huertas v. Bayer U.S., LLC*,
  No. 2:21-cv-20021-SDW-CLW, 2022 WL 3572818 (D.N.J. Aug. 19,
  2022) .................................................................................... 5, 6, 7

*Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*,
  490 F. Supp. 3d 533 (D. Conn. 2020) .......................................................... 10

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*In re Johnson & Johnson Sunscreen Marketing Sales Pracs. and Product
    Liab. Litig.*,
    No. 0:21-md-03015-Singhal, Dkt. #55 ............................................................ 4, 29, 35

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................. 25

*Kimca v. Sprout Foods, Inc. d/b/a Sprout Organic Foods*,
    No. 21-cv-12977-SRC, 2022 WL 1213488 (D.N.J. Apr. 25, 2022) ........................ 5, 6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...................................................................................... 1

*Koronthaly v. L'Oreal USA, Inc.*,
    No. 07-cv-5588 (DMC), 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd*,
    374 F. App'x. 257 (3d Cir. 2010) .................................................................................. 5

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ...................................................................................... 26

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................ 3

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*,
    592 F. Supp. 2d 1147 (D. Minn. 2009)........................................................................ 10

*Mee v. I A Nutrition, Inc.*,
    *No.* C-14-5006-MMC, 2015 WL 2251303 (N.D. Cal. May 13, 2015) ........................ 19

*Melendez v. ONE Brands, LLC*,
    No. 18-CV-06650, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) .............................. 19

*Moore v. Trader Joe's Company*,
    4 F.4th 874 (9th Cir. 2021) ......................................................................................... 28

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
    No. 3:18-CV-01538-H-MDD, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ................. 33

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
    No. 20-56227, __ F.4th __, 2022 WL 4175106 (9th Cir. Sept. 13, 2022) ............. 14, 21

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019) ........................................................................ 27

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ............................ 5

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) ............................ 20

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010) ............................ 21

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ............................ 9

*Portelli v. WWS Acquisition, LLC*,
  No. 17-CV-2367 DMS (BLM), 2018 WL 9539773 (S.D. Cal. July 6, 2018) ............................ 33

*In re Procter & Gamble Aerosol Products Marketing and Sales Pracs. Litig.*,
  No. 2:22-md-03025-MHW-CMV, Dkt. #23 ............................ 4, 29, 35

*Schloegel v. Edgewell Personal Care Co.*,
  No. 4:21-cv-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ............................ 4

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ............................ 35

*Smith v. Depuy Orthopaedics, Inc.*,
  No. 11-4139-JAP, 2013 WL 1108555 (D.N.J. Mar. 18, 2013) ............................ 10

*Soja v. Medtronic, Inc.*,
  No. 2:19-cv-00219, 2019 WL 2391609 (E.D. Cal. June 6, 2019) ............................ 21

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................ 35

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ............................ 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ............................ 3

*Syntek Semiconductor Co. v. Microchip Tech Inc.*,
  307 F.3d 775 (9th Cir. 2002) ............................ 22

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Thornhill Pub'g. Co., Inc. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979) ............................................................... 3

*U.S. v. W. Pac. R. R. Co.*,
   352 U.S. 59 (1956) ......................................................................... 22

*United States v. Ng Lap Seng*,
   934 F.3d 110 (2d Cir. 2019) ............................................................ 15

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ...................................................................... 3

*Widjaja v. JPMorgan Chase Bank, N.A.*,
   No. CV 19-7825-MWF-AFM, 2020 WL 2949832 (C.D. Cal. Mar. 31,
   2020) ...................................................................................... 34

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................... 26

**Constitution**

U.S. Const. art. III ..................................................................... 1, 2, 3, 8

U.S. Const. art. VI ............................................................................ 8

**Statutes**

21 U.S.C. 331 ........................................................................... 1, 9, 20

21 U.S.C. § 337 ............................................................................... 20

21 U.S.C. 351 ................................................................................. 20

21 U.S.C. § 352 .................................................................. 1, 9, 10, 13, 20

21 U.S.C. § 355 ...................................................................... 9, 13, 10

21 U.S.C. § 379 ...................................................................... 9, 16, 19

Cal. Bus. & Prof. Code §§ 17200, *et se*q. .......................................... 2, 25

Cal. Bus. & Prof. Code §§ 17500, *et seq.* .......................................... 2, 8, 25

Cal. Civ. Code §§ 1750 *et seq.* .................................................... 2, 8, 25

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

Cares Act, Pub. L. 116-136, Div. A, Title III, § 3854(c), Mar. 27, 2020, 134
Stat. 456 ............................................................................................................ 23

**Regulations, Rules, and Controlling Guidance**

64 Fed. Reg. 27666-01 ............................................................................................. 9

21 C.F.R. § 201 ............................................................................................. 1, 9, 10

21 C.F.R. § 201.10 .................................................................................................. 20

21 C.F.R. § 201.66 ................................................................................... 10, 12, 13

21 C.F.R. § 201.237 ........................................................................................ 10, 12

21 C.F.R. § 210 ............................................................................................... 17, 18

21 C.F.R. § 210.3 .......................................................................................... 11, 17

21 C.F.R. § 211 ............................................................................................... 17, 18

21 C.F.R. § 211.68 .................................................................................................. 18

21 C.F.R. §§ 211.160 ..................................................................................... 17, 18

21 C.F.R. § 211.194 ............................................................................................... 18

21 C.F.R. § 250 ...................................................................................................... 10

21 C.F.R. § 330 ........................................................................................................ 9

21 C.F.R. § 330.1 ..................................................................................... 12, 13, 16, 17

21 C.F.R. § 352 .................................................................................................. 9, 20

21 C.F.R. § 352.1 .................................................................................................. 20

21 C.F.R. § 352.10 ................................................................................................. 20

Fed. R. Civ. P. 8 .................................................................................................... 26

Fed R. Civ. P. 9 ................................................................................... 1, 2, 25, 26

Fed. R. Civ. P. 12 ........................................................................................ 1, 2, 26

Food and Drug Administration, *Cosmetic Labeling Guide,* https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide ................................................................. 19

Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs ................................. 21, 22, 23, 24, 31, 32, 37

Food and Drug Administration, News Release, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs,*" December 23, 2021, https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs ................................. 21, 22, 23, 30, 32, 33, 37

Food and Drug Administration, Training Module, *Bringing an Over-the Counter (OTC) Drug to Market*, https://www.accessdata.fda.gov/scripts/cder/training/otc/topic5/images/factor%205.pdf ................................................................. 19

General Chapter 467, UNITED STATES PHARMACOPEIA CONVENTION, https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/revisions/gc-467-residual-solvents-ira-20190927.pdf ................................. 21, 22, 24

*Impurities: Guidelines for Residual Solvents*, INTERNATIONAL COUNCIL FOR HARMONISATION OF TECHNICAL REQUIREMENTS FOR PHARMACEUTICALS FOR HUMAN USE, 2021 at 11, ("ICH Q3C") ................................. 21, 22, 24

**Other Authorities**

Food and Drug Administration, *Edgewell Personal Care Issues Voluntary Nationwide Recall of Banana Boat Hair & Scalp Sunscreen Due to the Presence of Benzene,* July 29, 2022, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due ................................................................. 15

J. Callaway, *Dermatologists say these sunscreen ingredients can cause blisters and burns on some children's skin* (June 21, 2019), https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin). ................................................................. 17, 40, 41

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Press Release for Simply Protect™*, EDGEWELL, May 5, 2018,
   https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-
   2018-130128066?sc%20_lang=en..............................................................17, 38, 39, 40

*Safety Data Sheet,* EDGEWELL PERSONAL CARE, LLC March 2, 2016,
   https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-
   Oil-Spray-SPF-4.pdf ................................................................................................17, 40

Therapeutic Goods Administration, *Banana Boat Sunscreen Sprays SPF
   50+ (aerosol sunscreen)*, Dec 22, 2021,
   https://www.tga.gov.au/news/safety-alerts/banana-boat-sunscreen-sprays-
   spf-50-aerosol-sunscreen (last accessed September 21, 2022)....................................15

Defendants respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff Beth Bowen's ("Plaintiff") putative Second Amended Class Action Complaint, Dkt. #72 ("SAC") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6). For the reasons set forth below, this Court should dismiss Plaintiff's SAC with prejudice.

## **INTRODUCTION**

Plaintiff alleges Defendants[1] fraudulently marketed their Banana Boat® sunscreen products via advertising and product labels.[2] Plaintiff claims Defendants failed to disclose trace amounts of benzene in the products. *See* SAC ¶¶ 1, 7. Plaintiff bases her claims on testing performed by a third-party pharmacy, Valisure,[3] and its Citizen Petition filed with the Food and Drug Administration ("FDA").[4] *See also* SAC ¶¶ 8, 27, 29.

The Court should dismiss Plaintiff's SAC for the following reasons:

*First*, Plaintiff lacks Article III standing. Plaintiff has no "concrete and particularized injury" because her testing, indicating 0.29 ppm of benzene, falls well below the FDA's 2 ppm benzene limit.

*Second*, Plaintiff's claims are preempted by the Food Drug and Cosmetic Act ("FDCA"), which authorizes the FDA to regulate, *inter alia*, the ingredients and labeling of nonprescription over-the-counter ("OTC") drugs, including the "safety" and "efficacy" of the sunscreen products at issue here. *See* 21 U.S.C. §§ 351, 352; 21 C.F.R. § 201.

*Third*, Plaintiff's claims are subject to the primary jurisdiction of the FDA to

---

[1] Not all Defendants are involved in the manufacture and sale of the products at issue. Defendants reserve the right to challenge, if necessary, the real party in interest.

[2] Defendants do not adopt Plaintiff's definition of "Sunscreen Products," *see* SAC ¶ 16; it includes products containing no benzene and products not purchased by Plaintiff.

