AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
SIN-TING MARY LIU (282884)
R. JASON RICHARDS (Admitted *Pro Hac Vice*)
17 E. Main St., Suite 200
Pensacola, FL 32501
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com
E-mail: jrichards@awkolaw.com


BRADLEY/GROMBACHER, LLP
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
Robert N. Fisher, Esq. (302919)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
rfisher@bradleygrombacher.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

BETH BOWEN, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

     v.

ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., SUN PHARMACEUTICALS, LLC;

        Defendants.

Case No.:  2:21-cv-04356-MWF-AGR

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Hearing Date: December 12, 2022**

**Hearing Time: 10:00 a.m.**

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND ON BENZENE............................................................4

III.    LEGAL STANDARD..........................................................................5

IV.     ARGUMENT......................................................................................6

V.      CONCLUSION..................................................................................35

i

# TABLE OF AUTHORITIES

Cases

*Adams v. United States*,
449 Fed.Appx. 653 (9th Cir. 2011) ........................................................17

*Arroyo v. Chattem, Inc.*,
926 F. Supp. 2d 1070 (N.D. Cal. 2012) .................................................6, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................5

*Ashton v. J.M. Smucker Co.*,
2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ........................................10

*Astiana v. Ben & Jerry's Homemade, Inc.*,
*2011 WL 2111796 (N.D. Cal. May 26, 2011)* ........................................10,

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ..................................................................21

*Bates v. Dow Agrosciences LLC*,
544 U.S. (2005) ......................................................................................16

*Berke v. Whole Foods Market, Inc.*,
2020 WL 5802370 (C.D. Cal. Sept. 18, 2020)................................. 10, 29

*Carter v. Novartis Consumer Health, Inc.*,
582 F. Supp. 2d 1271 (C.D. Cal. 2008)................................... 17, 21, 22

*Chavez v. Nestle USA, Inc.*,
511 Fed.Appx. 606 (9th Cir.2013) ..........................................................24

*Clark v. Time Warner Cable,*

523 F.3d 1110 (9th Cir.2008) .............................................................24

*Cohen v. ConAgra Brands, Inc.,*

16 F.4th 1283 (9th Cir. 2021) ............................................................16

*Covillo v. Specialtys Cafe,*

2011 WL 6748514 (N.D. Cal. Dec. 22, 2011) .....................................5

*Dana v. The Hershey Co.,*

180 F.Supp.3d 652 (N.D. Cal. 2016) ................................................11

*Delarosa v. Boiron, Inc.,*

818 F. Supp. 2d 1177 (C.D. Cal. 2011) ..............................................22

*Early v. Henry Thayer Company, Inc.,*

2021 WL 3089025 ..............................................................................23

*El Dorado Irrigation Dist. V. Traylor Bros. Inc.,*

2006 WL 306914 (E.D. Cal. Feb. 7, 2006) .........................................33

*Escobar v. Just Born, Inc.,*

2017 WL 5125740 (C.D. Cal. June 12, 2017) .....................................8

*Forcellati v. Hyland's, Inc.,*

2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) ............................... 20, 21

*Freeman v. Time, Inc.,*

68 F.3d 285 (9th Cir.1995) ................................................................29

*Giglio v. Monsanta,*

2016 WL 1722859 (S.D. Cal. Apr. 29, 2016) .....................................20

*Gustavson v. Wrigley Sales Co.*,
   961 F.Supp.2d 1100 (N.D. Cal. 2013) ..................................................18

*Hardeman v. Monsanto Co.*,
   216 F.Supp.3d 1037 (N.D. Cal. 2016) .................................................20

*Hernandez v. Monsanto Co.*,
   2016 WL 6822311 (C.D. Cal. July 12, 2016) ................................ 19, 20

*Hinojos v. Kol's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ................................................. 7, 11, 12

*Hsieh v. FCA US LLC*,
   440 F. Supp. 3d 1157 (S.D. Cal. 2020) ................................................33

*In re ConAgra Foods, Inc.*,
   2013 WL 4259467 (C.D. Cal. Aug. 12, 2013) .....................................26

*In re JUUL Labs. Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ......................................34

*In re NJOY, Inc. Consumer Class Action Litigation*,
   2015 WL 12732461 (C.D. Cal. May 27, 2015) .............................. 31, 32

*James ex rel. James Ambrose Johnson, Jr. 1999 Tr. v. UMG Recordings*,
   2011 WL 5192476 ...............................................................................34

*Johnson-Jack v. Health-Ade LLC*,
   587 F.Supp. 3d 957 (N.D. Cal. 2022) ..................................................31

*Jovel v. Boiron Inc.*,
   2013 WL 12164622 (C.D. Cal. Aug. 16, 2013) ............................. 20, 22

*Kwikset Corp. v. Superior Court,*

   51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011) ................... 7, 8, 9, 11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,

   416 F.3d 940 (9th Cir. 2005)..................................................................5, 14

*Maya v. Centex Corp.*,

   658 F.3d 1060 (9th Cir. 2011) ..................................................................7

*McCoy,*

   173 F.Supp.3d................................................................................16

*Medtronic, Inc. v. Lohr*,

   518 U.S. 470 (1996) .......................................................................16

*Moore v. Trader Joe's Co.*,

   4 F.4th 874 (9th Cir. 2021) ............................................................. 30, 31

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,

   2020 WL 1245130 (N.D. Cal. Mar. 20, 2020)............................... 10, 11

*Robinson Helicopter Co., Inc. v Dana Corp.*,

   34 Cal.4th 979 (2004)................................................................. 32, 33, 34

*Rosa v. Taser Int'l, Inc.*,

   684 F.3d 941 (9th Cir. 2012)...............................................................28

*Schloegel v. Edgewell Personal Care Co.*,

   2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ............................... 10, 11

*Sonner v. Premier Nutrition Corp.*,

   971 F.3d 834 (9th Cir. 2020)...............................................................34

*Souter v. Edgewell Personal Care Co.*,

   542 F.Supp.2d 1083 (S.D. Cal. 2021) ...................................................................18

*Spokeo, Inc. v. Robins*,

   578 U.S. 330 (2016) .....................................................................................................6

*Stengel v. Medtronic Inc.*,

   704 F.3d 124 (9th Cir. 2013) ....................................................................................16

*Tait v. BSH Home Appliances Corp.*,

   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ........................................................29

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,

   245 F.3d 1048 (9th Cir. 2001) ..................................................................................29

*White v. FCA US LLC*,

   2022 WL 3370791 (N.D. Cal. Aug. 16, 2022) ................................................ 33, 34

*Williams v. Gerber Prods. Co.*,

   552 F.3d 934 (9th Cir. 2008) ....................................................................................31

*Wisdom v. Easton Diamond Sports*, LLC,

   824 Fed. Appx. 537 (9th Cir. 2020) .....................................................................5, 6

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,

   135 F.3d 658 (9th Cir. 1998) .....................................................................................5

Statutes

21 U.S.C. §352(a)(1).............................................................................................. 18, 31

21 U.S.C. § 379r(a) ......................................................................................................17

21 U.S.C. § 379r(a)(2) ..................................................................................................22

Cal. Health & Safety Code § 111330 ................................................................ 18, 31

Cal. Health & Safety Code § 111400 ...................................................................12

Rules

Federal Rule of Civil Procedure 12(b)(6) ..............................................................5

# I. INTRODUCTION

Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively "Defendants") seek the wholesale dismissal of Plaintiff's class action claims—before any discovery has taken place—even though their sunscreen products contain a known human carcinogen (benzene). Defendants' motion should be denied for several reasons.

*First*, Plaintiff has suffered an injury-in-fact because she has plead that the sunscreen product she purchased and used has been tested and shown to be contaminated with 0.29 ppm benzene. *See* Second Am. Compl. at ¶ 8 (hereafter "SAC"). In addition, standing may be conferred by showing economic harm, which Plaintiff has sufficiently alleged. Plaintiff alleges she would not have bought the sunscreen products, or paid less for them, but for the defendants' misrepresentations. *See* SAC at ¶¶ 6, 48, 62, 70. This is all that is required to establish standing for purposes of economic loss under Ninth Circuit law.

*Second,* Plaintiff's claims are not preempted by the FDCA because her state law claims parallel federal law. Further, attacks on the legitimacy of the plaintiff's test results and/or the facility used for testing are not grounds for dismissal on a motion to dismiss standard, where plaintiff's factual allegations are taken as true.

*Third,* Plaintiff's claims are not subject to the primary jurisdiction doctrine because the claims asserted do not involve technical or policy considerations that require the Food and Drug Administration's ("FDA") area of expertise. Courts routinely determine whether a manufacturer misled consumers and violated state consumer laws in cases such as this. Moreover, the court need not make any factual determinations at this stage because the motion to dismiss simply tests the sufficiency of Plaintiff's allegations, which the Court may decide within its normal experience without impinging on the FDA's regulatory scheme.

*Fourth*, Plaintiff has sufficiently plead that she read and relied to her detriment upon the representations and omissions provided by defendants in the sunscreen products' packaging, labeling and written advertisements. *See* SAC at ¶¶ 6, 93, 103, 108, 114.

*Fifth*, Plaintiff has adequately alleged that a reasonable consumer is likely to be deceived or misled by sunscreen labels and advertising claims which omit the fact that the products contain benzene, a known human carcinogen. *See* SAC at ¶¶ 61-62, 68-69, 80, 83. Given its known carcinogenic effects, the presence of benzene in sunscreen products is certainly material to a reasonable consumer. The Court cannot determine as a matter of law that *no reasonable consumer* would likely be deceived or mislead by failing to disclose such information.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Sixth*, Plaintiff has satisfied the more relaxed burden under Rule 9(b) where the evidence of fraud is within a defendant's exclusive possession.

*Seventh*, Plaintiff's express warranty claims survive because, as alleged, those warranties were relied upon. *See* SAC at ¶ 108.

*Eighth*, Plaintiff's claims are not barred by the economic loss doctrine because they are based on omissions *and* affirmative misrepresentations.

*Ninth*, Plaintiff has sufficiently alleged that the sunscreen products are unreasonably dangerous under California strict liability law. *See* SAC at ¶¶ 25, 77, 107, 110.

*Finally,* Plaintiff's equitable claims survive because she is entitled to plead alternative theories of recovery for the same conduct under California law.

## II. BACKGROUND ON BENZENE

Benzene is a known human carcinogen, causing blood born cancers such as leukemia. It is not and never has been "authorized" by FDA for use in the manufacture of sunscreen products. Any such assertion stands in stark contrast to the FDA's June 9, 2022 Alert, which unequivocally states: "Consistent with the recommendations of the ICH Q3 guidance, manufacturers should not use benzene in the manufacture of drugs."[1]  The FDA explicitly recognizes that "[b]enzene is a

---

[1] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (June 9, 2022).

carcinogen that can cause cancer in humans"[2] and classifies benzene as a "Class 1" solvent that should be "avoided."[3] SAC at ¶ 26. Indeed, the danger of benzene exposure is well-known to the scientific community. The World Health Organization recognizes that "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[4] *Id*. at ¶ 77. The United States Environmental Protection Agency ("EPA") similarly provides standards for the "Maximum Contaminant Level" [MCL] for drinking water, which the EPA defines as "[t]he highest level of a contaminant that is allowed in drinking water."[5] Given its known human carcinogenic risks, the EPA sets the MCL for benzene in drinking water at "zero."[6] Consistent with these guidelines, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[7] *Id*. at ¶ 21. Recognizing the inherent danger of benzene exposure, Defendants have issued at least two separate recalls of sunscreen products over the

---

[2] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

[3] https://www.fda.gov/media/71737/download.

[4] https://www.who.int/ipcs/features/benzene.pdf.

[5] United States Environmental Protection Agency, 2018 Edition of the Drinking Water Standards and Health Advisories Tables, at p. vi. file:///C:/Users/jrichards/AppData/Local/Microsoft/Windows/INetCache/Content.Outlook/1ADRNMB0/EPA%202018%20Drinking%20Water%20Standards.pdf.

[6] *Id*. at 1.

[7] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

past year due to benzene contamination—one in Australia and one in the United States. ¶¶ 31-34. Notably, the U.S. recall was initiated due to "trace levels of benzene" having been found in "some samples," thus confirming that even small amounts of benzene pose a risk to human health. *Id*. at ¶ 34.

### III.   LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, a district court may abuse its discretion by prematurely dismissing class allegations where the opportunity to conduct discovery may have shown class treatment was appropriate. *Wisdom v. Easton Diamond Sports*, LLC, 824 Fed. Appx. 537, 538 (9th Cir. 2020). *See also Covillo v. Specialtys Cafe*, 2011 WL 6748514, at *7 (N.D. Cal. Dec. 22, 2011) (denying defendants' motion to dismiss or strike class allegations as premature where there had been no answer, discovery had not yet commenced, and no motion for class certification had been

filed); *Wisdom v. Easton Diamond Sports*, LLC, 824 Fed. Appx. 537, 538 (9th Cir. 2020) (reversing district court's grant of dismissal of class complaint, noting that a district court abuses its discretion if it unreasonably deprives the plaintiff of any opportunity to develop his claims through discovery).

## IV. ARGUMENT

### 1. *Plaintiff has Article III standing*

Article III standing requires that plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  A plaintiff can establish standing in a case involving allegations of contaminated food and pharmaceuticals by proving *either* of the following: "(1) the increased risk of harm from exposure to a dangerous substance, and (2) the financial loss from purchasing a product in reliance on false or misleading information." *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1076 (N.D. Cal. 2012). Plaintiff satisfies both types.

With respect to the first type, Plaintiff has alleged that the sunscreen product she purchased and used (Banana Boat Ultra Sport Sunscreen SPF 50) has been tested and shown to be contaminated with 0.29 ppm benzene. SAC at ¶ 8. Plaintiff has also alleged that benzene is a known human carcinogen that can increase the

risk of harm from exposure, even at low concentrations. SAC at ¶¶ 18-26. Such allegations are sufficient to support Article III standing.

Plaintiff also has established standing with respect the second type—economic harm. Under California law, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging ... that he or she would not have bought the product but for the misrepresentation." *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 329, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011). The Ninth Circuit has confirmed that *Kwikset* establishes all that is necessary for Article III standing in California for claims of economic injury. *Hinojos v. Kol's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("The *Kwikset* Court explained precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation.""); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (A "quintessential injury-in-fact" can occur when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent.").

The *Arroyo* case, *supra*, is instructive. There, the plaintiff alleged she suffered economic harm by losing money as a result of purchasing defendant's contaminated product. *Arroyo,* 926 F. Supp. 2d at 1072. Specifically, plaintiff alleged that she "would not have purchased Dexatrim had she known that hexavalent chromium was present in the product." *Id.* 1076. The court held that "[a]n allegation that a plaintiff would not have purchased a product if it had been labeled accurately is sufficient to establish injury under California's consumer laws." *Id*.

Likewise, in the present case, Plaintiff has pled that she would not have purchased the sunscreen products, or paid less for them, absent Defendants' misrepresentations. SAC at ¶¶ 6-7, 90. Because Plaintiff has alleged everything *Kwikset* requires to allege economic injury under the UCL, FAL, and CLRA, she has satisfactorily pleaded facts to establish her standing to bring her claims. *See Escobar v. Just Born, Inc*., 2017 WL 5125740 at *4 (C.D. Cal. June 12, 2017) (standing satisfied under UCL, FAL, and CLRA where class action plaintiff alleged that she would not have bought the candy products but-for defendant's misrepresentation, citing *Kwikset*).

### 2. *Plaintiff has standing to pursue claims for the other products she purchased*

In addition to alleging she purchased Banana Boat® Ultra Sport SPF 50, which Plaintiff's testing confirms is contaminated with benzene, she also alleges

**8**

that, within class period, she purchased Banana Boat® Ultra Sport SPF 30 ("Ultra Sport 30") and Banana Boat® Ultra Sport SPF 100 ("Ultra Sport 100"), but discarded those products after use.[8] SAC at ¶ 8. Defendants contend (at p. 3) that Plaintiff lacks standing to pursue claims with respect to Ultra Sport 30 and Ultra Sport 100 because she does not allege that those products were from a batch contaminated with benzene (as tested by Valisure) or that either product actually contained benzene, only that there was some possibility of the sunscreen containing benzene.

But such allegations are not necessary for Article III standing. *See Kwikset,* 51 Cal.4th at 329. This is because plaintiff's claims are not solely based on the theory that defendants' sunscreen products are unsafe due to the presence of benzene, but *also* that those products fail to disclose in their labeling and advertising the presence of benzene. *See* SAC at ¶¶ 46-48 (labeling), ¶¶ 40, 81, 62 (advertising). Plaintiff alleges that *all* of the sunscreen products are marketed in substantially the same way—as sunscreen—and *all* of them contain false labeling and advertising. *Id*. at ¶ 48 (alleging that "each and every one of the Sunscreen Product (i) are marketed in substantially the same way – as "Sunscreen"— and (ii)

---

[8] Although Plaintiff has discarded her previously purchased Ultra Sport 30 and Ultra Sport 100, she alleges that Valisure's testing has shown that the Ultra Sport 100 product contained >0.1 ppm benzene, an amount which poses risks to human health. *Id*.

fail to include labeling indicating to consumers that the Sunscreen Products contain benzene or may contain benzene"). ¶ 51 (referring to "Defendants' deceptive sunscreen claims that accompanied each and every Sunscreen Product in the Defendants' collection").

Plaintiff further alleges that she lost money by purchasing sunscreen products she would not have otherwise purchased, or paid less for, absent defendants' misconduct. *Id*. at ¶ 6 ("Plaintiff suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein."); ¶ 90 ("Plaintiff and members of the putative class have suffered actual damages insofar as they lost money by purchasing Sunscreen Products they would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein"). Such allegations are sufficient for purposes of establishing standing under California's consumer protection laws. *Ashton v. J.M. Smucker Co*., 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020); *Berke v. Whole Foods Market, Inc*., 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020); *Rice-Sherman v. Big Heart Pet Brands, Inc*., 2020 WL 1245130 (N.D. Cal. Mar. 20, 2020); *Astiana v. Ben & Jerry's Homemade, Inc., 2011 WL 2111796 (N.D. Cal. May 26, 2011).*

The Defendants' reliance on the Missouri federal court case of *Schloegel* is unpersuasive. *See Schloegel v. Edgewell Personal Care Co*., 2022 WL 808694 at

*2-3 (W.D. Mo. Mar. 16, 2022). Missouri federal courts are subject to Eighth Circuit law, and in particular the standing decision of *Wallace*, *supra*. In *Schloegel*, the court specifically relied upon *Wallace* in finding that plaintiffs lacked standing. But "*Wallace* does not reflect the law of this [Ninth] Circuit" with respect to establishing standing for economic injury. *Rice-Sherman*, 2020 WL 1245130 at *6. California's federal judges have even described *Wallace* as a "bizarre result." *See e.g., McCoy* 173 F.Supp.3d at 964 ("This Court respectfully disagrees with that result [in *Wallace*]. In this Court's view, if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III.") (citing *Hinojos,* 718 F.3d at 1104); *Dana v. The Hershey Co*., 180 F.Supp.3d 652, 663 (N.D. Cal. 2016) (describing *Wallace* as a "bizarre result" and citing *Hinojos* and *Kwikset* as supporting grounds for finding that plaintiff had standing).

The Defendants' reliance on the Northern District's opinion in *Bodle* is equally unavailing. Unlike the present case, *Bodle* was a *personal injury action* in which the plaintiff claimed she developed leukemia after using an allegedly benzene-contaminated sunscreen product. Nowhere in the *Bodle* court's decision is it mentioned, let alone addressed, that plaintiff lacked standing to pursue her economic loss claims. Instead, the claims were dismissed because plaintiff "failed

to establish injury or causation as required" in personal injury matters. Motion, at Ex. 5. (*Bodle* order). That is not this case. In the instant case, Plaintiff alleges economic injury, not personal injury. As repeated ad nauseum throughout this opposition, under California law, a plaintiff can satisfy the economic injury requirement for standing by merely alleging that she would not have bought the product, or paid less for it, but for the defendants' misrepresentations. *Hinojos*, 718 F.3d at 1104. Plaintiff has alleged just that. SAC at ¶¶ 40, 48, 51, 52(e), 65, 70, 80, 88, 101. Because plaintiff sufficiently alleges that *all* of the sunscreen products have been falsely labeled and advertised, she has standing to pursue claims for *all* the products she purchased.

### 3. *Plaintiff's claims regarding of risk of harm are not hypothetical*

Defendants' summarily assert that "trace amounts of benzene" in sunscreen products are not unsafe (Motion, at p. 5), so plaintiff's risk of harm is hypothetical and she lacks standing. This claim is contradicted by the allegations in the SAC that the sunscreen products are unreasonably dangerous under California law. California law provides that a product is misbranded if, among other things, "if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling." Cal. Health & Safety Code § 111400.

Plaintiff has alleged that the defendants' sunscreen products are defective because they are contaminated with benzene, and that benzene is a known human carcinogen that poses health risks to humans, *even at low levels of exposure*. *See* SAC at ¶ 35 ("Even in trace amounts, benzene is known to pose a health risk"); ¶ 107 ("the Sunscreen Products pose a dangerous health risk because they contain benzene"); ¶ 110 ("the Sunscreen Products are not safe and pose serious health risks because they contain benzene"); ¶ 25 ("Even low levels of benzene are particularly dangerous in a sunscreen product"); ¶ 77 ("benzene is carcinogenic to humans, and no safe level of benzene can be recommended"). These allegations are supported by citations to published literature and statements from the scientific community (SAC ¶¶ 25, 35, 77). The health risks of benzene have also been recognized by the FDA: "The health consequences of benzene exposure depend on the amount, route, and length of time of exposure."[9] The agency noted that even "small amounts" of benzene exposure, such as through inhalation or skin absorption, over extended periods of time "can decrease the formation of blood cells."[10]

Ironically, the Defendants' own statements also support Plaintiff's allegations regarding risk. As stated in the SAC (¶¶ 32 & 34), on July 29, 2022, the

---

[9] https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs.
[10] *Id.*

Defendants voluntarily recalled various lots of sunscreen products on the basis that "an internal review found that some samples of the [sunscreen] product contained *trace levels of benzene.*"[11] It is the height of hypocrisy for defendants to assert that "trace amounts of benzene" in sunscreen products are not unreasonably dangerous when trace amounts of benzene was the defendants' justification for issuing a nationwide recall in the first place. Assuming all of the factual allegations alleged in the SAC to be true, as the Court must do, the Court must reject defendants' contradictory claims of a "hypothetical risk."[12] *Livid Holdings*, 416 F.3d at 946.

Plaintiff further alleges that she and members of the class used the sunscreen products in the manner intended. *See id*. at ¶ 117. Plaintiff also alleges that she would not have purchased the sunscreen products, or paid less for them, had she known that they contain benzene. SAC at ¶¶ 6-7, 90, 130. Such allegations are sufficient to support a claim of actual economic loss. As alleged, the sunscreen products *are* worth less than what Plaintiff paid for them. *Id*. at ¶¶ 6-7, 90, 130.

---

[11] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due.

[12] Defendants additionally characterize the presence of 0.29 ppm benzene in the bottle of sunscreen Plaintiff purchased as a "trace amount" that is "under the FDA's 2 ppm limit." Motion at p. 4. That is a red-herring. As alleged in the SAC, the Defendants do not meet this safe harbor provision because the use of benzene in the manufacture of sunscreen product is not "unavoidable in order to produce a drug product with a significant therapeutic advance." SAC at ¶ 36. Therefore, as alleged, "Defendants Sunscreen Products do not meet this safe harbor exception." *Id.*

Viewed in the light most favorable to Plaintiff, she must be allowed to introduce evidence to the jury to support these contentions.

### 4. Plaintiff has standing under the UCL, FAL and CLRA

Contrary to Defendants' allegations, Plaintiff has sufficiently alleged that she relied on Defendants' sunscreen products' labeling and advertising in deciding whether to purchase the sunscreen products. In fact, the Defendants' assertion of non-reliance is directly contradicted by the SAC, which alleges: "Plaintiff and the Class read and relied on these express warranties provided by Defendants in the packaging, labeling and written advertisements." SAC at ¶ 108; *see also id*. at ¶ 6 ("When purchasing the sunscreen products, Plaintiff reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that the sunscreen products were properly manufactured, free from defects, safe for their intended use, and not adulterated or misbranded."); ¶ 103 ("Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment."); ¶ 114 ("Plaintiff and members of the Class purchased the Sunscreen Products in reliance upon Defendants' skill and judgment, the implied warranties of fitness for the purpose, and the written labels and advertisements of the Defendants with respect to their Sunscreen Products."). Accordingly, Defendants' claim of non-reliance must be rejected.

### 5. Plaintiff's claims are not preempted

Defendants additionally contend that plaintiff's claims are both expressly and impliedly preempted. They are not.

### a. *California Product Liability Law is Equivalent to Federal Law*

When analyzing preemption, a court's analysis must "start with the assumption that this historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). "Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). Moreover, "[t]he historic police powers of the State include the regulation of health and safety" of its citizens. *Stengel v. Medtronic Inc.*, 704 F.3d 124, 128 (9th Cir. 2013). "Because these are primarily, and historically, matters of local concern, the States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Id.* "The long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. at 432, 449 (2005).

This presumption notwithstanding, Defendants assert (at p. 9) that Plaintiff's claims are expressly preempted under § 379r of the FDCA, which regulates OTC drugs. Defendants bear a considerable burden of establishing that preemption

applies and in this instance has failed to do so. Section 379r prohibits states from establishing "any requirement ... (1) that relates to the regulation of a [nonprescription drug]; and (2) that is *different from or in addition to, or that is otherwise not identical with,* a requirement under the [FDCA ...]" 21 U.S.C. § 379r(a) (emphasis added). But Congress also included a non-preemption "savings clause," which states that preemption does not affect product liability claims. Specifically, Section 379r(e) reads: "Nothing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." Thus, "Section 379r(e) leaves room explicitly for state product liability laws to supplement the drug labeling process." *Carter v. Novartis Consumer Health, Inc*., 582 F. Supp. 2d 1271, 1288 (C.D. Cal. 2008). Even assuming, for the sake of argument, that Plaintiff's claims are not brought under the "product liability law of any state" insofar as she does not allege physical injury to person or property, preemption does not apply.

This is because all of Plaintiff's claims under California law parallel the requirements imposed by the FDCA's misbranding prohibitions. To be parallel to federal law, a state-law claim need not have the same name as a provision of federal law. "[I]ndeed, it would be surprising if a common-law requirement used the same phraseology as" federal law. *Bates*, 544 U.S. at 454; *see also Adams v. United States*, 449 Fed.Appx. 653, 658-659 (9th Cir. 2011) (state law claims need

not be "phrased in identical language as its corresponding [federal] requirement" to avoid preemption). A parallel claim also need not have the exact same elements as a federal law. *See Lohr,* 518 U.S. at 495. It need only be "equivalent to, and fully consistent with," federal law. *Bates*, 544 U.S. at 447. In this case, it is.

Plaintiff is alleging Defendants' sunscreen products are misbranded and adulterated under equivalent (if not identical) federal and California laws, (SAC at ¶¶ 42-46). Indeed, both federal law and California state law provide that a drug is deemed misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. §352(a)(1); Cal. Health & Safety Code § 111330. Thus, plaintiff is suing because defendants' conduct violates California's common law failure to warn, the UCL, CLRA and FAL, all of which are equivalent to FDA regulations. *Gustavson v. Wrigley Sales Co*., 961 F.Supp.2d 1100, 1119 (N.D. Cal. 2013). *See also Souter v. Edgewell Personal Care Co*., 542 F.Supp.2d 1083, 1093 (S.D. Cal. 2021) (noting that "Courts often analyze claims under the UCL, FAL, and CLRA together 'because they share similar attributes."). As a result, plaintiff is not seeking to impose labeling "requirements" that are "different from," "in addition to," or "not identical with" federal law.[13]

Federal judges in this district and circuit have reached similar conclusions

---

[13] For the same reasons, contrary to Defendants' claims (at pp. 11-12), Plaintiff's allegation that Defendants should have placed a warning on the labeling or otherwise disclosed the risk of benzene to consumers is not preempted.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

under similar facts. For instance, much like the present case, in *Hernandez v. Monsanto Co.*, 2016 WL 6822311 (C.D. Cal. July 12, 2016), plaintiff alleged that defendant failed to warn consumers that the weed killer Roundup was carcinogenic. *Id*. at *1-2. The complaint asserted claims for, among other things, strict products liability based on failure to warn, negligence, breach of implied warranty, and breach of express warranty. *Id*. at *1. Plaintiff's failure to warn claims included allegations that defendant "failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended and reasonably foreseeable uses." *Id*. at *5 n.21.

As in the present case, the federal regulations in *Hernandez* (i.e. FIFRA) contained an express preemption clause, which limited the role of states in regulating warnings for pesticides and herbicides. *Id*. at *3. According to that clause, states "shall not impose or continue in any effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." *Id*. As noted by the court, "[t]he express preemption clause preempts not only state statutes and regulations, but also common-law duties." *Id*. Hence, the defendant argued express preemption. But the court rejected that claim, finding that the California's common law rules imposing liability for failure to warn

"closely parallel the requirement set forth in" the federal law. *Id.* at *4. And, the plaintiff's complaint in *Hernandez* sufficiently "track[ed] both FIFRA and California law requirements." *Id.* at *5. Accordingly, the court held that "[b]ecause Plaintiffs' claims based on California's common law failure to warn cause of action do not impose labeling requirements that are 'in addition to or different from' those required under [federal law], his claims are not preempted." *Id. See also Giglio v. Monsanta*, 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016) (rejected defendant's preemption claim on the basis that the "failure to include a warning regarding known carcinogenic properties of a pesticide would constitute misbranding under [the federal statute]."); *Hardeman v. Monsanto Co.*, 216 F.Supp.3d 1037, 1038 (N.D. Cal. 2016) (denying preemption, finding that insofar as plaintiff's "failure-to-warn claims attack Roundup's product labeling, they are consistent with FIFRA").

Likewise, courts in this district have also rejected preemption claims involving § 379r specifically, on the basis that plaintiff's claims were parallel, and thus, not "different from or in addition to" federal requirements. *See e.g.*, *Jovel v. Boiron Inc.*, 2013 WL 12164622 at * 10 (C.D. Cal. Aug. 16, 2013) (holding that § 379r did not expressly preempt the plaintiff's state-law claims asserting that defendant labeled its products in a manner that was false or misleading); *Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 at *3 (C.D. Cal. Jan. 12, 2015) (noting that

the legislative history surrounding § 379r makes clear that Congress did not mean to preempt state laws prohibiting false and misleading advertising). *See also Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 757 (9th Cir. 2015) ("we have little difficulty concluding that the FDCA does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards").  As noted in by then-Chief Judge King in *Forcellati*, *supra*, the legislative history of § 379r makes it "clear that 21 U.S.C. § 379r was not meant to preempt plaintiff's [consumer law] claims." *Forcellati,* 2015 WL 9685557 *Id*. at *3.

The *Carter* case, cited by defendants (at p. 12), is distinguishable. *See Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008). There, the court found that federal regulations expressly preempted the plaintiff's state law claims alleging that defendant falsely advertised and marketed OTC cough and cold medicines as "safe and effective for children under the age of six." *Id.* at 1277, 1280–82. In that case, however, the court observed that the FDA had set forth the "approved indications for use and age-dependent dosage instructions that must be present on the product labeling." *Id.* at 1280. The *Carter* plaintiffs thus presented a direct challenge to the FDA-approved language regarding appropriate product warnings. For that reason, the court held that a state

law claim attempting to impose a requirement "different from" or "in addition to" the FDA requirements was expressly preempted. *Id.* at 1283.

Here, in contrast, the FDA has not regulated the specific contents of the sunscreen labels that Plaintiff challenges regarding benzene, so her state law claims do not seek to impose any requirement "different from" or "in addition to" any FDA requirement. Here again, Plaintiff's state law claims merely seek to impose similar requirements to what federal law already requires—truthful statements on labels and in marketing and advertising. Therefore, no such conflict exists between federal and state law. *See Jovel*, 2013 WL 12164622 at *12; *see also Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189-1190 (C.D. Cal. 2011) (noting "the Court concludes that Plaintiff's claims, if proven to be true, would simply require Defendant to truthfully state its efficacy or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA. *See* 21 U.S.C. § 379r(a)(2). Therefore the Court concludes that the FDCA does not expressly preempt Plaintiff's claims.").

Furthermore, the *Carter* court did not discuss preemption in regards to the plaintiffs' consumer fraud claims; the court dismissed those claims under Rule 9 because plaintiffs "provide[d] no details of the alleged fraud" and did "not provide any facts relating to their reliance on Defendants' alleged

misrepresentations." *Id*. at 1289. Conversely, in the present case, Plaintiff has provided details of the alleged fraud, SAC at ¶¶ 61-63, 80-81, and provided facts relating to her reliance on Defendants' misrepresentations, SAC ¶¶ 6, 108.

Defendants also cite yet another federal court decision from the Eighth Circuit, *Early v. Henry Thayer Company, Inc*., 2021 WL 3089025 at (E.D. Mo. July 2, 2021). There, the plaintiff alleged that defendant's misrepresented that their products were "natural" even though they contained several synthetic, unnatural ingredients and preservatives. *Id*. at *2. The plaintiff thus sought to require the defendant to include disclaimers on its products' labels to identify which *ingredients* were "synthetic" and which were "natural." *Id*. at *10. The court found such claims preempted because such requirements would be "different from or in addition to" what is required under the FDCA, which prohibit the use of descriptive terms in ingredients statements. *Id*. at *10 (citing  § 701.3(c) (prohibiting the use of descriptive terms in ingredient statements). Conversely, Plaintiff does not allege that benzene should have been included as an active "ingredient" on the sunscreen labels. Nor could it have been insofar as the FDA prohibits the use of benzene in the manufacture of sunscreen products.[14]

---

[14] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (June 9, 2022) (""Consistent with the recommendations of the ICH Q3 guidance, manufacturers should not use benzene in the manufacture of drugs.").

Moreover, Defendants conveniently fail to mention that the *Early* court actually *denied* defendant's motion to dismiss plaintiff's misrepresentation claims on the basis of preemption because they were parallel to federal misbranding law.

*Id*. In short, because Plaintiff's claims are parallel to federal law, they are not preempted.

### 6. Plaintiff's claims are not subject to the FDA's primary jurisdiction

Defendants contend that the Court should dismiss or stay plaintiff's claims under the primary jurisdiction doctrine while the FDA works with drug manufacturers to address the issue of benzene contamination in drugs and considers updating its regulation of OTC sunscreen products. This argument is foreclosed by Ninth Circuit precedent: "Where, as here, the [primary jurisdiction] doctrine is invoked at the motion to dismiss stage, the question is whether the complaint plausibly asserts a claim that would *not* implicate the doctrine." *Chavez v. Nestle USA, Inc.,* 511 Fed.Appx. 606, 607 (9th Cir.2013).  Accordingly, Defendants' argument must be denied.

Even if this argument was appropriate to make at this stage, there is no need to take such a wait-and-see approach. *See Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir.2008) (the primary jurisdiction doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit."). The issues raised by the complaint are

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

not beyond the core competency of this Court. Nor are they so technical or complex that this Court's determination will intrude upon the questions before the FDA.

The FDA has been working with drug manufacturers on the issue of specific issue of benzene contamination for over a year. This work has resulted in the agency issuing an FDA Alert *reminding* sunscreen manufacturers that they "should not use benzene in the manufacture of drugs."[15] The agency has also worked with numerous manufacturers, including Defendants, over the past year to recall several lots of sunscreen products contaminated with benzene.[16] The FDA's most recent Alert, published June 9, 2022, reaffirms the agency's long-standing position with respect to benzene: "Drug manufacturers should avoid using benzene in the manufacturing process."[17] The Alert further notes that this prohibition is consistent with the agency's 2017 guidance document: "Consistent with the recommendations of the ICH Q3 guidance, manufacturers should not use benzene in the manufacture of drugs."[18]

---

[15] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (June 9, 2022).

[16] To date, there have been 11 recalls of products due to the benzene contamination.

[17] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (June 9, 2022).

[18] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (June 9, 2022); Food and

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

The defendants' nevertheless assert (at p. 23) that a ruling on the sufficiency of the allegations in the SAC "could conflict with the FDA's forthcoming update on OTC sunscreen regulation." But the FDA's journey to update regulatory requirements for sunscreen products began in 2019[19]—well before Valisure's Citizen Petition regarding benzene was filed in 2021. And there is no indication that any forthcoming amendments to the OTC monograph will address benzene contamination. Benzene is not even mentioned in the FDA's September 27, 2021 proposed order discussing the issues to be addressed by the amendments. Instead, the FDA discusses its intention to finalize the GRASE status on "the eight sunscreen active ingredients" identified in the proposed order, which does *not* include benzene.[20]

Courts routinely decide whether a manufacturer misled consumers and violated state consumer protection laws, including in sunscreen cases such as this one.  This Court should do the same. *See In re ConAgra Foods, Inc*., 2013 WL 4259467 at *2 (C.D. Cal. Aug. 12, 2013) (declining to apply primary jurisdiction doctrine, stating this is not a "a technical area in which the FDA has greater . . .

---

Drug Administration, *Q3C – Tables and List Guidance for Industry* (2017) (https://www.fda.gov/media/71737/download).

[19] https://www.federalregister.gov/documents/2019/02/26/2019-03019/sunscreen-drug-products-for-over-the-counter-human-use.

[20] The 8 active ingredients under review are "avobenzone, homosalate, octinoxate, octisalate, octocrylene, oxybenzone, ensulizole, and meradimate." https://www.govinfo.gov/content/pkg/FR-2021-09-27/pdf/2021-20780.pdf.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

expertise than the courts because every day courts decide whether conduct is misleading.").

### 7. *Plaintiff's allegations satisfy Rule 9(b)*

Plaintiff has alleged fraud by misrepresentation and/or omission relating to the presence of benzene in the sunscreen products. *See* SAC at ¶¶ 60-63, 96-104. To satisfy Rule 9(b), the complaint must allege the "who, what, when, where, and how" of the circumstances constituting fraud.  The allegations here easily meet this standard:

• ***Who***: Paragraphs 6-15 of the SAC clearly set forth the applicable Defendants and their role with respect to the claims made in this case. SAC at ¶¶ 6-15.

• ***What***: The SAC sets forth the defendants' alleged misconduct with respect to the sunscreen products, including that (1) the failure to disclose the presence of benzene in the sunscreen products is false and misleading, (2) each and every one of the sunscreen products are marketed in substantially the same way; (3) such marketing was deceptive by, among other things, represented the products as safe and effective even though they contain benzene. *See id*. at ¶¶ 6, 40, 48, 65, 68, 70, 80, 101.

• ***Where:*** The time, place and specific content of the false representations stem from the sunscreen products' packaging, labeling and written advertisements. Plaintiff alleges she purchased various bottles of defendants' sunscreen products

"[b]etween 2017 and 2020." *Id*. ¶ 5. During that timeframe, Plaintiff alleges she read and relied upon the products' packaging, labeling and written advertisements in deciding to purchase the products. *See id*. at ¶¶ 6, 102-103, 108. Plaintiff has additionally provided an exemplar of the false and/or misleading label she relied upon. *Id*. at ¶ 47. Plaintiff has also identified representative marketing and promotional materials that she and the putative class members were exposed to and relied upon during the relevant class period. *Id*. at ¶ 62. Any *additional* marketing materials that Plaintiff relied upon will be uncovered once discovery is allowed to begin.

Plaintiff's further alleges that Defendants' failure to disclose the presence of benzene in their sunscreen products amounts to negligent omission and the false representations regarding the quality and safety of the products amount to negligent misrepresentations.  SAC at ¶ 102. Plaintiff avers that Defendants knew or should have known that their products contain benzene but failed to disclose that fact. SAC at ¶ 125. A cause of action based on alleged omissions lies where a Defendant has a duty to make disclosures. *Rosa v. Taser Int'l, Inc.,* 684 F.3d 941, 946 (9th Cir. 2012) ("California law places a duty on manufacturers to warn of a particular risk if it is known or knowable ... at the time of manufacture and distribution."). Plaintiff has alleged sufficient facts to establish such a duty disclose under California law. *Id*. at ¶¶ 98-102, 126-129. At this juncture, Plaintiff is not

required to specify with exact detail the time, place, and specific content of all the alleged omissions. *See Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387 at *2 (C.D. Cal. Aug. 31, 2011)  (noting that "a plaintiff in a fraud-by-omission suit faces a slightly more relaxed burden [under Rule 9(b)], due to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner;" denying a motion to dismiss FAL claims even though plaintiff "assert[ed] a theory of misrepresentation by omission."); *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Rule 9(b) may be relaxed to permit discovery . . . where the evidence of fraud is within a defendant's exclusive possession").

### 8. Plaintiff's claims state a cause of action

Plaintiff has adequately alleged facts upon which relief may be granted. Whether the label is misleading "must be evaluated from the vantage of a reasonable consumer." *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir.1995). However, "[t]he question of whether a business practice is deceptive generally presents a question of fact not suited for resolution on a motion to dismiss." *Berke v. Whole Foods, Inc.*, 2020 WL 5802370 at *12 (C.D. Sept. 18, 2020). Only in "rare circumstances [may] a court be in the position to consider the viability of the alleged consumer law claims based on its review of the product packaging." *Id*.

A reasonable consumer would surely want to know if a sunscreen product contains benzene, a known human carcinogen, before purchasing it. A reasonable consumer would not expect sunscreen—a product that is represented to *protect* against sunburn and skin cancer—would turn out to contain a chemical (benzene) that actually *increases* the risk of cancer. SAC at ¶ 107. Such knowledge is particularly important considering that benzene-contaminated sunscreen is absorbed through the skin and by inhalation, and that health organizations caution that "no safe level of benzene can be recommended." *Id*. at ¶ 77.

The Defendants' citation to *Moore v. Trader Joe's Co*., 4 F.4th 874 (9th Cir. 2021) does not support their assertion that the plaintiffs' claims are not viable. In that case, the court found that Trader Joe's use of the term "100% New Zealand Manuka Honey" to market Manuka honey that was not "100% derived from a single, floral source" was not deceptive because, among other things, reasonable consumers know that bees are "foraging" creatures and that "it is impossible to produce honey that is derived exclusively from a single floral source." *Id*. at 883. Unlike in *Moore*, it is *not* impossible to produce benzene-free sunscreen products. SAC at ¶ 37 ("the use of benzene [in sunscreen products] is entirely avoidable"); *see also* Valisure Citizen Petition [Ex. A] (identifying sunscreens that did not contain benzene). Moreover, the label at issue in *Moore* complied with specific FDA regulations and, thus, was unable to mislead a reasonable consumer as a

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

matter of law by statute. *Id*. at 881. In contrast, Plaintiff is asserting the common law claim of fraudulent misrepresentation and the FDCA's misbranding statute (and California law) prohibits labeling that "is false or misleading in any particular." 21 U.S.C. §352(a)(1); Cal. Health & Safety Code § 111330. *See Johnson-Jack v. Health-Ade LLC*, 587 F.Supp. 3d 957, 967 (N.D. Cal. 2022) (distinguishing *Moore*). It cannot be said that the failure to disclose such important safety information, viewed in the light most favorable to plaintiff, is unlikely to mislead a reasonable consumer.

Defendants further argue (at p. 29) that the numerous advertising misstatements referenced in the SAC are taken "out of context" and would not mislead a reasonable consumer.  While that may be Defendants' position, it does not match Plaintiff's allegations. As noted, it is "rare" for a district court to grant a motion to dismiss based on a defendants' allegedly deceptive conduct. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (reversing district court's determination that product label was not deceptive as a matter of law) (applying California law).  Indeed, judges in this district have recognized that determining how a defendants' advertisements "would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." *In re NJOY, Inc. Consumer Class Action Litigation*, 2015 WL 12732461 at *11 (C.D. Cal. May 27, 2015). Plaintiff has identified numerous advertisements

that allegedly contain false representations about the sunscreen products, including with respect to the products' safety. SAC at ¶ 62. Plaintiff further alleges that health and safety related risks are important to her and that she would not willingly purchase a sunscreen product that is contaminated with a cancer causing drug like benzene. *Id*. at ¶ 37.  "Numerous courts have held that representations concerning the health and safety effects of products are important to consumers, and hence that claims based on such representations are sufficiently plausible that they should survive dismissal." *In re NJOY*, 2015 WL 12732461 at * 11. For the same reasons, Defendants' claims should be rejected.

### 9.  *Plaintiff's tort claims are not barred by the economic loss doctrine*

Plaintiff claims are not barred by the economic loss doctrine because they are based on omissions *and* affirmative misrepresentations which are independent of Defendants' breach of contract. In *Robinson Helicopter Co., Inc. v Dana Corp*., 34 Cal.4th 979 (2004), the California Supreme Court held that the economic loss rule did not bar plaintiff's "fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract." *Id*. at 991. Thus, "a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages are independent of the plaintiff's economic loss" are not barred by the economic loss doctrine. *Id*. at 993.

Here, as in *Robinson*, Plaintiff has alleged Defendants made affirmative misrepresentations, including affirmatively misrepresenting the safety and efficacy of their sunscreen products. SAC at ¶¶ 70, 81, 106-107. "Such failures to disclose on the part of Defendants amounts to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation." *Id.* at ¶ 102. Insofar as Plaintiff has alleged affirmative misrepresentations, her claims are not barred by the economic loss doctrine. *See El Dorado Irrigation Dist. V. Traylor Bros. Inc.*, 2006 WL 306914 at *5 (E.D. Cal. Feb. 7, 2006) (finding "the [*Robinson*] decision cannot be read as limiting liability to instances of personal injury" and that "*Robinson* does not limit tort recovery to fraud involving potential person[al] injury[.]").

Defendants' citation to *Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1162 (S.D. Cal. 2020) is distinguishable. As noted by the court in that case, the plaintiff's claims were "based exclusively on omissions, not affirmative misrepresentations." *Id.* at 1163. In contrast, the claims in the present case include affirmative misrepresentations. Furthermore, as recently observed in *White*, "*Hsieh*'s facts primarily involved fraud in the performance of a contract, not the fraudulent inducement claims that Plaintiff asserts here." *White v. FCA US LLC*, 2022 WL 3370791 at *5 (N.D. Cal. Aug. 16, 2022) (distinguishing *Hsich* and holding ""[t]o the extent that Defendant argues the FAC's fraudulent inducement claims should

be barred by the economic loss rule because they do not fall within the *Robinson Helicopter* exception, those arguments are unpersuasive."). As in *White*, Plaintiff's claims likewise allege fraud in the inducement. SAC at ¶ 6 ("Plaintiff relied on these representations and warranties in deciding to purchase the sunscreen products"). Accordingly, Plaintiff's claims for fraudulent inducement fall under their own "well-recognized exception to the economic loss rule," and survive. *White*, 2022 WL 3370791 at *5.

### *10. Plaintiff's equitable claims survive because she may plead alternative theories for same conduct*

Defendant seeks dismissal of Plaintiff's equitable claims on the basis that she failed to allege that she lacks an adequate remedy at law, citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020). However, Plaintiff is entitled to "plead alternative theories of recovery for the same conduct." *James ex rel. James Ambrose Johnson, Jr. 1999 Tr. v. UMG Recordings*, 2011 WL 5192476 at *5 n. 3 (N.D. Cal. Nov. 1, 2011) (denying motion to dismiss). Moreover, it is premature to rule on the appropriateness of specific remedies are at this early stage. *Id.* at *5. *See also In re JUUL Labs. Inc., Mktg., Sales Practices, & Prod. Liab. Litig*., 2020 WL 6271173 at *55 (N.D. Cal. Oct. 23, 2020) (finding *Sonner* inapposite on motion to dismiss class action complaint). Accordingly, Defendants' claim should be rejected.

## V. CONCLUSION

For the forgoing reasons, Plaintiff respectively requests that Court deny Defendants' Motion to Dismiss Second Amended Complaint.


Dated:           November 14, 2022                    Respectfully submitted,


                                                      By:  /s/ R. Jason Richards
                                                      R. JASON RICHARDS
                                                      (Admitted pro hac vice)
                                                      AYLSTOCK, WITKIN, KREIS &
                                                      OVERHOLTZ, PLLC
                                                      SIN-TING MARY LIU (282884)
                                                      17 East Main Street, Suite 200
                                                      Pensacola, FL 32502
                                                      Telephone: 850-202-1010
                                                      Facsimile: 850-916-7449
                                                      E-mail: jrichards@awkolaw.com
                                                      E-mail: mliu@awkolaw.com
                                                      Attorney for Plaintiff


                                                      **BRADLEY/GROMBACHER, LLP**
                                                      Marcus J. Bradley, Esq. (174156)
                                                      Kiley L. Grombacher, Esq. (245960)
                                                      Robert N. Fisher, Esq. (302919)
                                                      31365 Oak Crest Drive, Suite 240
                                                      Westlake Village, California 91361
                                                      Telephone: (805) 270-7100
                                                      Facsimile: (805) 270-7589
                                                      E-Mail:
                                                      mbradley@bradleygrombacher.com
                                                      kgrombacher@bradleygrombacher.com
                                                      rfisher@bradleygrombacher.com

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:  /s/ R. Jason Richards
R. JASON RICHARDS (*admitted pro hac vice*)

/s/ Sin-Ting Mary Liu
Sin-Ting Mary Liu

Attorneys for Plaintiffs

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT