STINSON LLP
John Moticka, MOSB 31760 (*admitted pro hac vice*)
john.moticka@stinson.com
7700 Forsyth Blvd, Suite 1100,
St. Louis, Missouri 63105
Telephone:  314.259.4562 Facsimile: 314. 259.4467

Megan McCurdy, MOSB 60071 (*admitted pro hac vice*)
megan.mccurdy@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:  816.691.2649 Facsimile: 816.412.9733

Ashley Crisafulli, MOSB, 71852 (*admitted pro hac vice*)
ashley.crisafulli@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:  816.691.2676 Facsimile: 816.412.9733

GORDON & REES, LLP
John P. Katerndahl (127646)
jkaterndahl@grsm.com
5 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: 949.255.6950 Facsimile: 949.474.2060

Attorneys for Defendants

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **BETH BOWEN, individually, and on behalf of others similarly situated,**<br>**Plaintiff,**<br>v.<br>**ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., SUN PHARMACEUTICALS, LLC**<br>**Defendants.** | Case No.:  2:21-cv-04356-MWF-AGR<br>*Honorable Michael W. Fitzgerald*<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Hearing Date: December 12, 2022**<br><br>**Hearing Time: 10:00 AM** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

I.    PLAINTIFF LACKS STANDING....................................................................2

    A.    Plaintiff's conclusory allegations fail to establish an injury that is actual or concrete and not premised on a hypothetical risk of harm. .............2

    B.    Plaintiff's alleged risk of physical injury is hypothetical and speculative. .....................................................................................................8

    C.    Plaintiff fails to remedy her failure to plead a particularized injury for the Banana Boat® Ultra Sport SPF 30 and SPF 100 she purchased. .............8

II.   PLAINTIFF LACKS STATUTORY STANDING...........................................9

III.  PLAINTIFF'S CLAIMS ARE PREEMPTED. ..............................................10

    A.    There is no presumption against preemption. ..............................................11

    B.    Plaintiff's claims seek to enforce and create requirements that are "different from" and "in addition to" what the FDA requires. .....................11

        1.    Plaintiff's attempt to create a 0.00 ppm standard for benzene different from the FDA's 2 ppm standard. .......................................................13

        2.    Claims relying on non-FDA compliant testing are preempted...........13

        3.    Plaintiff's labeling and warning claims are not equivalent to or consistent with FDA regulations...........................................................14

IV.   PLAINTIFF'S CLAIMS ARE SUBJECT TO THE FDA's PRIMARY JURISDICTION. ...........................................................................................16

V.    PLAINTIFF FAILS TO STATE A CLAIM. .................................................18

    A.    Plaintiff abandons her breach of warranty and strict liability claims. ..........18

    B.    Reasonable consumers do not expect sunscreen to be molecularly pure. .............................................................................................................19

    C.    The economic loss doctrine bars Plaintiff's tort claims.................................21

    D.    Plaintiff fails to squarely address the numerous reasons why her pleadings do not satisfy the Rule 9(b) heightened pleading standard..........23

    E.    Plaintiff's equitable claims fail because she has adequate legal remedies......................................................................................................25

CONCLUSION ............................................................................................................25

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. United States*,
   449 Fed. Appx. 653, 658-59 (9th Cir. 2011) ................................................................ 12

*Anglin v. Edgewell Personal Care Co.*,
   No. 4:18-CV-00639-NCC, 2018 WL 6434424 (E.D. Mo. Dec. 7, 2018) .................... 14

*Arroyo v. Chattem, Inc.*,
   926 F. Supp. 2d 1070 (N.D. Cal. 2012) ................................................................ 4, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 3

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) .......................................................................... 15

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's
   Nat. Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ........................................ 20

*Berger v. L.L. Bean, Inc.*,
   351 F. Supp. 3d 256 (E.D.N.Y. 2018) ............................................................... 7

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ........................................................................... 3

*Bodle v. Johnson & Johnson Consumer Inc.*,
   21-cv-07742-EMC, Dkt. #28 (N.D. Cal. Feb. 24, 2022) ....................................... 9

*Boysen v. Walgreen Co.*,
   No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .......................... 7

*Bronson v. Johnson & Johnson, Inc.*,
   No. C 12-04184 CRB, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ...................... 10

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ..................................................................... 6

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir.2001) ........................................................................... 4

*Carter v. Novartis Consumer Health, Inc.*,
   582 F. Supp. 2d 1271 (C.D. Cal. 2008) .................................................... 12

*City of Pomona v. SQM North America Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ................................................................ 13

*Coffelt v. Kroger Co.*,
   No. 16-1471-JGB, 2018 WL 6004543 (C.D. Cal. Aug. 17, 2018)................ 9

*In re ConAgra Foods, Inc.*,
   No. CV 11-05379-MMM (C.D. Cal. Aug. 12, 2013)................................. 17

*In re Countrywide Financial Corp. Securities Litig.*,
   588 F. Supp.2d 1132 ............................................................................... 24

*Critcher v. L'Oreal USA Inc.*,
   959 F.3d 31, 37 (2d Cir. 2020) .............................................................. 16

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
   520 U.S. 806 (1997)................................................................................ 11

*Doss v. Gen. Mills, Inc.*,
   816 F. App'x. 312 (11th Cir. 2020) ........................................................ 7

*Doss v. Gen. Mills, Inc.*,
   No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*,
   816 F. App'x 312 (11th Cir. 2020) ......................................................... 8

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ................................................................. 20

*El Dorado Irrigation Dist. v. Traylor Bros., Inc.*,
   No. CIVs03949LKKGGH, 2006 WL 306914 (E.D. Ca. Feb. 7, 2006) ....... 22

*Escobar v. Just Born Inc.*,
   No. CV 17-01826, 2017 WL 5125740 (C.D. Cal. June 12, 2017) ............... 4

*Estrada v. Johnson & Johnson*,
   No. 2:14-CV-01051, 2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ........... 6

*In re Ford Motor Co. DPS6 Powershift Transmission Products*,
   483 F. Supp. 3d 838 (C.D. Cal. 2020) .................................................... 22

*Forouzesh v. CVS Pharmacy, Inc.*,
   No. 2:18-CV-04090-ODW, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019).... 14

-iii-   Case No. 2:21-cv-04356-MWF-AGR

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ........................................................... 7

*Forcellati v. Hyland's Inc.*,
   No. CV 12-1983-GHK (MRWx), 2015 WL 9685557 (C.D. Cal. Jan. 12,
   2015) ........................................................................................................... 12

*Giglio v. Monsanta*,
   No. 15cv2279 BTM(NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016) ................. 15

*Green v. PepsiCo, Inc.*,
   No. 18-62011-civ, 2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ................................ 7

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................. 11, 16

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
   19-CV-1345 DMS, 2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ............................ 19

*Hardeman v. Monsanto Co.*,
   216 F. Supp. 3d 1037 (N.D. Cal. 2016) ........................................................ 15

*Haskins v. Symantec Corp.*,
   No. 13-CV-01834, 2014 WL 2450996 (N.D. Cal. June 2, 2014), *aff'd*,
   654 F. App'x. 338 (9th Cir. 2016) ................................................................ 23

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
   No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ...................... 20

*Hernandez v. Monsanto Co.*,
   No. CV 16-1988-DMG (Ex), 2016 WL 6822311 (C.D. Cal. July 12,
   2016) ........................................................................................................... 15

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................ 7

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013), *as amended on denial of reh'g and reh'g
   en banc* (July 8, 2013).................................................................................. 3

*Horti v. Nestle Healthcare Nutrition*,
   2022 WL 16748613 (N.D. Cal. Nov. 7, 2022) .................................................. 6

*Huertas v. Bayer*,
   No. 21-20021, 2022 WL 3572818 (D.N.J. Aug. 19, 2022).............................. 5, 8

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*James ex rel. James Ambrose Johnson Jr. 1999 Tr. v. UMG Recordings*,
No. C 11-1613 SI, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011)................................25

*Johns v. Bayer Corp.*,
No. 09-CV-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ......................................9

*In re Johnson & Johnson Sunscreen Marketing Sales Pracs. And Product
Liab. Litig.*,
No. 0:21-md-03015-Singhal, Dkt. #55 ....................................................................2, 19

*Jovel v. Boiron Inc.*,
No. 2:11-cv-10803-SVW-SH, 2013 WL 12164622 (C.D. Cal. Aug. 13,
2013) ...........................................................................................................................12

*Kimca v. Sprouts Foods, Inc.*,
No. 2022 WL 1213488 (D.N.J. April 25, 2022).........................................................6, 7

*Koronthaly v. L'Oreal USA, Inc.*,
No. 07-cv-5588, 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd,* 374 F.
App'x. 257 (3d Cir. 2010) .............................................................................................7

*Kwikset Corp. v. Superior Court*
246 P.3d 877 (2011).......................................................................................................3

*Lassen v. Nissan North America, Inc.*,
211 F. Supp. 3d 1267 (C.D. Cal. 2016) .......................................................................13

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
245 F.3d 1048 (9th Cir. 2001) .....................................................................................24

*Lombana v. Green Tree Servicing, LLC*,
No. CV 14-8330-JCG, 2015 WL 3999366 (C.D. Cal. June 29, 2015) .......................19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).......................................................................................................3

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......................................................................................4

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (2005).....................................................................................................12

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014).........................................................................19

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................... 20, 21

*Moss v. Infinity Ins. Co.*,
    197 F.Supp.3d 1191 (N.D. Cal. 2016) ........................................................ 25

*Munning v. Gap, Inc.*,
    238 F.Supp. 3d 1195 (N.D. Cal. 2017) ....................................................... 25

*Naimi v. Starbucks Corp.*,
    798 F. App'x 67 (9th Cir. 2019) .................................................................... 5

*Pels v. Keurig Dr. Pepper, Inc.*,
    No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ............ 9

*In re Procter & Gamble Aerosol Products Marketing and Sales Pracs.*
    *Litig.*, No. 2:22-md-03025-MHW-CMV, Dkt. #23 .................................. 2, 19

*Rhynes v. Stryker Corp.*,
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................. 25

*Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016) .................................................................................... 11

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal.4th 979 (2004) ............................................................................ 21, 22

*Robles v. Gojo Industries, Inc.*,
    No. 8:21-cv-00928, Dkt. #44 (C.D. Cal., Oct. 21, 2021) ............................. 6

*Rosa v. Taser Int'l, Inc.*,
    684 F.3d 941 (9th Cir. 2012) ................................................................. 24, 25

*Rubio v. Orgain, Inc.*,
    No. 18-cv-2237-MWF, 2019 WL 1578379 (C.D. Cal. Mar. 5, 2019) ........ 14

*Schloegel v. Edgewell Personal Care Co.*,
    No. 4:21-cv-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ...... 9

*Song v. Champion Petfoods, Inc., USA, Inc.*,
    No. 18-cv-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) .................... 7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................... 9

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Sprewell v. Golden State Warriors*,
  266 F.3d 979, 988 (9th Cir. 2001) ................................................................ 6

*Tait v. BSH Home Appliances Corp.*,
  No. SACV 10-00711 DOC, 2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ............... 24

*Truss v. Bayer Healthcare Pharmaceuticals, Inc.*,
  No. 7:21-CV-09845, 2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022) ........................ 16

*United States v. Scan Health Plan*,
  2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .................................................... 23

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ........................................................................ 23

*Webb v. Carter's, Inc.*,
  No. CV 08-07367, 2009 WL 10670244, at *4 (C.D. Cal. June 23, 2009),
  *on reconsideration*, No. CV 08-7367, 2010 WL 11507254 (C.D. Cal.
  Apr. 1, 2010). ............................................................................................... 6

*Zapata Fonseca v. Goya Foods Inc.*,
  No. 16-cv-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ..................... 25

**Statutes**

7 U.S.C. § 136(q)(1)(e) .................................................................................. 15

21 U.S.C. § 337(a) ........................................................................................ 11

21 U.S.C. § 355h .......................................................................................... 10

21 U.S.C. § 379r(a) .......................................................................... 12, 13, 14


**Rules, Regulations, Guidance**

21 C.F.R. § 201(c) ........................................................................................ 10

21 C.F.R. § 201.66(a) .................................................................................... 10

21 C.F.R. § 201.66(c) .................................................................................... 10

21 C.F.R. § 201.327 ...................................................................................... 10

40 C.F.R. § 156.70 ........................................................................................ 15

Fed. R. Civ. Proc. 9(b) ...................................................................................... 23, 24, 25

Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed Nov. 21, 2022) ....................... 1

Food and Drug Administration, News Release, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs,*" December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed Nov. 21, 2022) ........................................................................................ 1

Food and Drug Administration, *Residual Solvents in Drug Products Marketed in the United States*, (2009), available at https://www.fda.gov/media/70928/download (last accessed Nov. 21, 2022). ..................................................................................................... 1

*Impurities: Guidelines for Residual Solvents Q3c (R8)*, International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use, (updated April 22, 2021), available at https://database.ich.org/sites/default/files/ICH_Q3CR8_Guideline_Step_2021_0422_1.pdf (last accessed Nov. 21, 2022)............................................. 1

**Other Authorities**

Environmental Protection Agency, *National Primary Drinking Water Regulations*, available at https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations/ (last accessed Nov. 21, 2022). ..................................................................... 1

National Institute for Occupational Safety and Health, *Exposure Limits*, last updated March 7, 2016, available at https://www.cdc.gov/niosh/npg/pgintrod.html (last accessed Nov. 21, 2022) ..................................................................................................... 1

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

Does the presence of 0.29 parts per million ("ppm") of benzene in a bottle of sunscreen render it unsafe and adulterated? **The Food and Drug Administration ("FDA") says no.** The FDA unequivocally allows up to 2 ppm of benzene in sunscreen.[1] On two separate occasions since Plaintiff filed her lawsuit, the FDA addressed the safety of sunscreen products across the market and reaffirmed its 2 ppm standard.[2] Yet, Plaintiff asks this Court to either misinterpret or ignore the only standard that specifically applies to sunscreens and find—for the first time—that a standard of 0.00 ppm applies to sunscreens.[3] Plaintiff's argument should be rejected. On May 21, 2021, Valisure petitioned the FDA for a 0.00 ppm standard, asking the FDA to "clarify that there is no acceptable level of benzene."[4] But on December 23, 2021, and again on June 6, 2022, the FDA confirmed the

---

[1] *Impurities: Guidelines for Residual Solvents Q3c (R8)*, International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use, (updated April 22, 2021), available at https://database.ich.org/sites/default/files/ICH_Q3C-R8_Guideline_Step4_2021_0422_1.pdf (last accessed Nov. 21, 2022) (hereinafter "ICH QC3"). The FDA has adopted ICH Q3C standards. FDA, *Residual Solvents in Drug Products Marketed in the United States*, (2009), available at https://www.fda.gov/media/70928/download (last accessed Nov. 21, 2022).

[2] Food and Drug Administration, News Release, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs,*" December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed Nov. 21, 2022) (hereinafter "FDA Alert"); Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed Nov. 21, 2022) (hereinafter "FDA FAQ").

[3] None of the standards cited by Plaintiff state 0.29 ppm of benzene in sunscreen is unsafe. Second Amended Complaint Dkt #72 (hereinafter "SAC") ¶ 28; Opp. at 5. The EPA drinking water zero benzene standard is irrelevant because one does not drink sunscreen. *See* EPA, *National Primary Drinking Water Regulations*, available at https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations/ (last accessed Nov. 21, 2022). The National Institute for Occupational Safety and Health ("NIOSH") standard referenced in SAC ¶ 21 relates to an *airborne concentration* value expressed as a "time-weighted average concentration for up to a 10-hour workday during a 40-hour workweek." NIOSH, *Exposure Limits*, last updated March 7, 2016, available at https://www.cdc.gov/niosh/npg/pgintrod.html (last accessed Nov. 21, 2022). The EPA and NIOSH standards simply do not apply to sunscreens.

[4] Valisure Citizen Petition, Memo. Ex. A. at 3.

application of an up to 2 ppm standard.[5] Plaintiff is clearly advocating for a standard that is "different from" that of the FDA. And if the standard was zero, as Plaintiff contends, then why didn't the FDA recommend recalls for any trace amount? Why did counsel for Plaintiff agree to proposed settlements in similar cases that allow up to 1 ppm of benzene in sunscreen?[6] The answer is simple: **The FDA permits up to 2 ppm of benzene in sunscreen.**

Plaintiff's case hinges on her unfounded belief that the presence of 0.29 ppm of benzene renders sunscreen products unsafe and adulterated under the Federal Food, Drug, and Cosmetic Act ("FDCA"). But Plaintiff's belief does not matter. Plaintiff does not allege that any of the Banana Boat® sunscreen she purchased contained more than 2 ppm of benzene.[7] Accordingly, her claims should be dismissed with prejudice because, *inter alia*, 0.29 ppm – the alleged presence of benzene in Plaintiff's purchased bottle – is well within the FDA's prescribed limit.

# I.    PLAINTIFF LACKS STANDING.

## A.    Plaintiff's conclusory allegations fail to establish an injury that is actual or concrete and not premised on a hypothetical risk of harm.

---

[5] The FDA Alert states products "should be immediately recalled or not released for distribution based on a benzene level in the products above 2 ppm consistent with the considerations described in ICH guidance." The FDA FAQ reaffirmed that manufacturers "should not release any drug product batch that contains benzene above 2 ppm" and that the "FDA has also been working with companies on multiple recalls related to the identification of unacceptable levels of benzene in drugs."

[6] *In re Johnson & Johnson Sunscreen Marketing Sales Pracs. And Product Liab. Litig.*, No. 0:21-md-03015-Singhal, Dkt. #55 at 6 (S.D. Fla. Dec. 17, 2021); *In re Procter & Gamble Aerosol Products Marketing and Sales Pracs. Litig.*, No. 2:22-md-03025-MHW-CMV, Dkt. #23 at 12 (S.D. Ohio July 1, 2022).

[7] Plaintiff alleges she purchased (1) Banana Boat® Ultra Sport sunscreen spray that was tested by Valisure to contain 0.29 ppm; (2) Banana Boat® Ultra Sport SPF 30, the same product for which Plaintiff provided a passing Valisure impurity testing report; and (3) Banana Boat® Ultra Sport lotion SPF 100, the same product that Valisure tested and found to contain less benzene than the LLOQ. SAC ¶ 5; Memorandum in Support of Motion to Dismiss Dkt. #75-1 (hereinafter "Memo."), Memo. Ex. 1 (hereinafter "McCurdy Decl."), Ex. A, B, F. Indeed, all Banana Boat® sunscreen tested by Valisure contained amounts of benzene ranging from zero to 0.43 ppm, all well below the FDA's 2 ppm standard.

Plaintiff's theory of economic harm—that "Plaintiff suffered economic injury when she spent money to purchase sunscreen products she would not have otherwise purchased, or paid less for"—is premised on her speculative and unsupported allegation that the presence or potential presence of trace amounts of benzene in the products would render them unsafe or adulterated and therefore worth less than what she paid. SAC ¶ 6. Plaintiff argues that "merely alleging that she would not have bought the product, or paid less for it, but for the defendants' misrepresentations" is alone sufficient to establish Article III standing. Opposition to Motion to Dismiss, Dkt. #81, at 12 ("Opp."). But the mere recitation of this phrase does not rid Plaintiff of her burden to affirmatively establish an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).[8] Plaintiff cannot cite a single case supporting the proposition that this phrase alone eliminates her burden to establish a concrete injury which is not conjectural or hypothetical.

Instead, Plaintiff relies on *Hinojos* and *Kwikset*, two *statutory* standing cases that stand for the proposition that a plaintiff can establish *statutory* standing under the CLRA, FAL, and UCL merely by alleging that one would not have purchased a product absent a misrepresentation.[9] Yet in addition to meeting state statutory standing requirements, plaintiff "must satisfy the federal standing requirements under Article III." *Birdsong v.*

---

[8] Determining whether a plaintiff has pled a plausible injury in fact is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleaded facts must establish more than the mere possibility of misconduct. *Id.*

[9] Even if meeting the statutory standing standard could establish Article III standing, the cases are inapposite. The alleged economic injury in *Kwikset*—that the consumer would not have purchased a product had they known the products were not manufactured in the location represented on the label—is not based on a hypothetical risk that the products may not have been manufactured where they were manufactured. Opp. at 10 (citing to *Kwikset Corp. v. Superior Court* 246 P.3d 877, 881 (2011)). Further, the economic injury in *Hinojos*—that the consumers would not have purchased products at a sale price absent the misrepresentation that the products previously sold at the regular price listed—does not rest on the hypothetical risk that the product labels may have contained a higher price than the regular sale price. Opp. at 10 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)).

---

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (plaintiffs "may well have standing under California law to bring their suit in state court, that does not help them here. A party seeking to commence suit in federal court must meet the stricter federal standing requirements of Article III.")

The Article III cases Plaintiff relies on merely support the general proposition that economic injury can establish standing—not that the economic injury may be premised on a risk of hypothetical and speculative harm or shown by conclusory pleading. Each of the cases cited by Plaintiff were premised on economic injuries that were self-evidently concrete and required no explanation as to why they were not speculative or hypothetical.

For example, the alleged economic injury in *Escobar*—that the consumer would not have purchased the box of candy had they known it contained slack fill—was premised on the allegation that the box was 46% empty.[10] It was not premised on a hypothetical risk that the box may not contain a certain amount of candy. Similarly, the alleged economic injury in *Maya*—that the consumer "paid more for their homes than the homes were worth"—was premised on defendant's failure to make disclosures required by law.[11] It was not premised on speculation regarding those disclosures, and the Ninth Circuit explicitly stated that the economic injury was "actual and concrete". *Id.* at 1069. Further, the alleged economic injury in *Arroyo*—that the consumer would not have purchased the product had she known it contained hexavalent chromium—was premised on plausible allegations that the product at issue contained hexavalent chromium "well in excess of the recommended drinking water limits set forth by OEHHA, violates Proposition 65 and presents serious health risks to consumers." [12] It was not premised on the hypothetical risk that a product containing hexavalent chromium under the allowable limit could be unsafe.

Here, Plaintiff's theory of economic injury—that she would have paid less for the

---

[10] *See* Opp. at 8 (citing *Escobar v. Just Born Inc.*, No. CV 17-01826, 2017 WL 5125740, at *4 (C.D. Cal. June 12, 2017)).

[11] *See* Opp. at 7 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)).

[12] *Arroyo v. Chattem, Inc., Complaint, 2012 WL 5054246 at ¶ 15 (N.D. Cal., filed April 27, 2012). See also* Opp. at 6-8.

sunscreen had she known it contained 0.29 ppm of benzene—is premised on nothing but hypothetical speculation that the trace amount of benzene in sunscreen makes the product unsafe and therefore worth less than what she paid. As discussed *supra* and in Defendants' Memo. § II.B, the allegation that 0.29 ppm of benzene in sunscreen is unsafe is not plausible because the FDA regulates the safety of sunscreen and allows up to 2 ppm of benzene in sunscreen. Although the word "trace" is used in both the Banana Boat® recall[13] and Defendants' Memorandum in relation to the word benzene, the FDA only requires a recall of sunscreen containing "trace" amounts of benzene *above 2 ppm. C.f.* Opp. at 14. "While Plaintiffs quote a scholarly journal article suggesting that there is probably no safe level of exposure to benzene, that suggestion does not demarcate the requirements that the FDA sets forth concerning levels of carcinogenic contaminants and amounts to probability and speculation." *Huertas v. Bayer*, No. 21-20021, 2022 WL 3572818, at *6 (D.N.J. Aug. 19, 2022) (internal citations omitted). Further, none of the articles cited by Plaintiff are specific to sunscreen or say that 0.29 ppm of benzene in sunscreen is unsafe.[14]

Without any allegations plausibly establishing a risk that diminished the value of the sunscreen, Plaintiff makes nothing more than "conclusory assertions that the product is worthless" and fails to "set out any facts that demonstrate any actual loss." *Huertas*, 2022 WL 3572818, at *5. As in *Huertas*, Plaintiff fails to plausibly allege that the sunscreen "was wasted or unused in some way," "that they discarded some or all of [it]," or that the "product did not work as advertised." *Id.*

Further, Plaintiff's conclusory allegation that she paid a "premium" is unsupported by any plausible allegations establishing that she faced a choice between different products and was swayed by Defendants' representations.[15] *See Naimi v. Starbucks Corp.*, 798 F.

---

[13] Involving a product – Banana Boat® Hair and Scalp – which Plaintiff did not purchase.

[14] *See supra* fn. 3. Although SAC ¶ 10 suggests that sunscreen can be absorbed through the skin, benzene was not tested in the study cited.

[15] "[A] plaintiff's obligation to provide the grounds of [his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Likewise, the court is not 'required to accept as true allegations that which are merely conclusory, unwarranted deductions of fact,

App'x 67, 70 (9th Cir. 2019) ("The bare recitation of the word 'premium' does not adequately allege a cognizable injury.") It is, therefore, insufficient to establish Article III standing. *Horti v. Nestle Healthcare Nutrition*, 2022 WL 16748613, *6 (N.D. Cal. Nov. 7, 2022) ("[P]laintiffs do not state how much they paid" or "how much they would have paid absent the allegedly deceptive labels. Plaintiffs here simply do not provide enough detail beyond the barest of descriptions of their injury to support standing.").[16]

In *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017), plaintiffs alleged that they either would not have purchased their vehicles or would have paid less for them had they known the vehicles were vulnerable to being hacked. The Ninth Circuit held that these allegations were insufficient to confer Article III standing for their state law claims:

> This economic loss theory is not credible, as the allegations that the vehicles are worth less are conclusory and unsupported by any facts. The district court was correct in noting that "plaintiffs have not, for example, alleged a demonstrable effect on the market for their specific vehicles based on documented recalls or declining Kelley Bluebook values ... [n]or have they alleged a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out-of-pocket damages."

*Id*. at 723.

This Court, too, should dismiss Plaintiff's claims on the basis that economic injury cannot be premised on such hypothetical, speculative, or uncertain risk of harm. *See e.g.,*

---

or unreasonable inferences.'" *Webb v. Carter's, Inc.,* No. CV 08-07367, 2009 WL 10670244, at *4 (C.D. Cal. June 23, 2009), *on reconsideration*, No. CV 08-7367, 2010 WL 11507254 (C.D. Cal. Apr. 1, 2010) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

[16] *See also Robles v. Gojo Industries, Inc.*, No. 8:21-cv-00928, Dkt. #44, (C.D. Cal., Oct. 21, 2021) (in dismissing similar claims, the "key question" was what information plaintiff considered in her purchasing decision, and her "failure to allege facts showing that any alternative product exists at a lower price than what she paid emphasizes the lack of support for her allegations."); *Estrada v. Johnson & Johnson*, No. 2:14-CV-01051, 2015 WL 1440466, at *5 (E.D. Cal. Mar. 27, 2015) ("Plaintiff does not have an economic injury to meet Article III standing because Plaintiff…did not allege any alternative product that she would have purchased"); *Kimca v. Sprouts Foods, Inc.*, No. 2022 WL 1213488, *8 (D.N.J. April 25, 2022) ("threadbare" allegations of premium pricing insufficient because "Plaintiffs do not identify any other comparable, cheaper, or safer products to show that they, in fact, paid a premium for the Baby Food Products.").

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

*Herrington v. Johnson & Johnson Consumer Companies, Inc.,* No. C 09-1597 CW, 2010 WL 3448531, at *3-5 (N.D. Cal. Sept. 1, 2010) (dismissing claims premised on an allegation that products contained some amount of a substance that may be carcinogenic because they were "too speculative and uncertain" and failed to "establish a credible risk of harm that could suffice as a concrete, imminent injury"); *Boysen v. Walgreen Co*., No. C 11-06262 SI, 2012 WL 2953069, at *5-7 (N.D. Cal. July 19, 2012) (dismissing claims premised on economic injury when the alleged level of toxins fell "within the FDA advisory guidelines" and where plaintiff failed to "expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm"); *Kimca*, 2022 WL 1213488 at *3 ("even if the products purchased by Plaintiffs contained heavy metals, the FAC does not adequately allege that the amount of heavy metals in Sprouts products were unsafe or dangerous."); *Song v. Champion Petfoods, Inc., USA, Inc*., No. 18-cv-3205, 2020 WL 7624861, at *6 (D. Minn. Dec. 22, 2020) (dismissing claims for lack of standing because even if defendant misrepresented the ingredients in its product, "plaintiffs would not have been harmed by that misrepresentation unless the [product] purchased contained BPA" and because "plaintiffs have not alleged that they personally purchased [a product] that contained BPA."); *Koronthaly v. L'Oreal USA, Inc.*, No. 07-cv-5588, 2008 WL 2938045, at *4-5 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x. 257 (3d Cir. 2010) (dismissing claims for lack of standing where trace amounts of lead in lipstick did not exceed FDA standards); *Doss v. Gen. Mills, Inc*., 816 F. App'x. 312, 314 (11th Cir. 2020) (no economic injury where plaintiffs alleged "ultra-low levels of glyphosate…may be harmful to human health"); *Green v. PepsiCo, Inc.*, No. 18-62011-civ, 2019 WL 8810364, at *1, 3 (S.D. Fla. Apr. 12, 2019) (plaintiff failed to allege an injury in fact based on her purchase of Quaker Oats that allegedly contained trace amounts of residual glyphosate); *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 262 (E.D.N.Y. 2018) (finding plaintiff had not alleged economic injury when she alleged only that the value of her product had decreased based on a speculative risk of future injury); *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are

unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance.").

**B.    Plaintiff's alleged risk of physical injury is hypothetical and speculative.**

In her Opposition, Plaintiff attempts to insert a new theory of physical injury: "the increased risk of harm from exposure to a dangerous substance." Opp. at 6. But as explained *supra*, Plaintiff fails to plausibly establish anything more than a hypothetical and speculative risk of future harm from using the sunscreen. Plaintiff fails to affirmatively establish how 0.29 ppm of benzene in sunscreen poses anything more than a speculative risk of harm because the FDA allows up to 2 ppm of benzene in sunscreen.[17] As in *Huertas*, Plaintiff has "not demonstrated concrete injuries that actually exist, and rather rel[ies] on the risk of future harm." *Huertas*, 2022 WL 3572818, at *6.

**C.    Plaintiff fails to remedy her failure to plead a particularized injury for the Banana Boat® Ultra Sport SPF 30 and SPF 100 she purchased.**

Plaintiff ignores this Court's Order dismissing her FAC, which stated "Plaintiff's claim is based on the ***hypothetical*** possibility that the products she purchased ***may*** have contained benzene—not that she purchased a product that demonstrably did contain benzene, such as from a batch identified by Valisure." Dkt. #71, at 7. Plaintiff still fails to plausibly allege that the Banana Boat® Ultra Sport SPF 30 and SPF 100 contained benzene. Plaintiff again asks this Court to hold that a plaintiff has suffered an injury in fact and can establish standing if there is *any risk* that trace amounts of benzene are in a product. *See* Opp. at 8-12. This runs against persuasive authority from other courts who have held that the risk of trace amounts of a substance in a line of products does not confer standing when a plaintiff fails to allege that the purchased product actually contained that substance. *See* Memo. at 3-4.[18]

---

[17] As discussed *supra*, none of the studies and standards relied on by Plaintiff state that 0.29 ppm of benzene in sunscreen pose an actual or concrete risk of future harm.

[18] *See e.g., Doss v. Gen. Mills, Inc*., No. 18-61924-CIV, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) (plaintiff lacked standing because she did not "allege that the Cheerios she herself bought actually contain any

Plaintiff's alternative argument—that "those products fail to disclose in their labeling and advertising the presence of benzene"—fails for the same reason: it plainly rests on the hypothetical *risk* that the Products "*may*" contain trace amounts of benzene. Additionally, a mere violation of a statute is insufficient to establish that plaintiffs actually suffered an injury in fact. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016).

Consistent with *Bodle* and *Schloegel*,[19] this Court should dismiss Plaintiff's claims with prejudice because, again, "Plaintiff has not adequately pled that her injury is sufficiently particularized to demonstrate standing because there are no allegations Plaintiff's sunscreen actually contained benzene—only an attenuated possibility that the sunscreen may have contained benzene." Order at 7.

## II.    PLAINTIFF LACKS STATUTORY STANDING.

Plaintiff concedes that she must plead actual reliance on Defendants' allegedly deceptive statements to establish statutory standing for her CLRA, UCL, and FAL claims. But Plaintiff fails to allege that she actually relied on any specific advertisement. Instead, Plaintiff makes conclusory and vague allegations that she relied on "packaging, labeling and written advertisements." Opp. at 15 (citing SAC ¶¶ 6, 103, 108, 114). These conclusory allegations cannot establish statutory standing for her CLRA, UCL, and FAL claims. Memo. at 8. "The statutory standing requirements…are narrowly prescribed and do not permit [] generalized allegations" of "advertisements relating to a product that he did not rely upon." *Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 WL 476688, at *5 (S.D. Cal.

---

glyphosate—just that some Cheerios that have been tested do."); *Coffelt v. Kroger Co.*, No. 16-1471-JGB, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) (plaintiff lacked standing when he failed to show the product he purchased had in fact been adulterated or contaminated and instead only alleged that the product "*may* have been contaminated"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *4 (N.D. Cal. Nov. 7, 2019) (finding plaintiff lacked standing in a suit over the presence of arsenic in a product when he failed to plead that the product contained violative amounts of arsenic).
[19] *Bodle v. Johnson & Johnson Consumer Inc.*, 21-cv-07742-EMC, Dkt. #28 (N.D. Cal. Feb. 24, 2022); *Schloegel v. Edgewell Personal Care Co.*, No. 4:21-cv-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022). *Bodle* alleged false and misleading consumer protection claims under the CLRA, FAL, and UCL. *Bodle* Complaint, Dkt. #17, at 28-32.

Feb. 9, 2010); *see also Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013) ("[P]laintiff is not permitted to support a claim alleging misleading product packaging with statements that he never read or relied upon[.]").

Plaintiff alleges no particularized facts to support the idea that she relied on Defendants' statements before purchasing the products. Plaintiff does not allege where, when, why, or even whether she actually read the labels or any advertisements, much less how she came to rely on those statements in her purchasing decision. Accordingly, Plaintiff lacks statutory standing to bring claims for any alleged misrepresentations in the May 5, 2018, Press Release for Simply Protect™, the March 2, 2016, Safety Data Sheet, the June 21, 2019, West Palm Beach Florida News Article, the Banana Boat® website, and any other advertising. SAC ¶ 62. *See Arroyo*, 926 F. Supp. 2d at 1080 (holding that allegations that plaintiff "relied on 'promotion, advertising and, marketing' are not pleaded with particularity…[because] nowhere does Plaintiff allege when, where, or how she was exposed to or accessed this promotion, advertising, or marketing prior to purchase.").

## III.   PLAINTIFF'S CLAIMS ARE PREEMPTED.

Plaintiff's claims are preempted because she seeks to enforce labeling, safety, and testing standards that differ from FDA regulations. The FDA regulates the labeling, safety, and efficacy of over-the-counter (OTC) drugs, including Banana Boat® sunscreen products.[20] The question of whether Banana Boat® sunscreen products are safe and unadulterated is reserved for the FDA. The zero benzene standard Plaintiff seeks to impose contradicts the FDA's express guidance and infringes on the FDA's authority to enforce safety and efficacy requirements under the FDCA. Memo. § II.B. Further, Plaintiff solely relies on testing by Valisure but does not – and cannot – allege that those tests comply with

---

[20] Defendants must comply with the general labeling requirements for OTC drugs found in 21 C.F.R. Part 201, Subpart C and 21 C.F.R. § 201.327, which control the content of the labels. *See* 21 U.S.C. § 355h; 21 C.F.R. § 201.66(c). "The content and format requirements must be followed unless otherwise specifically provided in the applicable monograph or regulation." 21 C.F.R. § 201.66(a).

FDA requirements. The FDA found Valisure not in compliance with cGMP standards and Valisure readily admitted it did not follow the FDA's own testing standards. *See* McCurdy Decl., Memo. Ex. C, D. In addition to being expressly preempted, Plaintiff's claims are impliedly preempted because Congress did not leave room for states to supplement the FDCA's standards with their own state consumer protection laws and because the FDCA prohibits private actions. 21 U.S.C. § 337(a); Memo. at 20.

## A.   There is no presumption against preemption.

Contrary to Plaintiff's Opposition, the Supreme Court has made clear there is no presumption against preemption when there is an express preemption clause, as there is here. *Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115 (2016) (explaining when there is an express preemption clause, courts "do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."). Defendants recognize that they bear the burden of preemption, but it is not a "considerable" burden as Plaintiff suggests because Defendants do not seek to totally supplant a state law, but instead only to preempt a particular claim. *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (requiring the party seeking preemption to meet a "considerable burden" when it sought to supplant an entire state law).

## B.   Plaintiff's claims seek to enforce and create requirements that are "different from" and "in addition to" what the FDA requires.

Instead of addressing the reasons why her claims are preempted, Plaintiff attempts to save her claims from preemption by characterizing them as an attempt to enforce parallel California laws. Opp. at 17. However, as Defendants point out in their memorandum, Plaintiff cannot use state law causes of action to impose standards that are different from or in addition to the FDA's standards, nor can Plaintiff use state law as a vehicle to address an alleged violation of the FDCA. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1102 (N.D. Cal. 2013) ("[C]laims that attempt to impose requirements that are not identical to FDA regulations…are expressly preempted and are dismissed for that reason.").

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

Contrary to Plaintiff's argument, *Carter v. Novartis Consumer Health, Inc.* supports preemption. 582 F. Supp. 2d 1271 (C.D. Cal. 2008). Plaintiff attempts to distinguish *Carter* by implying that preemption occurs only when there is a direct challenge to FDA-approved language. Opp. 21-22. However, there is no requirement that a claim must run contrary to specific FDA-approved language to be preempted. What matters is whether a claim attempts to impose a requirement that is "different from" or "in addition to" what the FDA requires—precisely what the plaintiff in *Carter* and Plaintiff here attempt to do. *Carter*, 582 F. Supp. 2d at 1281-82. Plaintiff argues benzene should be listed on the label and that a warning or disclosure should be included on the packaging but fails to cite any authority for the notion that a sunscreen product is mislabeled if it does not disclose the potential for trace amounts of benzene. SAC ¶¶ 45, 126. That's because no such authority exists; the FDA sets out exactly what can be included on a label and has no warning requirement about the potential for trace amounts of benzene or any residual solvents.

Faced with the fact that her claims seek to enforce and create requirements different from and in addition to the FDCA, Plaintiff again cites *Carter* to suggest that she can supplement the drug labeling process through this action under § 379r(e) of the FDCA.[21]

---

[21] Plaintiff also cites to *Adams v. United States*, 449 Fed. Appx. 653, 658-59 (9th Cir. 2011) and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (2005) to support the proposition that although her parallel state claims must be equivalent to and consistent with an FDCA claim, they need not have the exact same elements in order to avoid being preempted. These cases provide no support for Plaintiff's argument, since her state claims are not equivalent to and, indeed, are inconsistent with, any FDCA claim in that they would impose a zero benzene standard that conflicts with FDA guidance. Furthermore, and contrary to Plaintiff's argument, *Jovel v. Boiron Inc*., No. 2:11-cv-10803-SVW-SH, 2013 WL 12164622 (C.D. Cal. Aug. 13, 2013) does not defeat preemption because the representation in that case was not specifically endorsed or required by the FDA through an approval process or monograph. Here, the applicable final monograph for OTC sunscreen products controlled what active and inactive ingredients Defendants could list on the labeling. Similarly, while *Forcellati v. Hyland's Inc*., No. CV 12-1983-GHK (MRWx), 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) confirms that the FDCA does not necessarily preempt parallel state laws, it also makes clear that state laws are not considered parallel to the FDCA and thus are preempted when they impose requirements different from or in addition to those imposed by the FDCA. Here, where application of the state law claims would create a regulatory standard in tension with FDA rulemaking and guidance, those claims are preempted.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

Opp. at 17. It is true that § 379r(e) states that the express preemption clause shall not "be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." Yet though Plaintiff pleads strict product liability claims, "California's economic loss rule provides that the recovery of economic loss under strict products liability is appropriate only when there has been physical harm to persons or property *other* than the allegedly defective product itself." *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014). Critically, Plaintiff does not allege physical harm. *See* Opp. at 17. Cases without physical harm "are not products liability actions. Rather, Plaintiff claims sound in consumer fraud." *Lassen v. Nissan North America, Inc.*, 211 F. Supp. 3d 1267, 1273 (C.D. Cal. 2016). Because Plaintiff has not alleged physical harm, her product liability claims are not rescued by § 379r(e) of the FDCA.

**1.     Plaintiff's attempt to create a 0.00 ppm standard for benzene different from the FDA's 2 ppm standard.**

Plaintiff seeks to create and enforce a zero standard for benzene that is different from the FDA's 2 ppm standard. In an attempt to avoid preemption, Plaintiff misconstrues the FDA's 2 ppm benzene standard to apply only if benzene use is unavoidable and provides a significant therapeutic advance. As previously explained, this interpretation of the 2 ppm standard is inaccurate and contrary to the plain meaning of the relevant regulations. *See* Memo. § II.B.2. The FDA makes no such delineation and applies a uniform 2 ppm standard for the safety of sunscreen products. Indeed, recent guidance issued by the FDA confirms a 2 ppm standard for benzene in sunscreen products. *See* FDA Alert; FDA FAQ. Saying there are "unacceptable levels of benzene," "allowable limits," and "at or above 2 ppm," implies there is an acceptable or allowable level of benzene below 2 ppm, preempting Plaintiff's argument for a zero benzene standard. FDA FAQ.

**2.     Claims relying on non-FDA compliant testing are preempted.**

Plaintiff argues that because her factual allegations should be taken as true, the method of testing upon which she relies does not matter. Opp. at 1. However, Plaintiff

cannot enforce a testing requirement that is different from or in addition to what is already required under the FDCA. 21 U.S.C. § 379r(a). It is Plaintiff's burden, therefore, to affirmatively allege, with particularity, that the testing on which she relies complies with FDA requirements. A motion to dismiss can be granted on preemption grounds when a claim is premised on the use of a testing methodology different from the FDA's own. *Rubio v. Orgain, Inc.*, No. 18-cv-2237-MWF, 2019 WL 1578379 at *3 (C.D. Cal. Mar. 5, 2019) ("district courts in this Circuit have routinely granted motions to dismiss false labeling claims where the plaintiff failed to allege that product testing was conducted in accordance with" testing methods established by the FDA); *Forouzesh v. CVS Pharmacy, Inc.*, No. 2:18-CV-04090-ODW, 2019 WL 652887, at *5 (C.D. Cal. Feb. 15, 2019) (granting motion to dismiss based on preemption because plaintiff's "allegations of independent FDA-compliant testing [are] conclusory and fail to support a plausible conclusion that his testing was done in compliance with FDA regulations."); *Anglin v. Edgewell Personal Care Co.*, No. 4:18-CV-00639-NCC, 2018 WL 6434424 at *1 (E.D. Mo. Dec. 7, 2018) (dismissing claims as preempted because plaintiff failed to plead the testing of sunscreen products "complie[d] with the FDA-mandated methodologies[.]"); Memo. § II.B.3.

Here, Plaintiff alleges that "[i]n 2020, Valisure LLC and ValisureRX LLC ('Valisure'), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products, including sprays and lotions." SAC ¶ 27. The SAC does not allege how Valisure's testing was performed, let alone that it complied with FDA regulations.[22] Like *Forouzesh*, Plaintiff fails to allege compliance with FDA testing requirements, meaning her claims are preempted and should be dismissed.

### 3. Plaintiff's labeling and warning claims are not equivalent to or consistent with FDA regulations.

---

[22] It is little wonder why, considering that the FDA inspected Valisure's labs and faulted its testing standards used to detect benzene, to which Valisure responded by saying its customers "do not use Valisure's testing and certification to determine whether drug products meet FDA specifications." Memo. § II.B.3.

In a further attempt to avoid preemption of her labeling and warning claims that impose requirements different from and in addition to what is required by FDA, Plaintiff relies on pesticide cases that are clearly distinguishable.[23] Pesticides are regulated by the EPA under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), which requires a warning on labels when information shows that an acute hazard may exist to humans and deems the pesticide misbranded if necessary warnings are omitted. *Giglio*, 2016 WL 1722859 at *2; 7 U.S.C. § 136(q)(1)(e);40 C.F.R. § 156.70. Accordingly, the consumers' failure to warn claims in these cases were not preempted because the warnings were "equivalent to, and fully consistent with FIFRA's misbranding provisions." *See e.g. Hardeman*, 216 F. Supp. 3d at 1037-8. Unlike the pesticide cases, Plaintiff here seeks to require a disclosure that the sunscreen may contain trace amounts of benzene that is neither equivalent to nor consistent with the FDA's 2 ppm standard. A zero-tolerance standard would directly contradict the FDA's 2 ppm benzene standard that already contemplates the safety of consumers and is, thus, preempted.

Plaintiff's reliance on *Astiana v. Hain Celestial Group, Inc.* is also unavailing. 783 F.3d 753, 756 (9th Cir. 2015). In *Astiana*, plaintiff argued cosmetic products were mislabeled because they made representations of "all natural" or "pure natural," while allegedly containing artificial and synthetic ingredients listed on the label. The claims were not preempted because plaintiff was not seeking to modify the labels that were required by federal law, but claimed "deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label." *Id*. at 758. Unlike *Astiana*, there are no "natural" or "benzene-free" representations on Banana Boat® sunscreen products that conflict with the ingredient list. Instead, Plaintiff seeks to compel listing benzene as an inactive ingredient. This is prohibited for the same reason that the FDA prohibits listing benzene as an active ingredient, as Plaintiff admits. *See* Opp. at 23 ("Plaintiff does not

---

[23] *Hernandez v. Monsanto Co.*, No. CV 16-1988-DMG (Ex), 2016 WL 6822311 (C.D. Cal. July 12, 2016); *Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016); *Hardeman v. Monsanto Co.*, 216 F. Supp. 3d 1037 (N.D. Cal. 2016).

allege that benzene should have been included as an active 'ingredient' on the sunscreen labels. Nor could it have been insofar as the FDA prohibits the use of benzene in the manufacture of sunscreen products.").

The claims in this case are closer to the claims in *Gustavson v. Wrigley Sales Co,*. 961 F. Supp. 2d at 1102. The plaintiff in *Gustavson* made a claim for failure to disclose additional ingredients used to process milk chocolate. The court held that the claims were preempted because plaintiff sought to impose a requirement that deviated from federal law by asking for a disclosure when the FDA permitted a manufacturer to say "milk chocolate" without disclosing other ingredients. *Id*. at 1124. Like *Gustavson*, Plaintiff is attempting to impose requirements that are different from and in addition to FDA regulations by seeking a warning or disclosure of the potential for trace amounts of benzene. *See also Truss v. Bayer Healthcare Pharmaceuticals, Inc*., No. 7:21-CV-09845, 2022 WL 16951538, at *4 (S.D.N.Y. Nov. 15, 2022) (granting preemption when plaintiffs' claims sought to disclose a carcinogenic byproduct, not an active or inactive ingredient in sunscreen products, because "the FDCA does not mandate disclosure of degradation byproducts (like benzophenone), the labeling duties plaintiffs seek to impose are additional to those imposed by the FDCA.") (quoting *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 37 (2d Cir. 2020)). Accordingly, Plaintiff's claims that seek to impose liability for failing to list benzene as an inactive ingredient are preempted.

## IV.    PLAINTIFF'S CLAIMS ARE SUBJECT TO THE FDA's PRIMARY JURISDICTION.

Plaintiff seeks to avoid the FDA's primary jurisdiction by arguing that the issues raised in her complaint are not beyond this Court's competency and not so complex that their resolution will intrude upon questions pending before the FDA. Opp. at 24-25.

Critically, Plaintiff acknowledges that the FDA has been "working with drug manufacturers on the issue of…benzene contamination for over a year."[24] In so doing,

---

[24] The FDA's work remains ongoing, as evidenced by the fact that it is still considering action on the Valisure Citizen Petition. Memo. Ex. E.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

Plaintiff concedes that the FDA, an agency with unmatched subject matter expertise pertaining to the issues raised in her SAC, has found the issues complex enough to merit at least a year of consideration. This simple fact shows (1) that resolving the potential safety issues pertaining to the presence of trace amounts of benzene in sunscreen is not within this Court's particular competency and (2) that resolving the issues in order to resolve this case would intrude on questions pending before the FDA.

Recognizing the fact that the scientific issues at the heart of her pleadings are subject to the FDA's primary jurisdiction, Plaintiff attempts to reframe her case as merely presenting a question of whether a product claim is misleading or violates consumer protection laws. Opp. at 26 ("Courts routinely decide whether a manufacturer misled consumers and violated state consumer protection laws, including in sunscreen cases such as this one."). This is misleading. Whether the labeling of or advertising for Banana Boat® sunscreen products are false and whether the sale of those products violated state laws cannot be resolved without determining whether *the products were unsafe, adulterated, or violated the FDCA*—the exact questions presented to the FDA by the Valisure Citizen Petition. Because the FDA has already announced a 2 ppm benzene standard, *see supra* § III.B.1, the claims are preempted. To the extent these questions remain pending, the claims are subject to the FDA's primary jurisdiction because the Court lacks the subject matter expertise that the FDA not only possesses but is currently bringing to bear.

Plaintiff cites *In re ConAgra Foods, Inc.*, No. CV 11-05379-MMM (C.D. Cal. Aug. 12, 2013), to support the contention that courts "routinely decide whether a manufacturer misled consumers and violated state consumer protection laws, including in sunscreen cases such as this one." Opp. at 26. First, Plaintiff does not cite to a single similar sunscreen case decided by another court. Second, *ConAgra*, far from supporting Plaintiff's case, demonstrates exactly why this Court should defer to the FDA's primary jurisdiction. *ConAgra* was a "100% natural" case where defendants invoked the primary jurisdiction doctrine because (1) various parties had asked the FDA to adopt formal rulemaking defining the term "natural"; and (2) two district judges had stayed similar actions pending

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

FDA action. *Id.* at 2. The court declined to apply the primary jurisdiction doctrine because (1) Defendants proffered no evidence that FDA action defining the term "natural" was actually imminent, and the FDA had in fact recently declined to take action on the matter; and (2) it was not bound by the decision of other district courts. *Id.* at 3. The court also noted that defining the term "natural," or deciding how consumers interpreted that word, did not touch a technical area in which the FDA had particular expertise. *Id.* at 4.

Comparison of the facts in *ConAgra* to the facts in this case reveals why this Court should defer to the FDA's primary jurisdiction. Unlike in *ConAgra*, Defendants do not rely on referrals made by other district courts to support the invocation of primary jurisdiction. Unlike in *ConAgra*, Defendants have shown that the FDA is actively taking action on the issue of benzene in sunscreen products. *See* McCurdy Decl., Memo. Ex. A; FDA FAQ. And finally, unlike in *ConAgra*, it is impossible to resolve whether the labeling or advertising of Banana Boat® products is misleading or violative of consumer protection laws without determining whether the products are actually unsafe or adulterated due to the presence of benzene, an indisputably technical question best left to the subject matter experts at the FDA. The Court should defer to the FDA's primary jurisdiction.

## V.   PLAINTIFF FAILS TO STATE A CLAIM.

### A.   Plaintiff abandons her breach of warranty and strict liability claims.

Defendants argue that Plaintiff's breach of express and implied warranty claims (Counts 6 and 7) and strict product liability claims (Counts 8 and 9) should be dismissed. Memo. at 33-35. The sum of her response to the breach of express warranty argument is "Plaintiff's express warranty claims survive because, as alleged, those warranties were relied upon." Opp. at 3. Plaintiff does not respond to the argument that "Plaintiff cannot meet the 'safety hazard' standard required to plausibly allege a claim for implied warranty of merchantability." Memo. at 35. Plaintiff also does not respond to the argument that her strict product liability claims fail because she does not allege the products are unreasonably dangerous. *Id.*

When a plaintiff fails to address an argument for dismissal, that claim should be

dismissed with prejudice. *Lombana v. Green Tree Servicing, LLC*, Case No. CV 14-8330-JCG, 2015 WL 3999366, at *5 (C.D. Cal. June 29, 2015) ("As a rule, a plaintiff's failure to address a defendant's arguments for dismissal 'constitutes abandonment of [those] claim[s].'"); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) ("[W]here a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice."). Here, Plaintiff ignored Defendants' breach of warranty arguments[25] and failed to substantively address Defendants' strict liability arguments.[26] These abandoned claims should be dismissed with prejudice.

### B. Reasonable consumers do not expect sunscreen to be molecularly pure.

Reasonable consumers do not expect absolute, molecular-level purity in consumer products like sunscreen. *See* Memo. at 27, fn. 37 55-56 (collecting cases). Support for the proposition that reasonable consumers do not expect sunscreen products to be 100% pure on a molecular level comes from proposed settlements in similar cases wherein counsel for Plaintiff represented consumers who agreed to allow up to 1.0 ppm of benzene in sunscreen products on a go-forward basis.[27] It is implausible that reasonable consumers would expect Banana Boat® to be labeled with a warning or disclosure that it may contain up to 0.29 ppm of benzene, which is not only below the FDA's 2 ppm standard but also below the threshold that would trigger a Proposition 65 action.[28] Indeed, the FDA *encourages*

---

[25] Plaintiff's statement that the "warranties were relied upon" is unresponsive. *Compare* Opp. at 1 *with* Memo. at 33-34 ("Plaintiff cannot create her own warranty and then bring a claim against Defendants for breaching an express promise that they did not make.").

[26] Plaintiff stated she has "sufficiently alleged that the sunscreen products are unreasonably dangerous." Opp. at 3. First, this is not a substantive response to the argument. Second, the cited paragraphs do not allege that Banana Boat® sunscreen is unreasonably dangerous.

[27] *In re Johnson & Johnson Sunscreen Marketing Sales Pracs. And Product Liab. Litig.*, No. 0:21-md-03015-Singhal, Dkt. #55 at 6; *In re Procter & Gamble Aerosol Products Marketing and Sales Pracs. Litig.*, No. 2:22-md-03025-MHW-CMV, Dkt. #23 at 12.

[28] Indeed, "any claim under the CLRA, FAL or UCL predicated on a duty to disclose certain carcinogenic substances is dismissed as an attempt to plead around Proposition 65." *Gutierrez v. Johnson & Johnson Consumer, Inc.*, 19-CV-1345 DMS (AGS), 2020 WL 6106813, at *4 (S.D. Cal. Apr. 27, 2020).

Plaintiffs to use the Banana Boat® sunscreen products they allegedly purchased.[29]

The substance of Plaintiff's response to Defendants' reasonable consumer argument is that consumers would "surely" want to know if a sunscreen product contains benzene.[30] Opp. at 30. In other words, Plaintiff believes that a reasonable consumer would want to know if *any* amount of a residual solvent is present in a consumer product, *even if* that amount is below what the FDA considers an allowable limit. As noted in the Memorandum, this approach has been categorically rejected by a number of district courts in and outside of California. Memo. at 26-27 (collecting cases); *see, e.g., Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc*., No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-5 (N.D. Cal. Oct. 6, 2020) (holding that reasonable consumers would not understand "all natural" to mean that the product did not contain trace amounts of pesticides below the limit tolerated by the FDA).[31] Remarkably, Plaintiff does not attempt to distinguish or rebut *Hawyuan*. That is because the case is both apposite and provides persuasive authority for dismissal.

Plaintiff's attempt to distinguish *Moore v. Trader Joe's Co.* is unavailing.[32] As Plaintiff acknowledges, "the label at issue in *Moore* complied with specific FDA

---

[29] In answering the questions highlighted by Plaintiffs, the FDA only recommends consumers refrain from using recalled products and encourages consumers to continue using sunscreen. FDA FAQ. Notably, when asked "What should manufacturers know about benzene in drugs?" the FDA did not instruct manufacturers to list products that contain or may contain benzene as an ingredient on the product label. *Id*.

[30] Plaintiff states that the Court "cannot determine as a matter of law that *no reasonable consumer* would likely be deceived[.]" Opp. at 2. This is not the reasonable consumer standard. The reasonable consumer standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016).

[31] *See also Axon v. Citrus World, Inc.,* 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018)*, aff'd sub nom. Axon,* 813 F. App'x. 701 (2d Cir. 2020) ("[T]he court finds it implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount deemed tolerable by the FDA," particularly given that (like benzene) "[g]lyphosate [] is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process.").

[32] Plaintiff distinguishes *Moore* because in that case, the product in question (honey), could not possibly come from one type of flower (as the product claimed), whereas it is possible that sunscreen products do not contain benzene. Opp. at 30.

---

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

regulations and, thus, was unable to mislead a reasonable consumer as a matter of law by statute." Opp. at 39-40 (citing *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021)). Here, Banana Boat® sunscreen complies with specific FDA regulations for labeling and safety. *See supra* § III. As a matter of law, a reasonable consumer would not be misled.

Finally, Plaintiff fails to address Defendants' argument that her claims premised on affirmative representations fail because a reasonable consumer would not interpret those representations in the manner she had pled. Defendants have explained why the Simply Protect™ Press Release, the Safety Data Sheet, News Article, and website statements cited by Plaintiff would not mislead any reasonable consumer. Mot. at 30-33. In response, Plaintiff can only feebly recite the standard for dismissal on reasonable consumer grounds. Opp. at 31-32. It speaks volumes of Plaintiff's case that this is the extent of her response. For the reasons set out in the Memorandum, the Court should find that a significant portion of the consuming population, acting reasonably under the circumstances, would not be misled by any of the affirmative representations identified in the SAC.

### C.   The economic loss doctrine bars Plaintiff's tort claims.

Plaintiff attempts to avoid the economic loss doctrine by arguing that her claims are premised on Defendants' affirmative representations. Plaintiff cites *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004), to support the proposition that claims premised on affirmative misrepresentations are not subject to the economic loss doctrine.

First, Plaintiff effectively concedes that the economic loss doctrine *does* bar her claims to the extent they rely on a fraudulent omission theory. And to the extent her claims must then hinge entirely on an affirmative misrepresentation theory, they fail because Defendants have made no affirmative misrepresentations. *See* Memo. at 30-33. Second, the narrow exception to the economic loss doctrine outlined in *Robinson* does not apply to this case because Plaintiff was not exposed to liability for personal damages independent of her economic loss. In *Robinson*, a contractor supplied equipment for helicopters that did not comply with FAA specifications, in violation of a contract duty. *Id.* at 985-86. The contractor also knowingly supplied false documents certifying compliance with those

specifications. *Id.* Plaintiff sought contract damages as well as compensatory and punitive damages resulting from the fact that it was exposed to regulatory scrutiny from the FAA and international regulators. *Id.* at 986-87. The contractor sought application of the economic loss doctrine to bar plaintiff's fraud claims. *Id.*

The *Robinson* court held that supplying the false certificates was "independent fraudulent conduct" (independent of the contractual duty) and thus the fraud claims could survive the economic loss doctrine. *Id.* at 990-91. However, the *Robinson* court did not premise the exception solely on the existence of fraud outside the contract. Rather, it stated: "Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies *and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.*" *Id.* at 993 (emphasis added). Thus, the exception outlined in *Robinson* is limited to cases where (1) defendant made an affirmative misrepresentation; *and* (2) plaintiff is exposed to liability for personal damages for reasons independent of the plaintiff's economic loss.[33] *See also In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litig.*, 483 F. Supp. 3d 838, 848–850 (C.D. Cal. 2020) (dismissing fraudulent representation claim under the economic loss doctrine because "Plaintiff has not alleged fraudulent conduct…sufficiently independent of Ford's contractual/warranty obligations to repair or replace the vehicle, as would be required to exempt his fraudulent omission claim from the economic loss rule.").

Plaintiff's citation to *El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, No. CIVs03949LKKGGH, 2006 WL 306914 (E.D. Ca. Feb. 7, 2006) does nothing to save her claim. The court in *El Dorado* merely clarified that for the *Robinson* exception to apply, a plaintiff need not be exposed to *personal injury* damages due to defendant's representations independent of their economic loss, but to *any type* of tort damages. *Id.* at *4 ("[*Robinson*] cannot be read as limiting liability to instances of personal injury. Rather, the court's opinion focuses on the independent reasons why tort damages may be allowed in cases

---

[33] The court held that plaintiffs were exposed to potential liability for personal damages independent of their economic loss due to potential sanctions they faced from regulators.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SAC

where there is fraud in the creation or performance of a contract."). Here, because Plaintiff has not alleged that she could be exposed to liability due to Defendants' supposed misrepresentations, the economic loss doctrine forecloses her tort claims.

### D. Plaintiff fails to squarely address the numerous reasons why her pleadings do not satisfy the Rule 9(b) heightened pleading standard.

In their Memorandum, Defendants established that Plaintiff did not set out the "how, when, and why" of her fraud-based claims with particularity. Memo. at 25. In response, Plaintiff avers that she alleged the "*Who*," "*What*," and "*Where*" of her claims, avoiding the pleading flaws identified in the Motion to Dismiss.[34] Opp. at 27 (emphasis in original).

Plaintiff fails to address the fact that she does not allege with any specificity when the purchases were made. As she acknowledges, the most Plaintiff alleges is that her purchases were "[b]etween 2017 and 2020." Opp. at 28; SAC ¶ 5. This four-year span of time far exceeds any reasonable definition of particularity. In addition, she fails to allege *how* she was deceived by the advertisements and labeling. As she again acknowledges, the most Plaintiff alleges is that she "read and relied upon the products' packaging, labeling and written advertisements in deciding to purchase the products." Opp. at 28; SAC ¶¶ 102-103, 108. Bare allegations that one relied on a representation is insufficient—a plaintiff must allege the circumstances in which she actually saw the labeling or written advertisements. *Haskins v. Symantec Corp.*, No. 13-CV-01834, 2014 WL 2450996, at *1 (N.D. Cal. June 2, 2014), *aff'd*, 654 F. App'x. 338 (9th Cir. 2016). *Haskins* presents compelling and unrebutted authority that Plaintiff. has not met her 9(b) pleading burden.

By ignoring the pleading deficiencies identified by Defendants, Plaintiff attempts to

---

[34] Defendants do not concede that Plaintiff has in fact alleged the "who" of her claim when she consistently conflates the four individual named defendants. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."). Courts have noted "the rule is the same when the defendants are related corporate entities." *United States v. Scan Health Plan*, 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017).

distract the Court by identifying other parts of her pleading that are, ostensibly, sufficient, relying on inapposite case law all the while. She cites *United States ex rel. Lee v. SmithKline Beecham, Inc.*, and *Tait v. BSH Home Appliances Corp*., to support the notion that she need not plead "with exact detail the time, place, and specific content of all the alleged omissions" ostensibly made by Defendants. Opp. at 29.

First, as noted above, Defendants' Rule 9(b) argument does not rest on Plaintiff's pleadings relative to their supposed failure to disclose or to identify the specific content of the alleged omissions. Rather, the argument rests on the fact that Plaintiff does not allege with requisite specificity when the purchases were made or the circumstances in which she was deceived by any statements or omissions.[35] Second, Plaintiff's case law is inapposite. In *Tait*, the district court held that plaintiff had met a "slightly more relaxed burden" when pleading a duty to disclose by averring "that Defendant, both from first-hand experience and consumer complaints, knew of the machines' defects…but actively concealed this information by failing to disclose it to consumers prior to the time of purchase." *Id.* This level of detail—that Defendant knew of the defect due to "first-hand experience" and "consumer complaints"—far exceeds the level of detail provided in the SAC, which merely states that Defendants were aware of the risk of exposure. SAC ¶¶ 98-102, 126-129. And in *Lee*, although the court states that "Rule 9(b) may be relaxed" where evidence of fraud is in defendant's exclusive possession, the court also found that plaintiff *was* in possession of the evidence of fraud, and affirmed dismissal on that basis under Rule 9(b). *Lee*, 245 F.3d at 1052. Thus, although *Lee* may supply an accurate statement of law, it provides no support for Plaintiff here, since she has not pled a single specific fact establishing that any supposed evidence of fraud was in Defendants' *exclusive* possession.

Finally, Plaintiff cites *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 946 (9th Cir. 2012) to support the idea that "[a] cause of action based on alleged omissions lies where a Defendant has a duty to make disclosures." Opp. at 28. In *Rosa*, plaintiffs argued that a manufacturer

---

[35] *See In re Countrywide Financial Corp. Securities Litig.*, 588 F. Supp.2d 1132, 1198 ("[R]eliance must be pled with particularity to state a claim. Fed. R. Civ. Proc. 9(b).").

had to disclose that repeated Taser shocks could lead to death because "any risk that was discoverable through modern technology, no matter how unsubstantiated, was knowable by TASER." *Id.* at 944-6. The Ninth Circuit *rejected* plaintiffs' argument, stating that a manufacturer need not disclose "every report of a possible risk, no matter how speculative, conjectural, or tentative" because reports of isolated or speculative injuries do not constitute generally accepted medical knowledge. *Id.* at 947.

Defendants' Rule 9(b) argument does not depend on a failure to plead specific facts establishing a duty to disclose. Even if it did, the identified risks are too speculative to create a duty to disclose. *See supra* § I. Defendants have no duty to disclose the speculative possibility that less than 2 ppm of benzene was present in certain Banana Boat® sunscreen products when the FDA allows up to 2 ppm of benzene in those products. *Rosa* provides no support for Plaintiff's position. Rather, it provides another reason for dismissal.

**E.    Plaintiff's equitable claims fail because she has adequate legal remedies.**

Plaintiff cites *James ex rel. James Ambrose Johnson Jr. 1999 Tr. v. UMG Recordings* to support the idea that she may plead alternative theories of recovery for the same conduct. No. C 11-1613 SI, 2011 WL 5192476 (N.D. Cal. Nov. 1, 2011). This case has been rejected because it does not cite any case law. *Munning v. Gap, Inc.*, 238 F.Supp. 3d 1195, 1203 n. 6 (N.D. Cal. 2017). It is well-established that claims for equitable relief are barred where plaintiffs allege other claims presenting an adequate remedy at law, and that courts may dismiss equitable claims on a motion to dismiss on that basis.[36]

## CONCLUSION

For the reasons stated above, Plaintiff's claims should be dismissed with prejudice for the reasons set out herein and in the Memorandum in Support of the Motion to Dismiss.

---

[36] *See, e.g., Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing claims for equitable relief because plaintiff pled five other claims providing adequate remedies at law). *Moss v. Infinity Ins. Co.*, 197 F.Supp.3d 1191, 1203 (N.D. Cal. 2016) (dismissing UCL claim where plaintiff had an adequate remedy at law in her other claims). "It matters not that a plaintiff may have no remedy if her other claims fail." *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

**Dated:      November 28, 2022      STINSON LLP**

/s/ John W. Moticka
—————————————————————
John W. Moticka (*admitted pro hac vice*)

/s/ Megan McCurdy
—————————————————————
Megan McCurdy (*admitted pro hac vice*)

/s/ Ashley M. Crisafulli
—————————————————————
Ashley M. Crisafulli (*admitted pro hac vice*)

**GORDON & REES, LLP**

/s/ John P. Katerndahl
—————————————————————
John P. Katerndahl (127646)

***Attorneys for Defendants***

## ATTESTATION

I, Megan McCurdy, am the CM/ECF user whose ID and password are being used to file this Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in the filing's content and have authorized the filing.

DATED:   November 28, 2022      By:   /s/Megan McCurdy
                                      —————————————————————
                                      Megan McCurdy (*admitted pro hac vice*)
                                      STINSON LLP

## **PROOF OF SERVICE DECLARATION**

On November 28, 2022, Defendants filed this Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Pursuant to L.R. 5-3.2, upon the electronic filing of the document, a Notice of Electronic Filing will be automatically generated by the CM/ECF System and sent by e-mail to all counsel of record.

Dated:   November 28, 2022

By:   */s/Megan McCurdy*
Megan McCurdy (*admitted pro hac vice*)
STINSON LLP