UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 21-4356-MWF (AGRx) | Date:  January 5, 2023 |
| Title:  Beth Bowen v. Energizer Holdings, Inc., et al. | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT [75]

Before the Court is Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"), filed on September 23, 2022. (Docket No. 75). Plaintiff Beth Bowen filed an Opposition on November 14, 2022. (Docket No. 81). Defendants filed a Reply on November 28, 2022. (Docket No. 82).

The Court has read and considered the Motion and held a hearing on **December 12, 2022**.

The Motion is **GRANTED** *without leave to amend*. Plaintiff does not allege a particularized injury sufficient to establish Article III standing. In light of the Food and Drug Administration guideline permitting 2 ppm of benzene in sunscreen, Plaintiff does not allege facts that tend to show a non-speculative increased health risk or actual economic harm.

I.    **BACKGROUND**

Plaintiff filed her Second Amended Complaint on September 29, 2022. (*See* Docket No. 72 ("SAC")). Plaintiff's SAC is a putative class action complaint, alleging a class of consumers that purchased Banana Boat branded sunscreen products produced and sold by Defendants. (*See id.* ¶ 1). Plaintiff alleges that, based on testing done by Valisure LLC and ValisureRX LLC (collectively, "Valisure"), third-party pharmacy

---

**CIVIL MINUTES—GENERAL**                                                                  1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)          **Date:** January 5, 2023
**Title:** Beth Bowen v. Energizer Holdings, Inc., et al.

companies, certain of Defendants' Banana Boat sunscreens contain benzene, a known carcinogen. (*See id.* ¶¶ 27–29). Plaintiff alleges that between 2017 and 2020 she purchased numerous Banana Boat brand sunscreen products, including Banana Boat Ultra Sport Sunscreen SPF 100 ("Ultra Sport 100"), Banana Boat Ultra Sport Sunscreen SPF 50 ("Ultra Sport 50"), and Banana Boat Ultra Sport Sunscreen SPF 30 ("Ultra Sport 30"). (*Id.* ¶ 5). Plaintiff alleges that a Banana Boat Ultra Sport Sunscreen SPF 50 container she purchased and used was submitted for testing and shown to contain 0.29 parts per million ("ppm") of benzene. (*See id.* ¶ 8). Plaintiff also alleges that some of the Banana Boat sunscreen products she purchased and used are the same products subjected to testing by Valisure, revealing over 0.1 ppm of benzene. (*See id.*). Plaintiff alleges that Defendant Edgewell Personal Care Company announced a voluntary recall of Banana Boat Hair and Scalp Sunscreen Spray SPF 30 in the United States because benzene was detected in samples of the products. (*Id.* ¶ 32). Plaintiff further alleges that the Food and Drug Administration ("FDA") provides there is no safe level of benzene, does not permit benzene to be used as an active or inactive ingredient in sunscreen, and because certain of Defendants' sunscreens do contain benzene, the sunscreen is accordingly misbranded or adulterated and, contrary to Defendants' advertising, not safe for use by consumers. (*See id.* ¶¶ 35–48). Plaintiff's proposed class definition includes all purchasers of Defendants' Banana Boat sunscreen in California between May 25, 2017, and the present, but excludes those who were allegedly physically harmed by the sunscreen. (*See id.* ¶ 49).

      Plaintiff alleges claims for relief for: 1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200 *et seq.*; 2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500 *et seq.*; 3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code section 1750 *et seq.*; 4) unjust enrichment on a quasi-contract theory; 5) negligent misrepresentation and omission; 6) breach of express warranty; 7) breach of implied warranty; 8) strict product liability on a failure to warn theory; and 9) strict product liability on a manufacturing defect theory. (*See id.* ¶¶ 58–136).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 21-4356-MWF (AGRx)           Date: January 5, 2023

Title: Beth Bowen v. Energizer Holdings, Inc., et al.

The FAC prays for relief in the form of class certification, injunctive relief, declaratory relief, restitution, disgorgement, actual and statutory damages, and attorney's fees and costs. (*See id.* at 44).

## II. LEGAL STANDARD

A jurisdictional attack under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the complaint's allegations must be accepted as true. *Id*. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. "The court need not presume the truthfulness of the plaintiff's allegations under a factual attack." *Brooke v. Superb Hosp., LLC*, No. 1:20-CV-0103 AWI SAB, 2021 WL 1173208, at *4 (E.D. Cal. Mar. 29, 2021) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011)).

## III. DISCUSSION

Defendants argue that Plaintiff lacks Article III standing because she fails to allege an injury-in-fact, namely one that is particularized and not an economic injury based on a speculative risk of harm. (Memorandum (Docket No. 75-1) at 2–8). With regard to Plaintiff's alleged purchases of Ultra Sport 30 and Ultra Sport 100, Defendants argue that Plaintiff fails to adequately allege a particularized injury because she does not allege that the sunscreen was from a batch contaminated with benzene or actually contained benzene. (*See id.* at 3–4). With regard to Plaintiff's Ultra Sport 50 bottle allegedly containing 0.29 ppm of benzene, Defendants argue Plaintiff's alleged economic injury, paying more for the product than she would have, is premised on hypothetical allegations that 0.29 ppm is unsafe—less than the FDA's 2 ppm benzene limit—and therefore entirely speculative and hypothetical. (*See id*. at 4–5). Similarly, with regard to Plaintiff's allegations that the sunscreen is worthless, Defendants argue Plaintiff's allegations are based on a hypothetical risk as there are no plausible allegations that Plaintiff's purchased products were worth less than what Plaintiff paid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 21-4356-MWF (AGRx) | **Date:** January 5, 2023 |
| **Title:** Beth Bowen v. Energizer Holdings, Inc., et al. | |

because she does not allege benzene amounts higher than the FDA requirements. (*See id*. at 5–8).

In her Opposition, Plaintiff argues that she establishes standing with regard to the allegedly contaminated Ultra Sport 50 she purchased because the product increased her risk of harm from exposure to a dangerous substance, and because she suffered economic harm as she would not have purchased the sunscreen absent Defendants' misrepresentation. (Opposition at 6–8). Plaintiff argues that she has standing with regard to her purchase of Ultra Sport 100 and Ultra Sport 30 because these products failed to disclose the presence of benzene in their labeling and advertising, and plaintiff would not have otherwise purchased the products absent Defendants' misconduct. (*See id*. at 9–10). Plaintiff further argues that her alleged increased risk of harm is not hypothetical because benzene is a known carcinogen that poses health risks to humans even at low levels of exposure. (*See id*. at 12–14).

Defendants' Reply contends that Plaintiff's mere recitation that she wouldn't have bought the sunscreen had she known of the presence or potential presence of trace amount of benzene is not sufficient to establish Article III standing. (Reply at 3). Defendants argue that Plaintiff's alleged harm is not actual or concrete because it is premised on nothing but hypothetical speculation that the trace amount of benzene in sunscreen makes the product unsafe and therefore worth less than what she paid. (*See id*. at 4–5). Defendants argue that the allegation that .29 ppm of benzene in sunscreen is unsafe is not plausible because the FDA allows up to 2 ppm of benzene in sunscreen. (*Id*. at 5).

In order to establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environ. Svcs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 21-4356-MWF (AGRx)            Date: January 5, 2023

Title: Beth Bowen v. Energizer Holdings, Inc., et al.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised May 24, 2016 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Id.* For an injury to be concrete, it must actually exist. *Id.* at 340.

### A. Sunscreen That Has Not Been Tested or Connected to a Tested Batch

In the Court's previous Order Granting Defendants' Motion to Dismiss the First Amended Complaint ("Previous Order"), the Court determined that Plaintiff did not show a particularized injury because "[n]owhere in the FAC does Plaintiff allege that she purchased sunscreen included in the batches identified by Valisure as potentially containing benzene, much less that she used that product and was therefore potentially exposed to benzene." (Previous Order (Docket No. 71) at 6). The Court reasoned that "Plaintiff's claim is based on the *hypothetical* possibility that the products she purchased *may* have contained benzene – not that she purchased a product that demonstrably did contain benzene, such as from a batch identified by Valisure." (*Id.* at 7 (emphasis in original)).

Plaintiff's Second Amended Complaint does not remedy the failure to plead a particularized injury stemming from her purchase of Ultra Sport 30 and Ultra Sport 100. She still does not allege that her purchased Ultra Sport 30 and Ultra Sport 100 actually or plausibly contained benzene.

After the hearing, Plaintiff provided the Court recently-decided supplemental persuasive authority. (Docket No. 84). In *Gagetta v. Walmart*, a court determined that plaintiffs sufficiently pleaded injury-in-fact to establish standing where plaintiffs alleged that they purchased products (herbs and spices) they otherwise would not have purchased had they known the products "contained or risked containing certain heavy metals." No. 22-cv-3757-WHO, 2022 WL 17812924, at *4–*6 (N.D. Cal. Dec. 19, 2022). The court determined that plaintiffs' alleged injury was plausible because plaintiffs alleged that there is no safe level of arsenic, lead, and cadium and one-third

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)            **Date:** January 5, 2023

**Title:** Beth Bowen v. Energizer Holdings, Inc., et al.

of the products tested by Consumer Reports contained these heavy metals. *Id*. at *4. Walmart argued that even if the products contained the heavy metals, the products would not be unsafe because all foods have these levels of metals, and so plaintiffs cannot plead injury because the products were actually safe. *Id*. at *5.

The district court in *Gagetta* disagreed because it determined that whether these levels of metals are safe is a hotly contested issue of fact that is not appropriate for resolution on a motion to dismiss. *Id*. The court determined that Walmart's citation to FDA and USDA documents discussing the agencies' work regarding heavy metals in foods were not regulations, guidelines, or even studies that conclusively established that the metals at issues are safe at any level. *Id*. at *3. The court therefore distinguished the action from *Boysen v. Walgreen*, which dismissed a similar case in part by finding no economic injury where a plaintiff did not allege arsenic levels in excess of the levels permitted by the FDA's guidance, because the exhibits presented by Walmart did "not definitely show that Walmart's products meet FDA guidelines." *Id*. at *5 (citing No. C 11-06262 SI, 2012 WL 2953069, at *1-2, 5 (N.D. Cal. July 19, 2012)).

The new persuasive authority does not alter the Court's previous conclusion that Plaintiff's injury is not sufficiently particularized. While the *Gagetta* plaintiffs were able to establish an economic injury by alleging that they overpaid for products that they did not know risked containing heavy metals, alleged to be unsafe at any level, Plaintiff's situation is distinguishable. *See id*. at * 6. Unlike the *Gagetta* plaintiffs, Plaintiff does not plausibly allege that she was at risk of purchasing an unsafe product. Plaintiff alleges that Valisure discovered that several of Defendants' products, including Ultra Sport 100, contained between 0.1 and 2 ppm of benzene. (SAC ¶ 27). However, unlike the *Gagetta* plaintiffs who alleged that one-third of Walmart's herbs contained the heavy metals, Plaintiff does not allege that Valisure's discovery can be extrapolated across all of Defendants' products or to a specific batch which could have ended up in her purchased sunscreen. Additionally, unlike Walmart in *Gagetta* and as discussed below, Defendants are able to point to an FDA guideline—the 2 ppm benzene limit—which suggests that Defendants' products are safe as alleged. Accordingly, Plaintiff's alleged injury related to Ultra Sport 30 and Ultra Sport 100

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 21-4356-MWF (AGRx)          Date: January 5, 2023

Title: Beth Bowen v. Energizer Holdings, Inc., et al.

remains based on too attenuated a possibility that the sunscreen Plaintiff purchased may have contained an unsafe amount of benzene.

### B. Tested Sunscreen

Plaintiff's Second Amended Complaint does remedy the standing issue identified in the Previous Order with regard to Plaintiff's Ultra Sport 50 purchase by adding allegations that an Ultra Sport 50 bottle she purchased was tested and found to contain 0.29 ppm of benzene. (SAC ¶ 8). Defendants now argue that Plaintiff cannot establish standing even with this more explicit allegation.

#### 1. Applicability of FDA 2 ppm benzene limit

As an initial matter, the parties disagree over whether the FDA's 2 ppm limit applies to Defendants' sunscreens. (Motion at 15; Opposition at 14 n. 12).

FDA guidance follows the International Conference on Harmonization (ICH) Q3C *Impurities: Residual Solvents guidance* which provides:

> "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted as shown in Table 1, unless otherwise justified"

TABLE 1. Class 1 solvents in pharmaceutical products (solvents that should be avoided).

| Solvent | Concentration limit (ppm) | Concern |
|---|---|---|
| Benzene | 2 | Carcinogen |
| Carbon tetrachloride | 4 | Toxic and environmental hazard |
| 1,2-Dichloroethane | 5 | Toxic |
| 1,1-Dichloroethene | 8 | Toxic |
| 1,1,1-Trichloroethane | 1500 | Environmental hazard |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)           **Date:** January 5, 2023
**Title:** Beth Bowen v. Energizer Holdings, Inc., et al.

---

*Impurities: Guidelines for Residual Solvents Q3c (R8)*, INTERNATIONAL COUNCIL FOR HARMONISATION OF TECHNICAL REQUIREMENTS FOR PHARMACEUTICALS FOR HUMAN USE, 2021 at 11 ("ICH Q3C") (updated April 22, 2021), available at https://database.ich.org/sites/default/files/ICH_Q3CR8_Guideline_Step4_2021_0422_1.pdf (last accessed Dec. 9, 2022)); Food and Drug Administration, News Release, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs,*" December 23, 2021, ("FDA Alert") available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed Sept. 17, 2022).

Plaintiff argues that the 2 ppm limit does not apply to Defendants because the use of benzene in the manufacture of the sunscreen products is not "unavoidable" and the use of benzene in sunscreen does not provide a "significant therapeutic advance." (SAC ¶ 36; Opposition at 14 n. 12).

Defendants argue that the ICH Q3C makes a distinction between Class I solvents purposefully used in production and residual solvents that may be produced as part of the manufacturing process. (Motion at 15 (citing ICH Q3C at 1)). Defendants contend the "unavoidable" standard only applies to purposeful use of Class I solvents. (*Id*.). Defendants argue that Plaintiff's interpretation vitiates the entire purpose of residual solvents regulations, which explicitly set non-zero limits for the presence of solvents in finished products. (*Id.* at 16). Further, Defendants point out that the FDA's recent statements confirm that Plaintiff's interpretation is wrong. (*Id.*).

On December 23, 2021, the FDA released an alert stating that "[d]rug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene at or above 2 ppm, consistent with the recommendations described in ICH Q3C." FDA Alert. On June 6, 2022, the FDA released an FAQ which stated "[i]n 2020, FDA identified the potential for unacceptable levels of benzene in certain carbomers (which may be used as thickening agents in drugs) based on the allowable limits in USP

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 21-4356-MWF (AGRx) | Date:  January 5, 2023 |
| Title:  Beth Bowen v. Energizer Holdings, Inc., et al. | |

monographs."  Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, ("FDA FAQ") (updated June 6, 2022) available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed Dec. 9, 2022).

The FDA's alert and FAQ make it clear that the FDA's 2 ppm benzene limit applies to Defendants.  The FDA's alert, stating that manufacturers should not release products that contain over 2 ppm of benzene, implies that manufacturers like Defendants may continue to release products that are adequately tested and contain less than 2 ppm of benzene.  *See* FDA Alert.  Similarly, the FDA's use of "unacceptable levels of benzene," "allowable limits," and "at or above 2 ppm" belie the existence of Plaintiff's suggested zero standard.  *See* FDA FAQ.

The Court next considers whether Plaintiff adequately alleges a concrete injury under either an increased health risk theory or an economic loss theory in light of the FDA's guidance.

### 2.  Increased Health Risk

In increased health risk cases involving products liability, courts generally require a plaintiff to allege "(i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account."  *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531 at *3 (N.D. Cal. 2010) (quoting Public Citizen v. Nat'l Hwy. & Traffic Safety Admin., 489 F.3d 1279, 1295 (D.C. Cir. 2007)).

Plaintiff alleges that benzene is a known carcinogen even at low levels of exposure.  *See* SAC at ¶ 35 ("Even in trace amounts, benzene is known to pose a health risk"); ¶ 107 ("the Sunscreen Products pose a dangerous health risk because they contain benzene"); ¶ 110 ("the Sunscreen Products are not safe and pose serious health risks because they contain benzene"); ¶ 25 ("Even low levels of benzene are particularly dangerous in a sunscreen product"); ¶ 77 ("benzene is carcinogenic to humans, and no safe level of benzene can be recommended").  Plaintiff supports this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 21-4356-MWF (AGRx) | Date: January 5, 2023 |
| Title: Beth Bowen v. Energizer Holdings, Inc., et al. | |

allegation with citations to published literature and statements from the scientific community. (*Id.* ¶¶ 25, 35). Specifically, Plaintiff cites a statement from Christopher Bunick, MD, PhD, asserting that "benzene at 0.1 ppm in a sunscreen could expose people to excessively high nanogram amounts of benzene." (*Id.* ¶ 25 (citing Letter from Valisure, LLC to the FDA, re: Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care Products (May 24, 2021) (https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf/) at 16)). Plaintiff also points out that the FDA has designated benzene a Class 1 solvent that should not be employed in the manufacture of drug products. (*Id.* ¶ 35 (citing FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download)).

Defendants counter that 0.29 ppm benzene cannot render a bottle of sunscreen unsafe because the FDA permits up to 2 ppm of benzene in sunscreen. (Reply at 1 (citing ICH Q3C at 11)). Defendants also note that none of the articles cited by Plaintiff state that .29 ppm of benzene in sunscreen pose an actual or concrete risk of future harm. (Reply at 8 n. 17).

In *Herrington*, a case involving allegedly carcinogenic baby bath products, the plaintiffs pled that "scientists believe there is no safe level of exposure to a carcinogen," and that the bath products were "probable human carcinogens." 2010 WL 3448531 at *3. However, the court noted that plaintiffs did not "plead that the amounts of the substances in [d]efendants' products have caused harm or create a credible or substantial risk of harm." *Id.* The court reasoned that the FDA had found that the same chemicals could be used safely in cosmetics products. *Id.* at n. 2. Ultimately, the court ruled that the alleged risk of harm was "too speculative." *Id.* at *4.

Like the plaintiffs in *Herrington*, Plaintiff fails to plausibly allege that the level of contaminant in her sunscreen is unsafe. Dr. Bunick's statement that 0.1 ppm of benzene "*could* expose people to excessively high amounts" creates only a speculative risk of harm, especially in light of the FDA's concentration limit of 2 ppm of benzene. Similarly, Plaintiff's other citations do not establish that .29 ppm of benzene in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 21-4356-MWF (AGRx)          Date: January 5, 2023
Title: Beth Bowen v. Energizer Holdings, Inc., et al.

sunscreen creates a credible or substantial risk of harm. For instance, Plaintiff's citation to the National Institute for Occupational Safety and Health recommendations (SAC ¶ 21) is inapplicable because the recommendations are limited to the context of "general industrial hygiene practices." *See* United States Department of Health and Human Services, *NIOSH Pocket Guide to Chemical Hazards*, https://www.cdc.gov/ niosh/ docs/ 2005-149/pdfs/2005-149.pdf (last accessed Dec. 20, 2022); Similarly, Plaintiff's citation to the Environmental Protection Agency's Maximum Contaminant Level (Opposition at 4) is inapplicable because it sets the limit for benzene in drinking water, not sunscreen. *See* United States Environmental Protection Agency, *2018 Edition of the Drinking Water Standards and Health Advisories Tables*, https://www.epa.gov/system/files/documents/2022-01/dwtable2018.pdf (last accessed Dec. 20, 2022). Without allegations that the level of benzene in Plaintiff's purchased sunscreen is likely to cause physical harm, Plaintiff's injury remains too speculative. *See Herrington*, 2010 WL 3448531 at *4; *see also Doss v. General Mills*, No. 18-cv-61924, 2019 WL 7946028, at *3 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) ("[m]ere conjecture that something has the potential to be harmful is not enough."); *Kimca v. Sprout Food, Inc.*, No. 21-cv-12977-SRC, 2022 WL 1213488, at *3 (D.N.J. Apr. 25, 2022) ("the FAC does not adequately allege that the amount of heavy metals in Sprouts products were unsafe or dangerous").

Accordingly, Plaintiff does not sufficiently allege a particularized and concrete injury-in-fact through her increased health risk theory.

### 3. Economic loss

Plausible allegations that a plaintiff purchased a defective or unsafe product are sufficient to make out an economic injury for statutory and Article III standing. *See In re Mattel, Inc., Toy Lead Paint Prods. Liability Litig.,* 588 F.Supp.2d 1111, 1117 (C.D. Cal. 2008) (toys with lead paint); *see also Cole v. General Motors Corp.,* 484 F.3d 717, 723 (5th Cir. 2007) (airbags); *Keilholtz v. Lennox Hearth Products Inc.,* 268 F.R.D. 330, 336 (N.D. Cal. 2010) (fireplaces). In *In re Mattel,* a case about toys with lead paint that were subject to recalls, the court held that the plaintiffs "properly allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)            **Date:** January 5, 2023

**Title:** Beth Bowen v. Energizer Holdings, Inc., et al.

damages for the purchase price of the toys that allegedly were defective and not fit for their represented use." 588 F.Supp.2d at 1117.

However, where a complaint does not plausibly allege that a product is defective or unsafe, courts will find that its purchase did not constitute an economic injury. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (headphones did not plausibly have defect creating inherent risk of ear injury). For example, in *Boysen v. Walgreen Co.*, the court considered whether a distributor failed to adequately disclose the presence of lead and arsenic in its apple and grape juices. No. 11-cv-06262-SI, 2012 WL 2953069 at *1 (N.D. Cal. July 19, 2012). The plaintiffs alleged that they had suffered an economic injury, because if they had known that the products contained lead, they would not have purchased them. *Id.* at *4. The court found that this was not a sufficient economic injury because the amount of lead in the products was within a range that the FDA had found to be safe, so the plaintiffs could not plausibly allege that they had spent money on an unsafe product. *Id.* at *5.

Plaintiff argues that she has established standing because she suffered economic harm by losing money as a result of purchasing Defendant's contaminated product that she would not have otherwise purchased absent Defendant's misrepresentations. (Opposition at 8 (citing SAC ¶¶ 6–7, 90)). Plaintiff argues that this is all that is required to establish standing under the Ninth Circuit's decision in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), and the California Supreme Court's decision in *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 120 Cal.Rptr.3d 741 (2011). (Opposition at 7).

Defendants argue that Plaintiff's reliance on *Hinojos* and *Kwikset* is insufficient because the cases are statutory standing cases that stand for the proposition that a plaintiff can establish *statutory* standing under the CLRA, FAL, and UCL merely by alleging that one would not have purchased a product absent a misrepresentation. (*See* Reply at 3). Defendants further argue that even if meeting statutory standing could establish Article III standing, *Hinojos* and *Kwikset* would be inapposite because the economic injuries in both cases were not based on hypothetical risks. (*See id*. at 3 n. 9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)            **Date:** January 5, 2023
**Title:** Beth Bowen v. Energizer Holdings, Inc., et al.

In *Kwikset*, the California Supreme Court explained that "[t]here are innumerable ways in which economic injury from unfair competition may be shown," including where "[a] plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have...." 51 Cal. 4th. at 323. In *Kwikset*, which involved lock sets that were falsely labeled as "Made in the U.S.A.," the California Supreme Court found that the plaintiffs had sufficiently alleged an economic injury by alleging that they "would not have bought the product but for the misrepresentation," because "the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend." *Id.* at 330.

In *Hinojos*, the Ninth Circuit reversed a district court's dismissal of plaintiff's UCL and FAL claims on statutory standing grounds. 718 F.3d at 1102. The Ninth Circuit determined that plaintiff sufficiently established statutory standing when he alleged that he lost money by purchasing merchandise which had been marked down from a fictitious "original" or "regular" price. *Id*. The Ninth Circuit held that plaintiff had done everything *Kwikset* requires to allege economic injury under the UCL and FAL by alleging the discounts relayed false information and that he wouldn't have purchased the good absent the misrepresentation. *Id*. at 1105. Further, the Ninth Circuit determined Plaintiff sufficiently alleged an Article III injury in fact, which no party had contested, because "[p]laintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so." *Id.* at 1104 n. 3 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir.2012)).

The alleged harms establishing standing in *Hinojos* and *Kwikset* are distinguishable from the alleged harm here because the economic harms alleged in *Hinojos* and *Kwikset* were not based on hypothetical or speculative risks. In *Hinojos*, the plaintiff alleged he suffered economic harm because he would not have purchased merchandise if not for the inflated "regular" price, it is not hypothetical that the fictitiously high "regular" prices made the merchandise seem like more a bargain. 718 F.3d at 1105. In *Kwikset*, the plaintiff alleged he suffered economic harm because he would not have purchased the lock set if not for the defendant's misrepresentation about where the lock set was actually made, it was not hypothetical that the "Made in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 21-4356-MWF (AGRx) | Date: January 5, 2023 |
| Title: Beth Bowen v. Energizer Holdings, Inc., et al. | |

the U.S.A" misrepresentation made the lock set appear like a more principled purchase. *See* 51 Cal. 4th. at 323. Here, Plaintiff alleges that she would not have purchased the sunscreen had she known of the presence or potential presence of benzene which allegedly makes the sunscreen unsafe for its intended use. (*See* SAC at ¶ 6). Unlike the concrete premises for the economic harms in *Kwikset* and *Hinojos*, Plaintiff's alleged economic harm is premised on the speculative notion that the presence of 0.29 ppm of benzene, or any potential presence of benzene, makes the sunscreen unsafe.

Plaintiff's harm based on a hypothetical risk is more analogous to the harm alleged in *Birdsong*, where plaintiffs alleged that Apple violated the UCL by selling iPods that were capable of producing dangerous volume levels which increased the danger of hearing damage. *Birdsong v. Apple, Inc.,* 590 F.3d at 957. In *Birdsong*, the Ninth Circuit affirmed a district court's determination that the plaintiffs failed to show a particularized and actual injury sufficient for standing under the UCL—despite the plaintiffs' argument that the risk of hearing loss diminished the value of the iPods—in part because "the alleged loss in value . . . rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner," and the plaintiffs did "not claim that they, or anyone else, have suffered or [were] substantially certain to suffer hearing loss from using an iPod." *Id.* at 959–62. While the Ninth Circuit did not reach the question of standing under Article III, it noted that insofar as the UCL incorporates Article III's injury in fact requirement, the plaintiffs would lack an Article III injury. *Id.* at 960 n. 4. Here, Plaintiff's alleged loss in value also rests on a hypothetical risk that a product containing 0.29 ppm of benzene, an amount within the FDA guidelines, is unsafe.

Again, *Herrington v. Johnson & Johnson Consumer Companies, Inc.,* is on point. There, plaintiffs brought UCL, FAL and breach of warranty claims against various manufacturers of bath products for children, alleging that the products contained "probable carcinogens and other unsafe substances." *Herrington*, 2010 *WL 3448531* at *1. The plaintiffs sought standing on economic injury grounds, alleging that they would not have purchased the products had they known of the presence of contaminants. *Id.* at *4. The court found that plaintiffs lacked standing to sue, on the grounds that plaintiffs did not plead a distinct risk of harm from a defect in defendants'

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 21-4356-MWF (AGRx)                    Date:  January 5, 2023
Title:  Beth Bowen v. Energizer Holdings, Inc., et al.

products that would make such an economic injury cognizable.  *Id.* at *4.  The court noted that the "Plaintiffs do not allege that the levels of the substances in Defendants' products were unsafe," so they could not reasonably claim an economic injury from purchasing a dangerous product.  *Id.* at *5.  Here, Plaintiff similarly fail to allege a level of benzene that exceeds acceptable levels.  *See id.* at *3.

A district court in New Jersey determined that plaintiffs in a similar benzene contamination case involving anti-fungal foot sprays did not establish an economic injury.  In *Huertas v. Bayer U.S., LLC*, plaintiffs pursued a class action against a manufacturer of a foot spray that was recalled due to trace amount of benzene.  No. 2:21-cv-20021-SDW (CLW), 2022 WL 3572818, at *1–2 (D.N.J. Aug. 19, 2022).  The *Huertas* plaintiffs asserted that benzene is "carcinogenic to humans," and that "[t]here is probably no safe level of exposure to benzene."  *Id*. at *1.  Similarly to Plaintiff, the *Huertas* plaintiffs asserted that they and class members "were injured by [losing] the full purchase price of the [p]roducts because the [p]roducts are worthless, as they are adulterated and contain harmful levels of benzene."  *Id*.  The district court dismissed the action holding that plaintiffs did "not sufficiently allege facts that support the conclusion that they suffered economic loss" because the "allegation of the 'worthless' [p]roducts amounts to speculative loss."  *Id*. at *4–6.  The court reasoned that "[w]hile [p]laintiffs quote a scholarly journal article suggesting that '[t]here is probably no safe level of exposure to benzene,' that suggestion does not demarcate the requirements that the FDA sets forth concerning levels of carcinogenic contaminants and amounts to probability and speculation."  *Id.* at *6.  The court noted that plaintiffs did not allege that the levels of contamination exceeded the FDA guidelines for the contaminants.  *See id*.  The court concluded that "[p]laintiffs' claims each amount to a 'wish to be reimbursed for a functional product that [they] . . . already consumed without incident,'" which in and of itself "does not constitute an economic injury."  *Id.* at *5 (citing *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.,* 903 F.3d 278, 293 (3d Cir. 2018)).

As discussed in section III.A, the recent decision in *Gagetta v. Walmart* is distinguishable.  While the *Gagetta* court determined that an economic injury could be established on allegations that the plaintiffs would not have purchased a product if they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 21-4356-MWF (AGRx)           Date: January 5, 2023
Title: Beth Bowen v. Energizer Holdings, Inc., et al.

knew the products contained a contaminant, the court partly based its determination on a finding that defendant did not show any regulations, guidelines, or studies that established that the level of contaminants alleged were safe. 2022 WL 17812924 at *3. Here, Defendants have shown that, as alleged, the products purchased by Plaintiff meet FDA guidelines with respect to acceptable levels of benzene in sunscreen. Therefore, Plaintiff's alleged harm is based only on her speculation that the presence of 0.29 ppm of benzene renders her sunscreen unsafe, which does not establish economic injury for standing. *See Boysen v. Walgreen*, 2012 WL 2953069 at *6.

Numerous courts from outside this circuit have dismissed claims on the basis that economic injury cannot be premised on hypothetical, speculative, or uncertain risks of harm. *See, e.g.*, *Kimca*, 2022 WL 1213488 at *3 ("even if the products purchased by Plaintiffs contained heavy metals, the FAC does not adequately allege that the amount of heavy metals in Sprouts products were unsafe or dangerous"); *Koronthaly v. L'Oreal USA, Inc.*, No. 07-cv-5588, 2008 WL 2938045, at *4-5 (D.N.J. July 29, 2008), *aff'd,* 374 F. App'x. 257 (3d Cir. 2010) (dismissing claims for lack of standing where trace amounts of lead in lipstick did not exceed FDA standards); *Green v. PepsiCo, Inc.*, No. 18-62011-civ, 2019 WL 8810364, at *1, 3 (S.D. Fla. Apr. 12, 2019) (plaintiff failed to allege an injury in fact based on her purchase of Quaker Oats that allegedly contained trace amounts of residual glyphosate).

The Court joins these courts in determining that an economic harm premised on speculative risks cannot establish Article III standing. Plaintiff has not adequately pled that her injury is sufficiently concrete and particularized. Accordingly, the Motion must be **GRANTED**.

C.      **Leave to Amend**

Where a dismissal is warranted, a court "shall freely" give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). If an amended complaint would be futile, a court may properly deny leave. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 21-4356-MWF (AGRx)            **Date:** January 5, 2023

Title: Beth Bowen v. Energizer Holdings, Inc., et al.

At the hearing, Plaintiff acknowledged that allowing another amendment would not be helpful. The Court therefore finds that further amendment would be futile and denies leave to file a third amended complaint.

The Motion is **GRANTED** *without leave to amend*. The action is **DISMISSED** *without prejudice* for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.