[3] **Exhibit 1** ("McCurdy Decl."), Ex. F is a copy of testing Plaintiff provided in her initial disclosures. The incorporation by reference doctrine permits the Court to take into account documents "whose contents are alleged in a complaint" or "which the plaintiff's claim depends on," whose authenticity no party questions but which are not physically attached to the plaintiff's pleading. *See e.g. Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

[4] The Valisure Citizen Petition is attached as McCurdy Decl., Ex. A.

promote uniformity and avoid conflict with the FDA's recent statements allowing up to 2 ppm of benzene in sunscreen products, the FDA's forthcoming decision on the Valisure Citizen Petition, and the FDA's forthcoming announcement of additional regulations for OTC sunscreen products.

*Fourth*, Plaintiff fails to meet the heightened pleading requirement of Rule 9(b). Plaintiff fails to allege pre-purchase reliance on any misleading "advertising" or "marketing" of the product and why the alleged advertising is misleading.

*Fifth*, Plaintiff fails to state a claim for relief because a reasonable consumer would not believe advertising or labels that comply with FDA requirements and guidelines for trace amounts of benzene are misleading.

*Sixth*, Plaintiff's express warranty claim fails because she cannot enforce a warranty she created, with her own words, when Defendants did not agree to such a promise.

*Seventh*, the economic loss doctrine bars the Plaintiff's common law claims.

*Eighth*, Plaintiff's strict product liability claims for failure to warn and manufacturing defect fail because the products are not unreasonably dangerous.

*Finally*, Plaintiff's equitable claims fail because she fails to allege that she lacks an adequate remedy at law.

For these reasons, the Court should dismiss all of Plaintiff's claims[5] with prejudice.

## **ARGUMENT**

## I.  PLAINTIFF LACKS ARTICLE III STANDING.

## A. Plaintiff fails to allege an injury-in-fact to establish Article III standing.

The Court should dismiss Plaintiff's claims because the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the United States Constitution dictates

---

[5] Plaintiff alleges purported violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; unjust enrichment/quasi-contract; negligent misrepresentation/omission; breach of express warranty; breach of implied warranty; strict product liability for failure to warn; and strict product liability for manufacturing defect.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

that jurisdiction of the federal courts extends only to actual cases or controversies. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590, (1992). The Supreme Court has held that a plaintiff must suffer an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). Where a complaint makes allegations of potential future injury, the threat of future harm must be "certainly impending," as opposed to a mere possibility. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *Lujan*, 504 U.S.at 564. A complaint will be dismissed if it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub 'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Plaintiff fails to allege an injury-in-fact required to establish standing under Article III.

1. **Plaintiff fails to allege a particularized injury for two[6] of the products she purchased.**

   For Plaintiff's alleged purchases of Banana Boat® Ultra Sport SPF 30 and Banana Boat® Ultra Sport SPF 100, Plaintiff does nothing to remedy the pleading deficiency noted in this Court's prior ruling that "Plaintiff has not adequately alleged a particularized injury sufficient to give her standing, as she does not allege that the sunscreen she purchased was from a batch contaminated with benzene or that her sunscreen actually contained benzene, only that there was some possibility of the sunscreen containing benzene." Order Granting Motion to Dismiss FAC, Dkt. #71 at 1. Plaintiff still fails to allege that these two products she purchased were tested for benzene[7] or from the same batch as a bottle that was tested for benzene.[8] Having fully used the product and discarded the bottles, Plaintiff cannot make

---

[6] Plaintiff also alleges she purchased a third bottle, a Banana Boat® Ultra Sport sunscreen spray, tested by Valisure to contain 0.29 ppm.  SAC ¶ 8; McCurdy Decl., Ex. F.

[7] In fact, Plaintiff provided a test in her initial disclosures that showed a Banana Boat® Ultra Sport SPF 30 that "PASSES Valisure impurity testing" with a result less than the lower limit of quantitation. *See* McCurdy Decl., Ex. F.

[8] Valisure's testing included a Banana Boat® Ultra Sport lotion SPF 100 that contained no benzene. McCurdy Decl., Ex. A, B. In any event, Valisure affirmatively states that its testing should not be used for "efficacy" purposes and admits that test results of one sample cannot be imputed to non-tested batches, lots, or samples. McCurdy Decl., Ex. D at 3-4.

such allegations. *See* SAC ¶ 8.

Plaintiff's claims related to her purchase of Banana Boat® Ultra Sport sunscreen SPF 30 and SPF 100 are "based on the hypothetical "***risk***" that the products contained benzene  (SAC ¶¶ 6, 7) and, thus, consistent with *Schloegel*[9] and *Bodle*,[10] and as fully briefed in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkts. #50, 58, 60, 62, 65, 69) Plaintiff's claims should be dismissed for failure to satisfy injury-in-fact required to for standing.

**2.  Plaintiff fails to plausibly allege an injury for the third product she purchased because 0.29 ppm is under the FDA's 2 ppm limit.**

Plaintiff's theory of economic harm—that "Plaintiff suffered economic injury when she spent money to purchase sunscreen products she would not have otherwise purchased, or paid less for"—is premised on Plaintiff's hypothetical allegations that the presence of 0.29 ppm of benzene in one bottle of purchased sunscreen would render it unsafe or adulterated. SAC at ¶¶ 6, 8, 46(2)[11], 77; McCurdy Decl., Ex. F. But 0.29 ppm of benzene[12] is significantly below the FDA's 2 ppm benzene limit[13] and also below the 1 ppm limit that Plaintiff's counsel agreed to in related proposed settlements.[14] Courts routinely dismiss

---

[9] *Schloegel v. Edgewell Personal Care Co.*, No. 4:21-cv-00631-DGK, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022) (dismissing substantially similar claims for lack of standing), attached as **Exhibit 3.** The *Schloegel* Complaint is attached as **Exhibit 4.**

[10] *Bodle v. Johnson & Johnson Consumer Inc.*, 21-cv-07742-EMC, Dkt. #28 at 1 (N.D. Cal., Feb. 24, 2022) (dismissing substantially similar claims for lack of standing), attached as **Exhibit 5.** The *Bodle* Complaint is attached as **Exhibit 6.**

[11] Plaintiff repeats ¶¶ 45 and 46 in the SAC. Defendants refer to ¶¶ 45 and 46 on p. 21 of the SAC as 45(1) and 46(2) and ¶¶ 45 and 46 on p. 22 of the SAC as 45(2) and 46(2).

[12] All of the Banana Boat® products tested by Valisure contained benzene well below the FDA's 2 ppm limit with amounts detected from zero to 0.43 ppm.

[13] *See infra* § II.A. discussing the FDA's applicable 2 ppm limit for benzene.

[14] *In re Johnson & Johnson Sunscreen Marketing Sales Pracs. and Product Liab. Litig.*, No. 0:21-md-03015-Singhal, Dkt. #55, p. 6 (S.D. Fla. Dec. 17, 2021); *In re Procter & Gamble Aerosol Products Marketing and Sales Pracs. Litig.*, No. 2:22-md-03025-MHW-CMV, Dkt. #23, p. 16 (S.D. Ohio, July 1, 2022). These proposed settlements – with the blessing of consumer plaintiffs – permit other manufacturers to sell sunscreens and other aerosol products to the consuming public that contain up to 1 ppm of benzene.

claims for lack of standing when the amount of a substance in a product is not alleged to exceed limits set by the FDA. *See e.g., Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at \*2 (N.D. Cal. July 19, 2012) (economic injury is insufficient to establish standing when the alleged level of toxins fall "within the FDA advisory guideline" and plaintiff failed to "expressly allege that the levels of lead and arsenic contained in defendant's [products] are likely to cause physical harm").[15] Accordingly, Plaintiff's claims for economic injury are premised entirely on the speculative and hypothetical risk that such trace amounts of benzene are unsafe in sunscreen.

### 3. Plaintiff's allegation that the sunscreen is "worthless" is premised on a speculative risk of harm and, as in *Huertas*, should be dismissed.

Economic injury cannot be premised on a hypothetical risk of harm. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (holding plaintiffs had not suffered an economic injury because the "alleged loss in value [of the iPod] does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss[.]"). "Plaintiff's alleged injury must be supported by more than conclusory statements unsupported by specific facts." *Pels*, 2019 WL 5813422, at \*4.

---

[15] *See also Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at \*3 (N.D. Cal. Sept. 1, 2010) (plaintiffs failed to "plead that the amounts of the substances in Defendants' products have caused harm or create a credible or substantial risk of harm" in light of FDA statement that the amount seen did not "present a hazard."); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at \*5 (N.D. Cal. Nov. 7, 2019) (plaintiff lacked standing for "failing to plead the water *he* purchased "contained violative arsenic levels"); *Koronthaly v. L'Oreal USA, Inc.*, No. 07-cv-5588 (DMC), 2008 WL 2938045, at \*4-5 (D.N.J. July 29, 2008), *aff'd,* 374 F. App'x. 257 (3d Cir. 2010) (plaintiff lacked standing to bring suit against lipstick manufacturer where trace amounts of lead in lipstick did not exceed FDA standards); *Kimca v. Sprout Foods, Inc. d/b/a Sprout Organic Foods*, No. 21-cv-12977-SRC, 2022 WL 1213488, at \*6-8 (D.N.J. Apr. 25, 2022) (finding plaintiffs failed to allege a plausible injury in light of the FDA's suggestion of a standard much higher than the amount of metal found in the foods and the FDA's statement that children were not readily at risk from the amount of heavy metals in the food).

Recently, a New Jersey District Court dismissed similar claims against a manufacturer of a foot spray that was recalled due to the presence of trace amounts of benzene, holding that the plaintiffs did "not sufficiently allege facts that support the conclusion that they suffered economic loss" because the "allegation of the 'worthless' [p]roducts amounts to speculative loss." *Huertas v. Bayer U.S.*, *LLC*, No. 2:21-cv-20021-SDW-CLW, 2022 WL 3572818, at *4-6 (D.N.J. Aug. 19, 2022), attached as **Exhibit 7.** The Court further explained: "Plaintiffs have not presented a particularized account of the actual harm caused, and instead present mere conjecture in asserting that they experienced some sort of loss due to the product's generally asserted worthlessness, and that some hypothetical, future physical harm may befall them from use of the product." *Id*. at 5 (quotations omitted).  The *Huertas* Court rejected the same argument that Plaintiff attempts to make here—that the allegation that a product is worthless because it contained trace amounts of benzene is sufficient to establish standing. *Id.* Here, Plaintiff makes "conclusory assertions that the product is worthless due to the purported benzene contamination but do not set out any facts that demonstrate any actual loss from discarding or sacrificing any portions of the products." *Id*. at 9.

Like *Huertas*, and other cases across the country,[16] there are no plausible allegations that Plaintiff purchased sunscreen products worth less than what she paid. Despite

---

[16] *See e.g. Kimca*, 2022 WL 1213488, at *3 ("even if the products purchased by [p]laintiffs contained heavy metals, the FAC does not adequately allege that the amount of heavy metals in Sprouts products were unsafe or dangerous"); *Doss v. Gen. Mills, Inc*., 816 F. App'x. 312, 314 (11th Cir. 2020) (no economic injury where plaintiffs alleged "ultra-low levels of glyphosate . . . may be harmful to human health."); *Green v. PepsiCo, Inc.*, No. 18-62011-civ, 2019 WL 8810364, at *1, 3 (S.D. Fla. Apr. 12, 2019) (plaintiff failed to allege an injury in fact based on her purchase of Quaker Oats that allegedly contained trace amounts of residual glyphosate); *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 262 (E.D.N.Y. 2018) (finding plaintiff had not alleged economic injury when she alleged only that the value of her product had decreased based on a speculative risk of future injury); *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig*., 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because [p]laintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance.").

admitting that all Banana Boat® sunscreen products tested well below the FDA's 2 ppm benzene limit, Plaintiff makes conclusory allegations that the sunscreen products she purchased are "adulterated and misbranded" and therefore "worthless" because the labels do not disclose that benzene "may be present." *See* SAC ¶¶ 46(2), 77. Under this flawed theory of deception, Plaintiff speculates that she suffered some hypothetical economic harm because she was "denied the opportunity to make informed financial and healthcare decisions[.]" SAC ¶ 7.

Plaintiff's reference to the recall of specific types of sunscreen does nothing to remedy her deficient allegations because she does not allege that she purchased recalled lots of Banana Boat® Hair and Scalp sunscreen[17] or that she purchased sunscreen that is sold in Australia.[18] As this Court has already explained: "Taken to its logical extreme, Plaintiff's position would grant her standing to sue any manufacturer because there was some chance of a defect in the product she purchased, regardless of whether or not she actually purchased a product in the affected batch – Plaintiff could sue an automobile manufacturer after purchasing a car because another car made by the manufacturer had some putative defect, even if her car was demonstrably made at an entirely different factory at an entirely different time period." Order at 7. Further, although "Plaintiff[] quote[s] a scholarly journal article suggesting that there is *probably* no safe level of exposure to benzene, that suggestion does not demarcate the requirements that the FDA sets forth concerning levels of carcinogenic contaminants and amounts to probability and speculation." *Huertas*, 2022 WL 3572818, at *6 (internal citation omitted).

---

[17] FDA, *Edgewell Personal Care Issues Voluntary Nationwide Recall of Banana Boat Hair & Scalp Sunscreen Due to the Presence of Benzene,* July 29, 2022, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due (last accessed September 21, 2022).

[18] TGA, *Banana Boat Sunscreen Sprays SPF 50+ (aerosol sunscreen)*, Dec 22, 2021, https://www.tga.gov.au/news/safety-alerts/banana-boat-sunscreen-sprays-spf-50-aerosol-sunscreen (last accessed September 21, 2022).

Accordingly, Plaintiff fails to plausibly allege an economic injury sufficient to establish injury-in-fact, as required for standing under Article III and the Court should grant Defendants' Motion to Dismiss.

**B.  Plaintiff lacks CLRA, FAL, and UCL statutory standing.**

Plaintiff fails to "demonstrate actual reliance" on the alleged advertisements, as required for standing under the CLRA, FAL, and UCL. *Graham v. VCA Animal Hosps., Inc*., 729 F. App'x. 537, 539 (9th Cir. 2018) (citations omitted). To challenge marketing and advertising, a plaintiff must allege reliance on such marketing and advertising. *See Fisher v. Monster Beverage Corp*., 656 F. App'x. 819, 822 (9th Cir. 2016) (affirming that plaintiff lacked standing when he failed to rely on any specific misrepresentations); *Bronson v. Johnson & Johnson, Inc*., No. C 12–04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013) (lacked standing to challenge advertising when plaintiffs failed to allege they relied on advertisements beyond one vague reference to commercial marketing)*; In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) (dismissing CLRA, FAL, and UCL claims "because Plaintiffs have not plead actual reliance, cannot rely on an inference of reliance, and have not alleged a long-term advertising campaign such that reliance is unnecessary[.]").

Here, Plaintiff alleges the following statements are misleading: a May 5, 2018, Press Release for Simply Protect™;  a March 2, 2016[19] safety data sheet; a June 21, 2019 West Palm Beach Florida News Article; and Banana Boat®'s website. *See* SAC ¶ 62. However, Plaintiff fails to allege she relied on any of the foregoing statements. Thus, Plaintiff has no standing to challenge the "advertising" outlined in her SAC.

**II. PLAINTIFF'S CLAIMS ARE PREEMPTED.**

The Supremacy Clause states that federal law "shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby[.]" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting U.S. Const. Art. VI, cl. 2). As relevant here, "[f]ederal preemption

---

[19] Plaintiff does not even allege she purchased the products until 2017. *See* SAC ¶ 5.

occurs when: (1) Congress enacts a statute that explicitly preempts state law; [or] (2) state law actually conflicts with federal law[.]" *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). Preemption may be either express or implied. *Atay v. Cty of Maui*, 842 F.3d 688, 699 (9th Cir 2016). Congress has unambiguously intended to expressly and impliedly preempt Plaintiff's state law claims which, if successful, would impose labeling and safety requirements different from, and in addition to, the requirements imposed by the FDCA. 21 U.S.C. § 379r(a). The FDCA authorizes the FDA to regulate the safety, efficacy, and labeling of over-the-counter (OTC) drugs, including Banana Boat® sunscreen products allegedly purchased by Plaintiff. *See* 21. U.S.C. §§ 351, 352; 21 C.F.R. § 201, *et seq.*; *see* SAC ¶ 39-46.[20] The CARES Act established that OTC sunscreen products are deemed to be generally recognized as safe and effective if they conform to (1) the general requirements for OTC drugs set out in 21 C.F.R. parts 201, 250, and 330, and (2) the requirements set out in 21 C.F.R. part 352, also known as the 1999 Sunscreen Monograph.[21] *See* 21 U.S.C. § 355h(a)(1) and (2).

Here, Plaintiff alleges Banana Boat® sunscreen labeling is misleading because it "[fails] to include labeling indicating to consumers that the [s]unscreen [p]roducts contain benzene or may contain benzene," and is adulterated and worthless because it may contain trace amounts of benzene, SAC ¶¶ 1, 46(2), 48. Plaintiff supports her claims with non-FDA compliant testing, seeking to impose a testing regiment different than the FDA's. *See* § II.B.3. Plaintiff seeks to create labeling, safety, and testing standards different from that of the FDA, rendering her claims preempted by the FDCA.

**A. Requiring labeling different from the FDA is expressly preempted.**

Plaintiff's claims are preempted because they seek to impose state law-based labeling requirements different from or in addition to those required under § 379r of the FDCA. *See e.g., PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (preempting state law

---

[20] *See* SAC ¶¶ 45(1), 45(2), 46(1), 46(2).

[21] 21 C.F.R. § 352, as published in the 1999 Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph (64 FR 27666-01 at 27687).

claims based on state labeling law that would compel manufacturers to violate federal labeling law).[22] The FDCA requires Defendants to comply with the general labeling requirements for OTC drugs found in 21 C.F.R. Part 201, Subpart C and 21 C.F.R. § 201.327. *See* 21 U.S.C. § 355h. These labeling requirements control the content of the label for directions and intended use, intended purpose, ingredients, disclosures, safety warnings, allergic reactions, and conditions of use. *See* 21 C.F.R. § 201.66(c); 21 C.F.R. § 201.237. "The content and format requirements must be followed unless otherwise specifically provided in the applicable monograph or regulation." 21 C.F.R. § 201.66(a). Defendants are subject to regulatory action if not in compliance with the FDA's content and format requirements. 21 C.F.R. § 201.66(g).

### 1.  Whether benzene should be listed as an ingredient is expressly preempted.

Plaintiff's allegation that Banana Boat® sunscreen products are misbranded because benzene is not listed as an ingredient is different from what the FDCA requires. SAC ¶¶ 28, 46(2), 87. Manufacturers cannot deviate from the FDCA's requirement that only active and inactive ingredients can be listed on a label. 21 U.S.C. § 352(e); 21 C.F.R. 201.66. "Active ingredient" is defined as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment,

---

[22] *See also Doe v. Bausch & Lomb, Inc.*, 443 F. Supp. 3d 259, 275 (D. Conn. 2020) (warning statements on a device's labeling could not be deficient for purposes of state tort claims because plaintiffs did not allege the warning "deviated from those that were approved by the FDA[.]"); *Smith v. Depuy Orthopaedics, Inc.*, No. 11-4139-JAP, 2013 WL 1108555, at *10 (D.N.J. Mar. 18, 2013) (preempting fraudulent omission claim premised on statements concerning the safety and efficacy of a medical device that allegedly excluded relevant product safety information because the FDA had determined the statements in question to be true); *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1164 (D. Minn. 2009) (preempting a state law breach of warranty claim because to find in favor of plaintiff, a jury would be required to conclude the device was unsafe, and safety and effectiveness of device is matter solely for the FDA); *Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*, 490 F. Supp. 3d 533, 545-46 (D. Conn. 2020) (preempting a fraud claim premised on a false representation made on the label of an inhaler because plaintiff was effectively requesting a label change that would require FDA approval); *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433, 441 n.5 (2015).

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

or prevention of disease, or to affect the structure or any function of the body of man or other animals." 21 C.F.R. § 210.3(b)(7). "Inactive ingredient" is defined to include any component that is not an active ingredient. 21 C.F.R. § 210.3(b)(8). "Component" is defined as "any ingredient intended for use in the manufacture of a drug product, including those that may not appear in such drug product." 21 C.F.R. § 210.3(b)(3). Inactive ingredients must be intentionally used in the manufacture of the product.[23]

Benzene is neither an active nor inactive ingredient in Banana Boat® sunscreen products because it was never intended for use in manufacturing. Critically, Plaintiff does not allege benzene was intended for use in manufacturing or intentionally added to the products—a fatal omission when arguing benzene was an inactive ingredient.[24] Rather, Plaintiff characterizes benzene as a residual solvent. SAC ¶ 26 ("The FDA . . . classifies benzene as a "Class 1 solvent[.]"). The FDCA only permits Defendants to list active and inactive ingredients on a product label. To the extent that Plaintiff's claims would require Defendants to list benzene—a substance that is not an ingredient—on the label, the claims are expressly preempted. *See PLIVA*, 564 U.S. at 618.

### 2. Whether sunscreen products should warn consumers of the potential presence of trace amounts of benzene is expressly preempted.

---

[23] Food and Drug Administration, Training Module, *Bringing an Over-the Counter (OTC) Drug to Market*, FOOD AND DRUG ADMINISTRATION, https://www.accessdata.fda.gov/scripts/cder/training/otc/topic5/images/factor%205.pdf (last accessed May 9, 2022). "You should also make sure your inactive ingredients are safe and suitable for your product. Inactive ingredients are described as pharmaceutical necessities and excipients that are used to manufacture drug products. An inactive ingredient is any component of a drug product other than the active ingredient. Examples are: fillers, tablet lubricants and binders, disintegrating agents, colorants, flavoring agents, preservatives, suspending agents, and sweeteners." *Id.*

[24] Even if benzene was intentionally added to the Banana Boat® sunscreen products (it was not, *see* **Exhibit 2** ("Massa Decl.")), it would be considered an incidental ingredient, not requiring disclosure. *See Cosmetic Labeling Guide*, FOOD AND DRUG ADMINISTRATION, at 30, available at https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide (last accessed Sept. 19, 2022). The FDA has declared that "[i]ncidental ingredients need not be declared on the label." *Id.*

Plaintiff's argument that Defendants should have placed a warning on the labeling or otherwise disclosed the risk that trace amounts of benzene were potentially present in certain product lots and batches is different than the warnings and statements allowed under the FDCA. *Compare* 21 C.F.R. § 201.66(c) and 21 C.F.R. § 201.237 *with* SAC ¶¶ 126-129. Defendants cannot unilaterally change the warnings on its sunscreen products, as such deviations would be subject to FDA sanctions. *See* 21 C.F.R. § 330.1.[25] "A reasonable reading of section 379r(c)(2) is that it expands the universe of potentially preempted state law claims to include those that require additional warnings in the advertising for nonprescription drugs, and not only the labeling." *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) (state law claims were preempted for OTC cough syrup when the monograph required warnings that it wasn't safe for children under 2, even though the FDA Advisory panel recommended it not be used in children under 6). *See also Early v. Henry Thayer Co., Inc.*, No. 4:20-CV-1678-RLW, 2021 WL 3089025, at *10 (E.D. Mo. July 22, 2021) (to the extent that "Thayer must include disclaimers on its products' labels, or that the labels on its products must identify which ingredients are 'synthetic' and which are 'natural,' these claims are preempted by the FDCA because these requirements would be 'different from or in addition to' what is required under the FDCA.").

Additionally, Defendants are not permitted to include any warnings on the products that are not outlined in the Deemed Order, 21 C.F.R. § 201.66(c), or 21 C.F.R. § 201.237(d). *See* 21 C.F.R. § 330.1. When "[p]laintiffs fail to identify any FDCA requirement directing Defendants to provide warnings to consumers…separate and distinct from their disclosure obligations to the FDA or the use of FDA approved labels…such a duty under the CPLA would be to impose requirements different from, or in addition to FDCA requirements and this claim is therefore expressly preempted." *Doe v. Bausch &*

---

[25] The only deviation permitted is with respect to the "Uses" section of the label, which allows for the use of other non-misleading statements than those prescribed for the indications for use. 21 C.F.R. § 201.237(c).

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Lomb, Inc*., 443 F. Supp. 3d 259, 272 (D. Conn. 2020). Because Plaintiff seeks to impose liability on Defendants for omitting information on the label that it is prohibited from including under the relevant FDA regulations, Plaintiff's claims are expressly preempted.

**B. The FDA allows up to 2 ppm of benzene in OTC sunscreen products.**

The question of whether Banana Boat® sunscreen products are safe and effective is a question reserved for the FDA, and thus, expressly preempted. *See* 21 U.S.C. § 355h(a)(1) and (2); 21 U.S.C. § 352(e); 21 C.F.R. § 330.1; 21 C.F.R. § 201.66. Plaintiff's claims, if successful, would impose a zero-benzene limit on sunscreen products that would conflict with the FDA's express guidance on the subject and impermissibly infringe on the FDA's authority to enforce safety and efficacy requirements under the FDCA. Moreover, because Plaintiff's allegations are founded on non-FDA compliant testing, they effectively impose a parallel set of testing requirements that also impermissibly infringes on the FDA's authority to regulate OTC drug products.

**1. FDA regulations, as well as the FDA's recent public statements, confirm the existence of a 2 ppm benzene limit.**

Plaintiff's attempt to impose a zero benzene limit of her own invention is expressly preempted by the FDA's 2 ppm limit. *See* SAC ¶ 25. The FDA expressly allows for trace amounts of benzene, up to 2 ppm, in sunscreen products.[26] Ignoring the FDA's recent FAQ

---

[26] General Chapter 467, UNITED STATES PHARMACOPEIA CONVENTION available at https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/revisions/gc-467-residual-solvents-ira-20190927.pdf (last accessed May 9, 2022) ("General Chapter 467"); *Impurities: Guidelines for Residual Solvents*, INTERNATIONAL COUNCIL FOR HARMONISATION OF TECHNICAL REQUIREMENTS FOR PHARMACEUTICALS FOR HUMAN USE, 2021 at 11, ("ICH Q3C"); Food and Drug Administration, News Release, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs,*" December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed Sept. 17, 2022) (hereinafter "FDA Alert"); Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed Sept. 17, 2022) (hereinafter "FDA FAQ").

and Alert, which clearly evince a 2 ppm benzene limit represents the "acceptable amounts of residual solvents[27] in pharmaceuticals for the safety of the patient," Plaintiff contends that any sunscreen product that contains or risks containing any amount of benzene is misbranded, unsafe for use, and entirely worthless. General Chapter 467; SAC ¶¶ 25, 46(2), 77. The only sources Plaintiff relies on for the proposition that a product containing any amount of benzene is entirely worthless fail to actually support the contention that *any* amount of benzene—or even 0.29 ppm of benzene, as Plaintiff alleges relative to the bottle she purchased—renders a product worthless or unfit for use. SAC ¶ 21 (citing a report from the National Institute for Occupational Safety and Health (NIOSH)); [28] ¶ 25 (citing an email from a professor of dermatology in the Valisure Citizen Petition). Using the cited authorities to create a zero benzene limit and deem the sunscreen products "unsafe" is expressly preempted by the FDA's 2 ppm limit.

In recent FDA statements[29] issued after the submission of the Valisure Citizen

---

[27] Residual solvents are defined as "organic volatile chemicals that are used or produced in the manufacture of drug substances or excipients, or in the preparation of drug products." *See* ICH Q3C and General Chapter 467.

[28] Plaintiff cites a recommendation from NIOSH that workers don protective gear when expecting to be exposed to more than 0.1 ppm of benzene. SAC ¶ 21. NIOSH's recommendations are limited to the context of "general industrial hygiene practices"—a far cry from the consumer-use context. NIOSH's recommendations can be found at https://www.cdc.gov/niosh/docs/2005-149/pdfs/2005-149.pdf (last accessed September 17, 2022). Second, NIOSH's benzene-specific permissible exposure limit permits workers to be exposed to an average concentration of 1 ppm of benzene over a 10-hour workday during a 40-hour workweek, and a concentration of 5 ppm over a short-term period. Centers for Disease Control, Benzene Exposure Limits, available at https://www.cdc.gov/niosh/npg/npgd0049.html (last accessed September 17, 2022). Plaintiff additionally cites to a statement from Dr. Christopher Bunick, an associate professor of dermatology, who states that "there is no safe level of benzene that can exist in sunscreen products." SAC ¶ 25. This statement is quoted from an email sent by Dr. Bunick to Valisure for use in their Citizen Petition. It is not supported by any apparent research and should be disregarded on that basis.

[29] These documents "describe the agency's current thinking on a topic" and are "helpful for that purpose, showing how and why the agency's enforcement policies operate as they

---

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

1   Petition – wherein Valisure stated "there is probably no safe level of exposure to benzene"

2   – the FDA has continued to confirm the application of a 2 ppm limit for benzene in

3   sunscreen products. *See* McCurdy Decl., Ex A; FDA FAQ; FDA Alert. Plaintiff's claims

4   invent and seek to impose on Defendants a zero benzene limit for safety and efficacy that

5   contradicts FDA regulations and recent FDA guidance. Hence, Plaintiff's claims are

6   expressly preempted.

7   **2. Plaintiff cannot avoid preemption by misconstruing the FDA's 2 ppm limit.**

8   In an attempt to avoid preemption, Plaintiff tries to insert a blanket requirement that

9   the presence of any benzene left in the end products must be unavoidable and provide a

10   therapeutic benefit to be permitted. *See e.g.* SAC ¶¶ 26, 36. Plaintiff's interpretation is

11   wholly incorrect and contrary to the plain meaning of the relevant regulations.

12   Both ICH Q3C and General Chapter <467> make a distinction between Class I

13   solvents that are ***purposefully used*** in production and residual solvents that ***may be***

14   ***produced*** as part of the manufacturing process. Plaintiff ignores this distinction, instead

15   applying an incorrect "unavoidable" standard both to residual solvents that are

16   ***purposefully used*** in production and those that ***may be produced*** in the manufacturing

17   process.[30] Yet the unavoidable and therapeutic advance requirements are plainly tied only

18   to the ***purposeful use*** of Class I solvents in the manufacture of sunscreen. *See* ICH Q3C

19

20

21   do." *Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.,* No. 20-56227, __ F.4th __, 2022 WL 4175106, at *8 (9th Cir. Sept. 13, 2022).

22   [30]Exclusion of residual solvents that may be produced in the manufacturing process is

23   purposeful as the next section discusses necessary testing for both terms, used and

24   produced, and then later testing applicable to used. *See generally* ICH Q3C at 1 and USP General Chapter 467, § 4.1. The Court should read meaning into the distinct ways that

25   "used" and "produced" are utilized in this regulation so that the Court can give effect to

26   each word and clause in this regulation, avoiding an interpretation that creates surplusage. *David v. Shah*, 821 F.3d 231, 251 (2d Cir. 2016) (applying canon of construction in context

27   of federal regulation); *United States v. Ng Lap Seng*, 934 F.3d 110, 128 (2d Cir. 2019) (discussion of the presumption against surplusage).

28

and General Chapter <467>. For reasons discussed *supra*, benzene is not an ingredient in Banana Boat® sunscreen products, nor is it purposefully used in production.

In a further attempt to avoid preemption, Plaintiff misunderstands the nature of residual solvents. By definition, residual solvents "are not completely removed by practical manufacturing techniques." ICH Q3C at 1. However, Plaintiff argues that because some bottles of sunscreen tested by Valisure contained no benzene, the presence of benzene in sunscreen is "avoidable." *See* SAC ¶ 37. Such an interpretation vitiates the entire purpose of the residual solvents regulations, which explicitly set non-zero limits for the presence of solvents in finished products. *See generally* ICH QC3; General Chapter 467.

The FDA's recent statements confirm that Plaintiff's interpretation of the FDA's 2 ppm benzene limit is simply wrong. *See* FDA FAQ; FDA Alert. On December 23, 2021, the FDA stated that "[d]rug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene at or above 2 ppm, consistent with the recommendations described in ICH Q3C." FDA Alert. In the FAQs, most recently updated on June 6, 2022, the FDA stated that "[i]n 2020, FDA identified the potential for unacceptable levels of benzene in certain carbomers (which may be used as thickening agents in drugs) based on the allowable limits in USP monographs." FDA FAQ. Using "unacceptable levels of benzene," "allowable limits," and "at or above 2 ppm" imply an *acceptable* level of benzene and belie the existence of Plaintiff's zero-benzene standard. *Id.*

### 3. Plaintiff's claims are expressly preempted because they subject Defendants to testing standards "different from" that of the FDA.

Plaintiff attempts to use testing that is not compliant with current good manufacturing practices ("cGMP") – the testing standard used by the FDA when assessing the safety of OTC drug products – to allege Banana Boat® sunscreen products violate FDA regulations. 21 C.F.R. § 330.1. States may not enforce a testing requirement that is different from or in addition to what is already required under the FDCA. 21 U.S.C. § 379r(a); *Forouzesh v. CVS Pharmacy, Inc.*, No. 2:18-CV-04090-ODW, 2019 WL 652887, at *5

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

(C.D. Cal. Feb. 15, 2019) (granting motion to dismiss based on preemption because the Court could not conclude that plaintiff's testing was conducted in compliance with FDA regulations and "a claim seeking to use methodology other than required by the FDA would be preempted"); *Anglin v. Edgewell Personal Care Co.*, No. 4:18-CV-00639-NCC, 2018 WL 6434424 at *1 (E.D. Mo. Dec. 7, 2018) (plaintiff failed to plead the testing of sunscreen products "complie[d] with the FDA-mandated methodologies," leading the court to dismiss the claim as preempted because of reliance on non-compliant testing performed by Consumer Reports).

The FDA will not recognize an over-the-counter drug "as safe and effective" and "not misbranded" unless "[t]he product is manufactured in compliance with current good manufacturing practices, as established by Parts 210 and 211." 21 C.F.R. § 330.1. This includes cGMP compliance for the "[m]anufacture, processing, packing, or holding of a drug product includes packaging and labeling operations, testing, and quality control of drug products." 21 C.F.R. § 210.3(b)(12). The FDA's regulations require compliance with extensive laboratory controls and documentation "to assure compliance with established specifications and standards." *see* 21 C.F.R. §§ 211.160; 211.194.

On May 26, 2021, the day after Valisure filed its Citizen Petition, the FDA began an eleven-day inspection of Valisure. The FDA's inspection culminated in a July 6, 2021, Report of Inspection documenting substandard testing conditions that could lead to a formal notice of violation from the FDA. *See* McCurdy Decl., Ex. C ("Report of Inspection"). The Report of Inspection itemizes Valisure's failure to comply with the FDA's cGMP requirements. The FDA specifically calls out Valisure's flawed testing for the presence of benzene. *Id*. at Obs. 1(D)(a). The FDA observed Valisure failing to qualify the equipment used to test for benzene in order to ensure that the equipment was properly installed and configured, operated according to specifications, and consistently performed as expected under actual conditions of use, *i.e.*, it failed to perform, document, or even establish a protocol for installation qualification, operational qualification, or performance qualification. *Id*. at Obs. 2(a). Valisure's protocol for testing benzene did not include

system suitability tests,[31] which confirm that the entire testing system functions correctly as an integrated system, at the time of use, and are required as part of cGMP per 21 C.F.R. § 211.194(a)(2). *See id.* at Obs. 1(D)(b).  Additionally, the analysis method protocol for testing benzene did not include calibration at a sufficient frequency, as required by 21 C.F.R. § 211.68(a); 21 C.F.R. § 211.194(d); and 21 C.F.R. § 211.160(b)(4). S*ee id.* at Obs. 1(D)(c). Rather than defend its testing, Valisure admitted—at least a half dozen times— that it does not comply with and is not subject to cGMP. McCurdy Decl., Ex. D ("Response") at 1-4.[32]

Valisure stated that it does not perform testing activities for "regulatory purposes" and that "Valisure's customers do not use Valisure's testing and certification to determine whether drug products meet FDA specifications." *Id*. at 1. While Defendants must abide by the FDA's cGMP standards as set out in 21 C.F.R. Parts 210 and 211, Valisure readily admitted it did not comply with those same standards when it tested certain lots of Defendants' sunscreen products. *Id*. If Plaintiff is allowed to base her already speculative claims of benzene contamination on non-FDA compliant testing, Defendants would be

---

[31] USP 621 as referenced by the FDA provides that: "[s]ystem suitability tests are an integral part of the gas and liquid chromatographic methods. They are used to verify the detection sensitivity, resolution, and reproducibility of the chromatographic system are adequate for the analysis to be done. The tests are based on the concept that the equipment, electronics, analytical operations, and samples to be analyzed constitute an integral system that can be evaluated as such." USP 621, http://www.pharmacopeia.cn/v29240/usp29nf24s0_c621_viewall.html (last accessed September 21, 2022). "No sample analysis is acceptable unless the requirements of system suitability have been met." *Id. See also* Food and Drug Administration, "Reviewer Guidance, Validation of Chromatographic Methods" (1994) at 28, https://www.fda.gov/media/75643/download (last accessed September 21, 2022); Food and Drug Administration, "Analytical Procedures and Methods Validation for Drugs and Biologics" (2015) at 5, https://www.fda.gov/files/drugs/published/Analytical-Procedures-and-Methods-Validation-for-Drugs-and-Biologics.pdf (last accessed September 21, 2022).

[32] Valisure admitted its testing "is not part of any manufacturer's cGMP quality system," its "testing [is done] outside the traditional drug cGMP manufacturing and quality control processes," and it "intends to deactivate its establishment registration with the FDA." Response at 1, 2, 4.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

subject to requirements "different from" and "not identical to" the FDA's standards. *See Mee v. I A Nutrition, Inc., No.* C-14-5006-MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) ("[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted."); *Melendez v. ONE Brands, LLC*, No. 18-CV-06650, 2020 WL 1283793, at *5 (E.D.N.Y. Mar. 16, 2020) (finding state law consumer protection claims to be preempted at the motion to dismiss stage when plaintiff failed to allege compliance with the FDA's "specific methodology for determining whether a particular nutrient-content statement made on a label is false[.]").

Plaintiff's failure to comply with cGMP standards is no small matter. Through this litigation, she demands Defendants to comply with not only the FDA's cGMP standards but also with Valisure's less-stringent standards. The claims, if successful, would impose conflicting testing requirements on Defendants, forcing them to comply with an ill-defined regulatory scheme specific to California state law. Under 21 U.S.C. § 379r(a), drug manufacturers need only comply with FDA standards when testing the safety, effectiveness, and branding of their products. Because Plaintiff's entire case rests on Valisure's testing for her allegations that Banana Boat® sunscreen products are unsafe, ineffective, adulterated, and misbranded, all of Plaintiff's claims are expressly preempted.

**C. Plaintiff's claims are impliedly preempted.**

Even if Plaintiff's claims were not expressly preempted by FDA regulations regarding the benzene limit, labeling requirements, and testing standards, they would be impliedly preempted. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-89 (1995). "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively . . . or when state law is in actual conflict with federal law." *Id.* at 287 (internal citation omitted). Implied or conflict preemption arises when a state law claim "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or an agency acting within the

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

scope of its authority. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984) (internal citation omitted). The FDA's extensive and exclusive regulation of sunscreen products demonstrates that Congress left no room for states to supplement the field of FDA regulations. *See supra*, § II. As such, Plaintiff's claims are impliedly preempted.

**D. Attempts to enforce the FDCA through a private action is impliedly preempted.**

Plaintiff's claims are also impliedly preempted to the extent they challenge the Banana Boat® sunscreen products' safety, efficacy, and labeling because Plaintiff does not have a private right to address violations of the FDCA. *In re Epogen & Aranesp Off-Label Mktg & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) ("[P]laintiffs may not use other federal statutes or state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA."); 21 U.S.C. § 337(a) ("[A]ll proceedings for the enforcement, or to restrain violations of [the Act] shall be by and in the name of the United States."). The absence of a private right of action to enforce the FDCA, when combined with the preemption doctrine, leaves Plaintiff with only a "narrow gap" through which a cause of action can proceed. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quotation omitted). "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA []such a claim would be impliedly preempted." *Id.*

Plaintiff alleges throughout the SAC that Banana Boat® sunscreen products are adulterated and misbranded. *See, e.g.*, ¶¶ 1, 39-46. And although she carefully avoids mention of the FDCA by name, her pleadings are replete with citations to the FDCA or its corresponding regulations.[33] The doctrine of implied preemption bars state law claims "when the state law claim is in substance (even if not in form) a claim for violating the

---

[33] *See* SAC ¶ 39 (citing 21 C.F.R. §§ 352.1-352.77; ¶ 40 (citing 21 C.F.R. § 352.10); ¶ 41 (citing 21 C.F.R. § 352.1); ¶ 42 (citing 21 U.S.C. § 331(g)); ¶ 43 (citing 21 U.S.C. § 331(a)); ¶ 44 (citing 21 U.S.C. 331(c)); ¶ 45(1) (citing § 21 U.S.C. 351(a)(2)(b)); ¶ 46(1) (citing 21 U.S.C. §§ 352(a)(1), 352(e)(1)(A)(ii), 352(j)); ¶ 45(2) (citing 21 C.F.R. § 201.10(2)).

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

FDCA – that is, when the state claim would not exist if the FDCA did not exist." *Soja v. Medtronic, Inc.*, No. 2:19-cv-00219, 2019 WL 2391609, at *3 n.4 (E.D. Cal. June 6, 2019). Here, although Plaintiff does not claim any violations of the FDCA as a matter of form, there is no doubt her claims are grounded in alleged violations of the FDCA as a matter of substance. Because Plaintiff has done no more than repackage alleged violations of the FDCA's safety, efficacy, and labeling regulations in state consumer protection law, her claims are an attempt to bring a prohibited action for private enforcement of the FDCA.

Recent case law supports dismissing Plaintiff's claims as an impermissible private enforcement action. In *Nexus Pharms., Inc.*, __ F.4th __, 2022 WL 4175106 at *8, the Ninth Circuit affirmed dismissal due to the "prohibition of private enforcement" as well as implied preemption. The Court noted that Nexus attempted to avoid the bar against private enforcement by averring violations of several states' laws and not directly averring a violation of the FDCA. The Court was not fooled and dismissed the claim because "to permit Nexus to proceed with a claim that Defendants violated this law when the FDA did not so determine would, in effect, permit [Nexus] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make." *Id.* at 7 (quoting *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 930 (9th Cir. 2010)).

Plaintiff's claims are little more than an allegation that Defendants have not complied with the FDCA. As evidenced by the FDA's ongoing review of this topic, the FDA is currently considering whether Valisure's test results—the sole basis for Plaintiff's claims—merit an enforcement action under the FDCA. *See* McCurdy Decl., Ex. E ("Interim Response"); FDA Alert. Permitting Plaintiff to bring a private claim in the interim would grant her the enforcement power reserved for the FDA, and require a factfinder—this Court, or a jury—to make a decision the FDA so far has not. In these circumstances, Plaintiff's claims are impliedly preempted and should be dismissed as an attempt to bring a private action to enforce the substance of the FDCA.

## III.   PLAINTIFF'S CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY

**JURISDICTION.**

Plaintiff's claims are subject to the primary jurisdiction of the FDA. The primary jurisdiction doctrine ensures the proper working relationship between federal agencies and courts. *See U.S. v. W. Pac. R. R. Co*., 352 U.S. 59, 62 (1956); *Far East Conference v. U.S.*, 342 U.S. 570, 575 (1952). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *W. Pac. R. R. Co*., 352 U.S. at 64. The Ninth Circuit directs courts to apply the doctrine of primary jurisdiction when the court would "(1) [] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having a regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Each of these factors exist here.

**A. The FDA is currently responding to the Valisure Citizen Petition.**

On May 25, 2021, Valisure filed its Citizen Petition. Valisure requested that the FDA develop industry guidance for the analysis of benzene in sunscreen products, update Q3C guidance, and develop further guidance limiting the potential daily exposure to benzene via the application of sunscreen. *See* McCurdy Decl., Ex. A. On November 19, 2021, the FDA provided its Interim Response, stating that it needed more time to respond to the "complex issues." McCurdy Decl., Ex. E at 2-3. On June 6, 2022, the FDA further commented in its FAQs, stating:

> FDA evaluates and assesses the information provided in citizen petitions of this type and, if appropriate, initiates an independent testing and verification process. This process includes securing product samples and performing independent evaluation of collected samples to assess the data presented in the citizen petition. If FDA's testing raises any safety concerns, then FDA will work with manufacturers to address those concerns. We are going through

that process with each of these citizen petitions. During this time, FDA has also been working with companies on multiple recalls related to the identification of unacceptable levels of benzene in drugs.

When the FDA does respond to the Petition on the merits, it will represent the agency's opinion on how much benzene may be in sunscreen products and could resolve not only this case but many other benzene/sunscreen cases nationwide.[34] If this Court reaches the merits of Plaintiff's claims, it will have to rule on the same "complex issues" that subject matter experts at the FDA have been carefully evaluating for over sixteen months. If the Court does not dismiss the SAC with prejudice for one or more of the reasons set forth herein, it should defer to the FDA's jurisdiction and stay or dismiss this action until the FDA responds to the Valisure Citizen Petition.

**B. Any decision on Plaintiff's claims could conflict with the FDA's forthcoming update on OTC sunscreen regulation.**

In addition to responding to the Valisure Citizen Petition, the FDA clearly intends to update its regulation of OTC sunscreen products and any ruling in this case could easily conflict with that final sunscreen order. *See* Pub. L. 116-136, Div. A, Title III, § 3854(c), Mar. 27, 2020, 134 Stat. 456. Section 3854 of the CARES Act also required that the Secretary of Health and Human Services revise the Final Administrative Order concerning OTC monograph sunscreen no later than September 27, 2021. *Id.* On September 24, 2021, the FDA issued a Proposed Order permitting a 45-day comment period expiring on November 8, 2021. After reviewing the comments, the FDA intends to issue a Revised Final Administrative Order. FDA's past, ongoing, and pendant rulemaking supports the proposition that its primary jurisdiction bars Plaintiff's claims.

**C. The FDA possesses the expertise and sole discretion to determine the amount of**

---

[34] After Valisure filed its Citizen Petition, dozens of cases across the country were filed against manufacturers alleging their sunscreen labels were misleading because their products may contain benzene. Acknowledging the FDA's primary jurisdiction and waiting for its decision on the Petition is the only way to avoid the substantial risk of inconsistent rulings nationwide.

**benzene permitted in sunscreen products.**

On December 23, 2021, the FDA demonstrated additional ongoing efforts to regulate sunscreen products and specifically address the potential presence of benzene in sunscreen products by issuing its FDA Alert. The FDA explained that as it "evaluates the root cause of benzene contamination in certain drugs, the agency is taking a stepwise approach to address the potential for benzene contamination in marketed drug products…" *Id.* The FDA requested information from manufacturers regarding benzene and committed to continued efforts to evaluate reports from drug manufacturers that identify the presence of benzene in order to "help inform further updates to FDA's approach to limiting benzene levels in drug products, as appropriate." *Id.* On June 9, 2022, the FDA confirmed its commitment to "to ensuring drugs Americans use are safe and effective" and further confirmed that it "continues to monitor the issue of benzene in drugs and is proactively working with companies, when appropriate, to recall products and encourage retailers to remove products from store shelves and online marketplaces when quality issues arise." FDA FAQ. The FDA also confirmed it "will continue to work with drug manufacturers to ensure the availability of safe and effective drugs for the American public." *Id.* The FDA's "ongoing assessment, surveillance, compliance and pharmaceutical quality efforts" in this matter demonstrates that it possesses the expertise to determine whether or not it is safe for sunscreen to contain trace amounts of benzene. *Id.*

**D. Plaintiff's claims raise technical and policy considerations within the FDA's field of expertise.**

As outlined *supra*, § II, the FDA extensively regulates sunscreen products and solely possesses the expertise to facilitate uniform resolution of this action and similar actions across the country. The Court should decline Plaintiff's invitation to forge new regulatory law by becoming the first court to step into the FDA's shoes and decide this important regulatory law issue—an issue that is already squarely before the agency—when the Court's ruling may end up conflicting with forthcoming FDA guidance informed by that agency's particular expertise. This is especially the case since the FDA is actively

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

regulating and considering new regulation in this area in response to the Valisure Citizen Petition.[35] Through its public statements, the FDA has asserted not only its ability, but its intent to issue new regulations.

Plaintiff seeks to enforce labeling requirements, warning requirements, standards for residual solvents, testing standards, and claims based on the safety and efficacy of Banana Boat® sunscreen products, all topics that fall under the primary jurisdiction of the FDA. Accordingly, this Court should stay or dismiss Plaintiff's claims if it does not dismiss the SAC with prejudice for one or more of the other reasons set forth herein.

## IV.    PLAINTIFF FAILS RULE 9(B)'S HEIGHTENED PLEADING STANDARD.

Plaintiff's CLRA, FAL, UCL, breach of express warranty, and quasi-contract claims are grounded in fraud and subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiff must allege the particular circumstances surrounding any marketing and advertising representations and "identify the who, what, when, where, and how of the misconduct charged." *Id.* at 1124 (citations omitted). Plaintiff fails to plead with particularity how, when, and why she was deceived by the alleged advertising misrepresentations.[36] She fails to allege that she read or relied on any of the "advertising" in advance of her purchase. Plaintiff merely alleges she "reviewed the accompanying labels and disclosures," SAC ¶ 6, and conclusory allegations that a plaintiff relied on a list of representations is insufficient. *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2014 WL 2450996, at *1 (N.D. Cal. June 2, 2014), *aff'd*, 654 F. App'x. 338 (9th Cir. 2016) (plaintiff's CLRA and UCL claims failed

---

[35] *See* FDA FAQ ("If FDA's testing raises any safety concerns, then FDA will work with manufacturers to address those concerns. *We are going through that process with each of these citizen petitions*. During this time, FDA has also been working with companies on multiple recalls related to the identification of unacceptable levels of benzene in drugs.") (emphasis added); FDA Alert ("FDA is evaluating the root cause of benzene contamination in certain drugs and alerting drug manufacturers to the risk of benzene contamination from drug components and other potential risk factors.").

[36] Plaintiff also fails to plead "what" she allegedly purchased with particularity because she does not specify whether the products were lotions or sprays.

Rule 9(b)'s heightened standard because "[it was] plain from the numerous iterations of the complaint in this action that Plaintiff cannot allege that she saw any specific representation."). Accordingly, Plaintiff's claims related to marketing and advertising should be dismissed.

## V.   PLAINTIFF FAILS TO STATE A CLAIM.

Plaintiff's claims also should be dismissed because they fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, Plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555 (Under Rule 8, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level.") (internal quotations and alteration omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 129 (citing *Twombly*, 550 U.S. at 556).

## A. Reasonable consumers do not expect product labels to be molecularly pure.

Plaintiff's claims under the CLRA, FAL, and UCL are governed by the reasonable consumer standard.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The "reasonable consumer" standard requires more than a mere possibility that a label "might conceivably be misunderstood by some consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Rather, it "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. Dismissal is appropriate where a court can conclude as a matter of law that members of the public are not likely to be deceived by an advertisement.  *Ebner,* 838 F.3d at 965-66 (affirming dismissal of label-

based claims with no plausible claim of deception); *Forouzesh v. Starbucks Corp*., 714 F. App'x. 776, 777 (9th Cir. 2018) (finding no reasonable consumer would think a 12-ounce iced drink would contain 12 ounces of liquid and no ice).  Further, "[c]ommon sense dictates [claims of deception], and [p]laintiffs cannot claim deception on label statements modeled on FDA guidance." *Andrade-Heymsfield v. Danone US, Inc*., No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *8 (S.D. Cal. Aug. 14, 2019), *appeal dismissed*, No. 19-56082, 2020 WL 5513552 (9th Cir. 2020). Courts routinely reject fraud-based challenges to products that contain trace amounts of residual solvents (like benzene) and pesticides within the FDA's tolerance levels under the reasonable consumer standard.  *See, e.g., Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-5 (N.D. Cal. Oct. 6, 2020) (holding that reasonable consumers would not understand "all natural" to mean that the product did not contain trace amounts of pesticides below the limit tolerated by the FDA).[37]

Here, Plaintiff appears to allege two theories of deceptive and misleading conduct: (1) omission of benzene as an ingredient and the omission of a warning that the sunscreen products may contain benzene; and (2) affirmative misrepresentations. Both fail to satisfy

---

[37] *See also Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ("[T]he court finds it "implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount deemed tolerable by the FDA," particularly given that  (like benzene) "[g]lyphosate [] is not an "ingredient" added to defendant's products; rather, it is a substance introduced through the growing process."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("But a reasonable consumer would not be so absolutist as to require that "natural" means there is no glyphosate, even an accidental and innocuous amount, in the Products."); *In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("[I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label."); *see also Bush v. WellPet, LLC*, 534 F. Supp.3d 179, 184 (D. Mass. 2021) (holding any misrepresentation was immaterial because "[a] reasonable consumer therefore would not be so 'absolutist' as to require a 'grain free' product to contain no gluten, however negligible the amount actually present.").

---

-27-   Case No. 2:21-cv-04356-MWF-AGR

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

the reasonable consumer standard.

### 1. Plaintiff's omission theory fails the reasonable consumer standard.

Plaintiff alleges the Banana Boat® sunscreen products she purchased are false and misleading because the products' labels do not list benzene as an active or inactive ingredient. *See e.g.* SAC ¶ 40. Plaintiff interprets the listed ingredients to mean the sunscreen products are free from any traces of any other substances or residual solvents such as benzene. *Id.* In other words, Plaintiff believes the listed ingredients contain absolute molecular purity and that it is misleading to not list trace amounts of benzene – well below the FDA's 2 ppm limit – as an ingredient that may be in the products.

Contrary to Plaintiff's stance, the Ninth Circuit has found that product labels do not require molecular purity. In *Moore v. Trader Joe's Company*, dismissal without leave to amend was affirmed because "a reasonable consumer could not be left with the conclusion that '100% New Zealand Manuka Honey' represents a claim that the product consists solely of honey derived from Manuka." 4 F.4th 874, 885 (9th Cir. 2021).[38] The honey jar at issue listed its sole ingredient as "Manuka honey," despite testing that revealed only 57.3% - 62.6% of the honey came from Manuka flower nectar. *Id.* at 880. The district court based its decision on the FDA's Honey Guidelines. *Id.* at 881. While the "Honey Guidelines are not themselves binding, compliance with them constitutes compliance with the misbranding provisions of the FDCA." *Id.*

As discussed above, benzene is not an active or inactive ingredient in Banana Boat® sunscreen products. *See supra* § II. A significant portion of the general consuming public would not be misled to believe sunscreen products never contain trace amounts of a substance not listed as an ingredient, especially when the FDA allows up to 2 ppm of residual solvents. Nor would a significant portion of the general consuming public believe sunscreen products are unsafe or should list benzene as an ingredient when they comply

---

[38] The district court granted the motion to dismiss for failure to state a claim because there was no adulteration and the mislabeling claims would not mislead a reasonable consumer as a matter of law, and alternatively, plaintiff's state law causes of actions were preempted by the FDCA.

with the FDA's labeling requirements.[39] It is also implausible that a reasonable consumer would understand sunscreen products are free from any trace amounts of benzene when they are not labeled "benzene free." *See* Massa Decl. at ¶¶ 6, 7 and Ex. A. Clear evidence that reasonable consumers do not expect sunscreen products to be 100% benzene free comes from two proposed settlements in MDLs involving similar claims of benzene in sunscreen products against different manufacturers that agree to a benzene limit of 1 ppm without a label warning.[40]

Of all the Banana Boat® sunscreen products tested by Valisure, the highest result was 0.43 ppm. *See* McCurdy Decl., Ex. A. Plaintiff's own testing of Banana Boat® Ultra Sport SPF 50, with a result of 0.29 ppm,[41] is a trace amount well below the 1 ppm limit accepted by consumers in related actions and below the FDA's 2 ppm limit. A reasonable consumer would not believe these trace amounts of benzene—lower than the FDA's limit—are harmful. Additionally, a reasonable consumer would not believe a sunscreen product is not effective because it contains less than 2 ppm of benzene. Indeed, Plaintiff has failed to even allege the 0.29 ppm of benzene allegedly found in her purchased sunscreen product made the sunscreen ineffective at protecting her from the sun.

### 2. Plaintiff's misrepresentation theories fail to satisfy the reasonable consumer standard.

Further, Plaintiff takes statements out of context and no reasonable consumer would be misled by the alleged affirmative misrepresentations in Defendants' "advertising" in the manner in which Plaintiff alleges.

---

[39] Notably, when asked "What should manufacturers know about benzene in drugs?" the FDA did not instruct manufacturers to list products that contain or may contain benzene as an ingredient on the product label. FDA FAQ. Likewise, the FDA only instructs manufacturers to not release any drug product batch with benzene above 2 ppm, and does not mention adding benzene as an active or inactive ingredient. FDA Alert.

[40] *See In re Johnson & Johnson Sunscreen Marketing Sales Pracs. and Product Liab. Litig.*, Dkt. #55, p. 6; *In re Procter & Gamble Aerosol Products Marketing and Sales Pracs. Litig.*, Dkt. #23, p. 16.

[41] Which fails to alleged compliance with FDA testing requirements. *See supra*, § II.B.3.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

**a.  The 2018 Simply Protect™ Press Release would not mislead a reasonable consumer.**

On May 5, 2018, Defendants published a Press Release for Simply Protect™ that stated in part:

> The Banana Boat® brand offers a wide range of product options that provide today's busy family with sun protection without worry when used and reapplied as directed, so the fun can go on.  The advanced technology in Banana Boat® sunscreen products provides effective broad spectrum UVA and UVB protection. Banana Boat® sunscreens have undergone testing in seven conditions[2] – sun, pool water, ocean water, wind, sweat, sand and extreme heat up to 100 degrees – to provide safe and effective sun protection against UVA and UVB rays.[42]

Plaintiff cherry picks portions of this statement and interprets them to be "misrepresentations" regarding health risks. *See* SAC ¶ 62. It is implausible that a significant portion of the consuming population would interpret "provide today's busy family with sun protection without worry when used and reapplied as directed" to mean that the sunscreen product does not contain trace amounts of benzene below the FDA limit. *See* Press Release for Simply Protect™.  Instead, a reasonable consumer would understand this statement within the context of the sunscreen product's ability to protect the user from the sun (which is not in dispute), "so the fun can go on." *Id*. Nor is it plausible that a significant portion of the consuming population would understand "safe and effective sun protection" to mean the sunscreen product does not contain trace amounts of benzene when the full sentence is clearly related to efficacy and sun protection. *Id*. ("to provide safe and effective sun protection ***against UVA and UVB rays***") (emphasis added).

Plaintiff also highlights the phrase "know families are interested in sunscreen

---

[42] *Press Release for Simply Protect™*, Edgewell, May 5, 2018, https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc%20_lang=en (last accessed September 21, 2022).

1   without any extra ingredients like dyes or perfumes - but with the same trusted protection

2   Banana Boat® has always provided." *See* SAC ¶ 62. Yet, Plaintiff does not allege

3   Defendants added benzene as an ingredient similar to a dye or perfume. A reasonable

4   consumer would understand that this statement does not preclude the possibility that trace

5   amounts of residual solvents—within FDA guidelines—are in sunscreen products.

6        Further, the Press Release specifically relates to Simply Protect™. It is unreasonable

7   that a significant portion of the consuming population, acting reasonably under the

8   circumstances, would believe that a press release related to a new product would contain

9   representations related to every Banana Boat® sunscreen product. Indeed, Plaintiff does

10  not even allege she purchased a Simply Protect™ sunscreen product. It is also impossible

11  for Plaintiff or any reasonable consumer to have been misled by the Press Release for

12  Simply Protect™ when purchasing the products prior to its publishing on May 5, 2018.

13       **b.  The 2016 Safety Data Sheet would not mislead a reasonable consumer.**

14       Defendant Edgewell Personal Care, LLC published a Safety Data Sheet on March 2,

15  2016 related to "Banana Boat® Dry Oil Spray SPF 4 (Aerosol)" and "Banana Boat® Sport

16  Performance SPF 100 Sunscreen (Aerosol)" that states: "[t]his product is safe for its

17  intended use based on the formulation, testing results, and the long history of safe consumer

18  use."[43] Neither of these Banana Boat® sunscreen products are included in Plaintiff's

19  definition of "Products," nor does she allege purchasing either product.  It is unreasonable

20  that a significant portion of the consuming population would believe that a safety data sheet

21  for a specific product would apply to all Banana Boat® sunscreen products and implausible

22  that a significant portion of the consuming population would rely the Safety Data Sheet for

23  the proposition that sunscreen products do not contain trace amounts of benzene when

24  making a purchase. No reasonable consumer would be misled by the Safety Data Sheet.

25       **c.   The 2019 Florida article would not mislead a reasonable consumer.**

26

27  [43] *Safety Data Sheet,* EDGEWELL PERSONAL CARE, LLC (March 2, 2016)
    (https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-
28  4.pdf).

On June 21, 2019, a West Palm Beach Florida News Station posted an article discussing a woman from Boynton Beach, Florida who alleged that an *unspecified* Banana Boat® spray caused her son to blister.[44]  Defendants commented in the article: "all Banana Boat products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant health regulations, including SPF tests.  For some people, sensitivity to an ingredient can be triggered or exacerbated by the sun..." *Id*. First, this statement is not false as Banana Boat® sunscreen products do not violate FDA regulations. *See supra* § II. It is unreasonable that a significant portion of the general consuming public consumer would understand this statement to mean the products do not contain trace amounts of benzene within allowable limits. It is also impossible for Plaintiff or any reasonable consumer to have been misled by the article when purchasing sunscreen products before July 21, 2019.

### d.  "Protection you can trust" would not mislead a reasonable consumer.

The Banana Boat® website states:

> PROTECTION YOU CAN TRUST We've been protecting fun under the sun for 40 years and counting. Our dedication to safety and high-quality sunscreen means guaranteed fun-in-the sun protection that you can trust every day. Whether spray, lotion or stick, our easy-to-apply products are designed with one idea in mind: to help you and your family enjoy every moment outdoors.[45]

A reasonable consumer would understand the statement is clearly discussing the efficacy of the sunscreen product, not whether or not it contains trace amounts of benzene below the FDA limit. Further, a reasonable consumer would not understand the alleged misrepresentations Plaintiff identifies to be anything more than non-actionable puffery. Statements that are "[g]eneralized, vague, and unspecified . . . constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Azoulai*

---

[44] J. Callaway, *Dermatologists say these sunscreen ingredients can cause blisters and burns on some children's skin* (initially published June 21, 2019), accessible at https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin).

[45] BANANA BOAT®, accessible at https://www.bananaboat.com/collections/frontpage.

1  *v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr.

2  13, 2017); *see also Annunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1140-41 (C.D.

3  Cal. 2005) (characterizing "quality," "reliability," and "safe" as non-actionable puffery).

4  Thus, statements that Banana Boat® sunscreen products are "without worry," and offer

5  "trusted protection," that is "high-quality" and allows people to "enjoy every moment

6  outdoors" are non-actionable puffery.  Accordingly, Plaintiff's theories of omission and

7  affirmative misrepresentation fail to satisfy the reasonable consumer standard and

8  Plaintiff's claims under the CLRA, FAL, and UCL should be dismissed.

9  **B. Plaintiff's express warranty claim fails because Defendants did not promise what**

10 **Plaintiff alleges.**

11      Defendants cannot breach an express warranty that the Defendants did not promise

12 to make. "To state a claim for breach of express warranty under California law, a plaintiff

13 must allege: (1) the seller's statements constitute an affirmation of fact or promise or a

14 description of the goods; (2) the statement was part of the basis of the bargain; and (3) the

15 warranty was breached." *Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS

16 (BLM), 2018 WL 9539773, at *5 (S.D. Cal. July 6, 2018). A defendant cannot breach an

17 express warranty if it did not promise what the plaintiff alleged. *See Myers-Taylor v. Ornua*

18 *Foods N. Am., Inc.*, No. 3:18-CV-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb.

19 4, 2019) (finding that the defendants did not breach an express warranty because it did not

20 promise what the plaintiffs alleged).

21      Here, Plaintiff attempts to cherry pick only a portion of the Directions on the back

22 label support her express warranty theory. *See* SAC ¶ 107 ("protective" and "decrease the

23 risk"). Plaintiff interprets these partial quotes to mean "[s]uch statements constitute an

24 affirmation of fact or promise or a description of the product as being safe and not posing

25 a dangerous health risk." *Id*. However, the Directions state in full: "Sun Protection

26 Measures. Spending time in the sun increases your risk of skin cancer and early skin aging.

27 To decrease this risk, regularly use a sunscreen with a broad spectrum SPF value of 15 or

28 higher and other sun protection measures including: limit time in the sun, especially from

10 a.m.-2 p.m., wear long-sleeved shirts, pants, hats, and sunglasses." Massa Decl., Ex. A.

As evident from the full statement that was the basis of the bargain, Defendants did not make an express warranty that sunscreen products are "safe and not posing a dangerous health risk." The words "safe," "dangerous," and "health" do not even appear in the section that ostensibly created an "express warranty." The sunscreen products do not claim to be "benzene-free" or "100% pure." Plaintiff cannot create her own warranty and then bring a claim against Defendants for breaching an express promise that they did not make. Accordingly, Plaintiff's claim for express warranty should be dismissed.

**C. Plaintiff's tort claims are barred by the economic loss doctrine.**

Plaintiff's common-law tort claims (negligent misrepresentation, strict product liability – failure to warn, and strict product liability – manufacturing defect) are barred by the economic loss doctrine. The economic loss doctrine bars tort claims where the only injury is the allegedly defective product itself and is applied "to bar a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form *of physical harm*…plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses." *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1162 (S.D. Cal. 2020) (citations omitted; emphasis original). As this Court has held, a Plaintiff must "allege sufficient facts establishing that she is entitled to non-economic damages for her tort claim." *Widjaja v. JPMorgan Chase Bank, N.A*., No. CV 19-7825-MWF-AFM, 2020 WL 2949832, at *1 (C.D. Cal. Mar. 31, 2020).

Here, Plaintiff does not allege that she was or will be physically injured by the sunscreen products or that they damaged any of her property. Rather, Plaintiff claims to have been injured because she purchased a "worthless" product. Such claims sound in contract, not in tort, and are barred by the economic loss doctrine. Thus, Plaintiff's tort claims must be dismissed.

**D. Plaintiff fails to allege the sunscreen she purchased is unreasonably dangerous.**

Plaintiff's strict product liability claims for failure to warn and manufacturing defect

fail because Plaintiff does not allege the sunscreen products she purchased are "unreasonably dangerous." *Benson v. Honda Motor Co.*, 26 Cal. App. 4th 1337, 1344 (Cal. Ct. App. 1994) (explaining the standard to prove strict product liability). Plaintiff cannot meet this "unreasonably dangerous" standard given that the FDA permits up to 2 ppm of benzene and Plaintiff's counsel have consented to settlements that allow up to 1 ppm of benzene in sunscreen products. *See supra* § II; *In re Johnson & Johnson*; *In re Procter & Gamble*.[46] Allowed by the FDA, trace amounts of benzene are not "unreasonably dangerous." Thus, Plaintiff's strict-liability claims must be dismissed.

**E. Plaintiff's equitable claims fail because she does not lack an adequate remedy.**

The Court should dismiss Plaintiff's equitable claim for unjust enrichment because she fails to allege she lacks an adequate remedy at law. Plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA" and it is a "basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citations omitted) (affirming dismissal for claims of equitable restitution because plaintiff failed to plead she lacked an adequate remedy at law). Here, Plaintiff seeks injunctive relief, restitution, disgorgement, and other equitable relief. *See* SAC, Prayer. Yet, Plaintiff also seeks actual damages for breach of express warranty and her claims under the CLRA. *See* SAC ¶ 90, Prayer. Plaintiff's claims for unjust enrichment and equitable relief should be dismissed because she has an adequate remedy at law and has failed to allege otherwise.

## CONCLUSION

Any one of the foregoing arguments represents sufficient grounds to dismiss Plaintiff's SAC with prejudice. Accordingly, the Court should dismiss this action.

---

[46] Similarly, Plaintiff cannot meet the "safety hazard" standard required to plausibly allege a claim for implied warranty of merchantability. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018) (stating the standard to prove a breach of the implied warranty of merchantability where, as here, the plaintiff alleged that the product worked as intended but presented a safety hazard).

**Dated: September 23, 2022**     **STINSON LLP**

/s/ John W. Moticka

John W. Moticka (*admitted pro hac vice*)

/s/ Megan McCurdy

Megan McCurdy (*admitted pro hac vice*)

/s/ Ashley M. Crisafulli

Ashley M. Crisafulli (*admitted pro hac vice*)

SELMAN BREITMAN LLP

/s/ John P. Katerndahl

John P. Katerndahl (127646)

**Attorneys for Defendants**

## ATTESTATION

I, Megan McCurdy, am the CM/ECF user whose ID and password are being used to file this Motion to Dismiss Plaintiff's First Amended Complaint. Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in the filing's content and have authorized the filing.

DATED:   September 23, 2022     By:   /s/Megan McCurdy

Megan McCurdy (*admitted pro hac vice*)

STINSON LLP

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC